# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **D.A.N. JOINT VENTURE III, L.P.,** | ) | |
| **as Assignee of Bankruptcy Trustee** | ) | |
| **Richard M. Fogel, the Chapter 7 Trustee** | ) | |
| **for the Bankruptcy Estate of Debtor** | ) | |
| **Nicholas S. Gouletas,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:18-cv-00349** |
| | ) | |
| **DOROTHEA TOURIS, et al.,** | ) | **Hon. Robert M. Dow** |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT PAUL JONES'
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff D.A.N. Joint Venture III, L.P. ("DJV"), as assignee of the Bankruptcy Trustee for the Chapter 7 Bankruptcy Estate of Debtor Nicholas S. Gouletas ("Gouletas"), has filed this suit against a number of Defendants, including Defendant Paul Jones ("Jones")[1], to avoid certain fraudulent transfers that were made to the Defendants by Gouletas. As to Defendant Jones, Plaintiff has brought avoidance actions under §§5(a)(1) and 6(a) of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq*. (the "IUFTA")[2], to avoid a transfer of $690,000 that was made by Gouletas to Defendant Jones on January 21, 2015, which was within the one-year period prior to Gouletas' bankruptcy filing on January 17, 2016.

---

[1] With all due respect to Defendant Jones as a medical doctor, since the allegations against Defendant Jones as set forth in this suit have nothing to do with his conduct as a medical doctor, Plaintiff will refer to Defendant Jones herein as he was referred to in the First Amended Complaint (D.N.11) ("FAC") as "Defendant Jones".

[2] Hereinafter, references to "§___" are to the applicable section of the IUFTA.

Defendant Jones has filed a Rule 12(b)(6)[3] Motion to Dismiss (D.N. 61), arguing that Plaintiff supposedly failed to allege sufficient facts to state an avoidance action under either §5(a)(1) or §6(a), and Plaintiff supposedly failed to state its avoidance claims with the particularity called for under Rule 9(b). Further, Defendant Jones contends that the FAC is "unclear and ambiguous", and therefore should be dismissed pursuant to Rule 12(e). As shown by the following, (a) Plaintiff has properly stated a *prima facie* case for avoidance of the $690,000 transfer by Gouletas to Defendant Jones pursuant to §§5(a)(1) and 6(a); (b) Plaintiff has pled with the requisite Rule 9(b) particularity the circumstantial evidence and indicia of fraudulent intent by the transferor, Gouletas, to state avoidance actions under §§5(a)(1) and 6(a); (c) Plaintiff need not allege facts to defeat Defendant Jones' §9(a) affirmative defense of good faith; and (d) the FAC is not "unclear and ambiguous" so as to require a dismissal under Rule 12(e). Accordingly, Defendant Jones' Motion to Dismiss should be denied.

I.    **Plaintiff Has Properly Stated A *Prima Facie* Case For Avoidance Actions Against Defendant Jones Under §§5(a)(1) And 6(a) With The Requisite Rule 9(b) Particularity To Put Defendant Jones On <u>Fair Notice Of The Nature Of Plaintiff's Claims</u>**

A.    <u>Legal Standard</u>

This Court is well aware of the legal standard to be applied when considering a Rule 12(b)(6) motion to dismiss:

> A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*quoting*

---

[3] References to "Rule __" are to the Federal Rules of Civil Procedure.

> *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80
> (1957)).

*United States ex rel. Ceas v. Chrysler Grp. LLC*, 2016 U.S. Dist. LEXIS 7923, *4-5 (N.D. Ill.

Jan. 19, 2016) (Dow, J.). As noted by Judge St. Eve in connection with a §5(a)(1) case,

> the Seventh Circuit . . . explained "[that Rule 8(a)] reflects a liberal
> notice pleading regime, which is intended to 'focus litigation on the
> merits of a claim' rather than on technicalities that might keep
> plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir.
> 2009) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514,
> 122 S.Ct. 992, 152 L. Ed. 2d 1 (2002)).

*Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst.*, 2010 U.S. Dist. LEXIS 83938, *3 (N.D. Ill.

Aug. 17, 2010).

> To survive a Rule 12(b)(6) motion to dismiss,

> the factual allegations in the complaint must be sufficient to raise
> the possibility of relief above the "speculative level," assuming that
> all of the allegations in the complaint are true. *E.E.O.C. v.
> Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)
> (*quoting Twombly*, 550 U.S. at 555). The Court accepts as true all
> of the well-pleaded facts alleged by the plaintiff and all reasonable
> inferences that can be drawn therefrom. *See Barnes v. Briley*, 420
> F.3d 673, 677 (7th Cir. 2005).

*United States ex rel. Ceas*, 2016 U.S. Dist. LEXIS 7923, *5. The *Twombly/Iqbal* plausibility

requirement "'simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence' supporting the plaintiff's allegations . . .." *Brooks*, 578 F.3d at 578, *quoting*

*Twombly*, 550 U.S. at 556. *See, also, Olson v. Champaign Cnty*, 784 F.3d 1093, 1099 (7th Cir.

2015).

After meeting the plausibility test, the issue upon a Rule 12(b)(6) motion to dismiss is

whether the factual allegations in the Complaint "give the defendant fair notice" about the nature

of the plaintiff's claims. *Twombly*, 550 U.S. at 555, *quoting Conley*, 355 U.S. at 47. Specific

facts, however, "are not necessary; the statement need only 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), *quoting Twombly*, 550 U.S. at 555. *See, also, Cruze v. Cook Cnty. Sheriff's Office*, 2016 U.S. Dist. LEXIS 129490, *10 (N.D. Ill. Sept. 22, 2016) (Dow, J.). Further, the Court "reads the complaint and assesses its plausibility as a whole." *Payton v. Williams*, 2017 U.S. Dist. LEXIS, 197535, *8-9 (N.D. Ill. Dec. 1, 2017) (Dow, J.), *citing Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

In addition to stating valid avoidance claims against Defendant Jones, Plaintiff has pled its §§5(a)(1) and 6(a) avoidance actions with the requisite Rule 9(b) particularity. Avoidance actions against a transferee under §§5(a)(1) and 6(a) are "fraudulent" actions in name only[4], with no requirement that a plaintiff show any fraudulent intent on the part of the transferee. *See Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 168 (N.D. Ill. 1998); *Brandt v. Leasing One Corp. (In re Equipment Acquisition Res., Inc.)*, 481 B.R. 433, 440 (Bankr. N.D. Ill. 2012), *quoting In re Lake States Commodities, Inc.*, 253 B.R. 866, 871 (Bankr. N.D. Ill. 2000). Accordingly, the usual exacting pleading requirements for a common law fraud claim or a securities fraud claim do not come into play for §§5(a)(1) and 6(a) avoidance actions. *See Mamacita, Inc. v. Colborne Acquisition Co., LLC*, 2011 U.S. Dist. LEXIS 25146, *19-20 (N.D. Ill. Mar. 11, 2011) (Leinenweber, J.), *quoting Regan v. Ivanelli*, 246 Ill. App.3d 798, 803 (1993); *Allstate*, 2010 U.S. Dist. LEXIS 83938, *7-9.

As noted by Judge Leinenweber, "[t]he type of pleading required to state [an avoidance action] under the IUFTA is illustrated by *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) . . .." *Mamacita*, 2011 U.S. Dist. LEXIS 25146, *19. The Seventh Circuit in *General Elec. Capital Corp.*

---

[4] *See Brandon v. Anesthesia and Pain Mgmt. Assocs.*, 419 F.3d 594, 600 (7th Cir. 2005) ("The doctrine of 'fraudulent conveyance' has specific elements . . . that differ from normal usages of the word 'fraud,' which is therefore best avoided").

> cited with approval Form 13, which was formerly included in the
> Appendix of Form [to the Federal Rules of Civil Procedure]. . . .
> Although [Form 13] is no longer in use, courts have approved this
> manner of pleading in fraudulent conveyance cases without
> requiring the level of detail demanded by [the defendant] here.

*Mamacita, Inc.*, 2011 U.S. Dist. LEXIS 25146, *19-20.

Former Fed.R.Civ.P. Form 13 set forth the "fair notice" required for a fraudulent transfer

claim as follows:

> 4. Defendant C.D. on or about _____ conveyed all his property,
> real and personal [or specify and describe] to defendant E.F. for
> the purpose of defrauding plaintiff and hindering and delaying the
> collection of the indebtedness evidenced by the note above referred
> to.

*General Elec. Capital Corp.*, 128 F.3d at 1079-80 n. 4. That's it. As was noted in former Rule 84,

"[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended

to indicate the simplicity and brevity of statement which the rules contemplate." *See General*

*Elec. Capital Corp.*, 128 F.3d at 1079. And the same policy considerations apply to the

avoidance actions asserted against Defendant Jones in this case.

Here, the FAC is much more detailed than the minimal notice disclosures required by

former Form 13 and Rule 9(b). Indeed, in the FAC, Plaintiff alleges the time, date, dollar amount

and relevant parties to the transfer sought to be avoided, and alleges a sufficient number of

badges of fraud to meet the Rule 9(b) particularity requirement for the pleading of a §§5(a)(1)

and 6(a) avoidance actions. *See Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 83938, *7-9; *Mamacita,*

*Inc.*, 2011 U.S. Dist. LEXIS 25146, *19-20. Further, it should be kept in mind that Rule 9(b) also

provides that "intent, knowledge, and other conditions of a person's mind may be alleged

generally", and that "the particularity requirement of Rule 9(b) must be relaxed where the

plaintiff lacks access to all facts necessary to detail his claim . . .." *Corley v. Rosewood Care*

*Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *United States ex rel. Ceas*, 2016 U.S. Dist. LEXIS 7923, \*5.

The FAC is sufficiently detailed to put Defendant Jones on fair notice of the nature of Plaintiff's avoidance action claims so as to enable Defendant Jones to answer the FAC and otherwise prepare this case for trial. Finally, the admonition of Rule 8(e) should put all of Defendant Jones' arguments in their proper perspective: "Pleadings must be construed so as to do justice." Here, justice would be best served by allowing Plaintiff to conduct discovery as to the circumstances surrounding the $690,000 transfer by Gouletas to Defendant Jones on January 21, 2015, the $415,000 kickback by Defendant Jones to Gouletas through the Dorothea Touris checking account scheme (*see* FAC ¶¶20-29), and otherwise allow Plaintiff the opportunity to conduct the discovery necessary to prepare this case for trial.

As shown by the following, Plaintiff pled with the requisite Rule 9(b) particularity the circumstantial evidence and indicia of fraudulent intent by the transferor, Gouletas, to state avoidance actions against Defendant Jones under §§5(a)(1) and 6(a). Accordingly, Defendant Jones' Rule 9(b) challenge to the allegations in the FAC should be denied.

### B.    A §5(a)(1) Avoidance Action Focuses On The Fraudulent Intent Of The Transferor, Not The Transferee

Defendant Jones has made a number of attacks on Plaintiff's §5(a)(1) avoidance action, none of which has merit.

First, Defendant Jones argues that "Plaintiff has not . . . proven [alleged?] with non-conclusory factual allegations that Gouletas is the one who made the contested transfer." (Mem. (D.N. 62) p. 6) Not true. *See, generally*, FAC ¶¶1, 2, 20, 22, 26, 37, 38, 43, 45, 47, 56 & 78. In particular:

43. The closing on the sale of the Parking Lot occurred on December 29, 2014. The closing statement (Px 20) shows that from the $7,750,000 in sale proceeds, $2,038,703.84 was the balance due to the Seller. (*Id.* p. 2) . . . 800 SWP and HBI were and are the alter-egos of Gouletas, and the $2,038,703.84 in profits from the sale of the Parking Lot legally and equitably belonged to Gouletas.

45. Then on January 20, 2015, Mr. Teplinsky, for and on behalf of BPMS, directed how the remainder of the $1,271,218.84 from the BPMS escrow account was to be distributed. (Px 24) Of the $396,218.84 paid to Touris (Px 25), Gouletas then had Touris distribute $195,000 of those proceeds to his son, Steven Gouletas, and $50,000 of those proceeds to Gouletas' friend, George Spanos. Further, of the $690,000 distributed to Defendant Paul Jones, $415,000 from those proceeds were then deposited by Paul Jones into Touris' checking account so Gouletas could continue to pay his expenses without those funds being subject to execution by Gouletas' judgment creditors.

(FAC ¶¶43 & 45) With the allegations in the FAC viewed in a light most favorable to Plaintiff, and with all reasonable inferences to be drawn therefrom construed in Plaintiff's favor, Plaintiff has adequately alleged that it was Gouletas (through his agent) who made the $690,000 fraudulent transfer to Defendant Jones, and Defendant Jones who then made the $415,000 kickback to Gouletas through the Dorothea Touris checking account scheme.

<u>Second</u>, Defendant Jones contends that "Plaintiff has not alleged . . . when, how, by whom, or why [Defendant] Jones received the contested transfer." (Mem. (D.N. 62) p. 12) Again, not true. *See, generally*, FAC ¶¶1, 2, 20, 22, 26, 37, 38, 43, 45, 47, 56 & 58. In particular, at FAC ¶¶56 & 60(d), as well as at FAC ¶¶78 & 83(d), it is specifically alleged that on January 21, 2015, Defendant Jones received $690,000 from funds that, legally and equitably, belonged to Gouletas.

And <u>third</u>, Defendant Jones argues (without citation to any authority) that Plaintiff has not stated an avoidance action under §5(a)(1) because Plaintiff did not allege that Defendant Jones was a knowing "participant" in Gouletas' fraudulent transfer scheme. (Mem. (D.N. 62) p.

2) There is no such requirement, however, for a §5(a)(1) claim. Rather, a claim for avoidance of a transfer pursuant to §5(a)(1) focuses on the fraudulent intent of the transferor, Gouletas, without any requirement for a fraudulent intent on the part of the transferee, Defendant Jones.

> Pursuant to §5(a):

>> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; . . ..

740 ILCS 160/5(a). In turn, §5(b) provides that:

>> In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

>> (1) the transfer or obligation was to an insider;

>> (2) the debtor retained possession or control of the property transferred after the transfer;

>> (3) the transfer or obligation was disclosed or concealed;

>> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

>> (5) the transfer was of substantially all the debtor's assets;

>> (6) the debtor absconded;

>> (7) the debtor removed or concealed assets;

>> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred or the amount of the obligation incurred;

>> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

>> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b) (emphasis added).

There is no requirement in the IUFTA that a plaintiff asserting a §5(a)(1) avoidance action must show that the transferee (here, Defendant Jones) was a knowing participant in the transferor's intent to defraud the debtor's other creditors. *See Levit,* 222 B.R. at 168. As concluded by Judge Castillo in a §5(a)(1) case:

> Section 5 explains that fraud in fact [under §5(a)(1)] hinges upon a debtor's intent, and then details the "badges of fraud" useful in determining intent. Once a plaintiff has established fraudulent intent, the only defense to fraud in fact is set forth in §9 of the UFTA.

*Levit*, 222 B.R. at 168. Accordingly, in determining whether a transfer is voidable pursuant to §5(a)(1), "the focus is on the state of mind of the debtor . . . and '[c]ulpability on the part of the . . . transferees is not essential.'" *Brandt*, 481 B.R. at 440 (Bankr. N.D. Ill. 2012), *quoting In re Lake States Commodities, Inc.*, 253 B.R. 866, 871 (Bankr. N.D. Ill. 2000).

The IUFTA

> was enacted to enable a creditor to defeat a debtor's transfer of assets to which the creditor was entitled. . . . The purpose of the Act is to "invalidate otherwise sanctioned transactions made with a fraudulent intent." * * * In determining the validity of a transfer under the [IUFTA], the test is whether the transfer "directly tended or did impair the rights of [the] creditors."

*Northwestern Mem'l Hosp. v. Sharif*, 2014 IL App (1st) 133008, ¶¶16 & 31 (citations omitted). It should be kept in mind that Plaintiff is proceeding as the assignee of the Bankruptcy Trustee, and that equality of distribution among creditors "lies at the heart of fraudulent transfer law." *Smith v. SIPI, LLC*, 811 F.3d 228, 238 (7th Cir. 2016).

9

The IUFTA "provides that a transfer of property 'may be set aside as fraudulent if the transfer tends to hinder or defeat the rights of the grantor's creditor.'" *Mamacita*, 2011 U.S. Dist. LEXIS 25146, *16 (Leinenweber, J.), *quoting Regan v. Ivanelli*, 246 Ill. App.3d 798, 803 (1993). Therefore, if the plaintiff in a §5(a)(1) avoidance action proves fraudulent intent on the part of the transferor, the transfer is deemed fraudulent, even if it is in exchange for adequate consideration. *See Levit*, 222 B.R. at 169.

Accordingly, for a defendant transferee in a §5(a)(1) avoidance action such as Defendant Jones, the term "fraudulent transfer" is somewhat of a misnomer, because transfers may be voidable pursuant to the elements of the statutory cause of action without any fraudulent intent on the part of the transferee. As noted by Judge Posner for the Seventh Circuit, "[t]he doctrine of 'fraudulent conveyance' has specific elements . . . that differ from normal usages of the word 'fraud', which is therefore best avoided." *Brandon*, 419 F.3d at 600. Simply, for a §5(a)(1) avoidance action against a transferee, the fraud in fact requirement hinges upon the transferor's intent, with no corresponding fraudulent intent required on the part of the transferee. *See Levit*, 222 B.R. at 168; *Brandt*, 481 B.R. at 440.

### C. Plaintiff Has Made An Adequate Allegation Of Gouletas' Fraudulent Intent To State A Claim For Avoidance Under §5(a)(1)

Defendant Jones argues that Plaintiff has not stated an avoidance action under §5(a)(1) because "the majority of the 11 enumerated fraud factors [set forth in §5(b)] favor a finding that the transfer [to Defendant Jones] was not fraudulent . . .." (Mem. (D.N. 62) p. 7) In asserting an avoidance action under §5(a)(1), however, there is no requirement that a Plaintiff plead a majority, or any specific number, of the so-called (but, according to Judge Posner,

inappropriately labeled) "badges of fraud" set forth in §5(b). *See Brandon*, 419 F.3d at 599-60 (Posner, J.).

Here, Plaintiff has made an adequate allegation of Gouletas' fraudulent intent to state an avoidance action against Defendant Jones under §5(a)(1). While the list of "badges of fraud" in §5(b) is illustrative of circumstantial evidence to show a debtor's fraudulent intent, there is no set number of factors required to show Gouletas' intent to defraud his other creditors, and other evidence may be shown as circumstantial evidence of Gouletas' fraudulent intent. *See Levit*, 222 B.R. at 168; *Allen Drey Co. v. Generation, Inc.*, 22 Ill. App.3d 611, 618 (1st Dist. 1974) ("these indicia or 'badges of fraud' . . . afford a basis from which [the] existence [of fraud in an avoidance action] may be properly inferred").

Moreover, the "badges of fraud" listed in §5(b)

> are merely considerations . . . and a court need not consider all 11 factors . . .. When the factors are present in sufficient number, "it may give rise to an inference or presumption of fraud." . . . At the same time, "the symptoms are not additive" and it is possible that the presence of only one factor could entitle a party to relief.

*Bank of American v. WS Management, Inc.*, 2015 IL App (1st) 132551, ¶89 (citations omitted).

As concluded by Judge Kocoras in *Shapo v. Engle*, 2000 U.S. Dist. LEXIS 1691 (N.D. Ill. Feb. 11, 2000):

> Although the court may consider the existence of the badges of fraud in order to determine whether fraudulent intent exists under the UFTA, there is no absolute combination or number of badges a claimant must allege in order to state a sufficient claim. . . . Further, there is no one determining factor to a finding of fraud and the court may also consider other evidence. . . .

*Id*. at *9-10 (citation omitted) (emphasis added).

An additional indicia of fraudulent intent on the part of the debtor in connection with a §5(a)(1) action is whether (as here) the debtor preferred certain select creditors over other unfavored judgment creditors. As long ago noted by the United States Supreme Court:

> Conveyances may be fraudulent because the debtor . . . intends to hinder and delay [his creditors] as a class, or by preferring one who is favored above the others. There is no necessary connection between the intent to defraud and that to prefer, but inasmuch as one of the common incidents of a fraudulent conveyance is the purpose on the part of the grantor to apply the proceeds in such manner as to prefer his family or business connections, the existence of such intent to prefer is an important matter to be considered in determining whether there was also one to defraud.

*Van Iderstine v. National Discount Co.*, 227 U.S. 575, 582 (1913). *See, also, Tatle v. Schmidt (In re Peacock Food Markets, Inc.)*, 108 F.2d 453, 456 (7th Cir. 1939) (*citing Van Iderstine* to the same effect); *Prisbrey v. Noble*, 505 F.2d 170, 175 (10th Cir. 1974) (*citing Van Iderstine* for the proposition that "[t]he intent to prefer alone does not make a transfer fraudulent under [the former bankruptcy fraudulent transfer statute, 11 U.S.C. §107(d)(2)(d)] but is an important consideration in determining if an intent to defraud existed").

While numerous cases state that, as a general proposition, a debtor may prefer one creditor over another, that general statement comes with the caveat that a debtor may do so only so long as the debtor, in paying the preferred creditor, is not otherwise proceeding with the intent to defraud his other creditors.[5] As more recently noted by the Court in *Northwestern Mem'l Hosp.*, "[i]t is a correct statement that a debtor may prefer one creditor over another <u>as long as he acts without fraudulent intent</u>." 2014 IL App (1st) 133008, ¶31 (emphasis added). Accordingly, the payment by Gouletas to a preferred creditor (such as Defendant Jones) can still be challenged

---

[5] *See, e.g., Albers v. Zimmerman*, 376 Ill. 306, 310 (1941)("The well-established law is that a debtor may prefer one creditor <u>when</u> he <u>acts</u> <u>without</u> <u>fraud</u>, even though he transfers all his property to the preferred creditor. A debtor may prefer one creditor although he knowingly hinders and delays his other creditors in the collection of their claims, provided the conveyance is made in good faith to discharge the preferred claim") (emphasis added).

as a "fraudulent transfer" if the other elements of the statutory avoidance action under §5(a)(1) are otherwise met. *Id.*

Here, Plaintiff has alleged that Gouletas, after a number of judgments were entered against him (FAC ¶¶11-15), with citation liens prohibiting his transfer of assets (*id.* ¶¶16-18), came up with a scheme to defraud certain of his unfavored judgment creditors:

(1)      In violation of the citation liens, in mid-2014 Gouletas obtained and cashed numerous cashier's checks issued to himself (FAC ¶19);

(2)      In violation of the citation liens, in early 2015 Gouletas deposits over $811,000 in the checking accounts of his friend and American Invsco employee, Defendant Dorothea Touris, so Touris can write checks out of her account to Gouletas' friends and relatives, and so Gouletas can maintain his lavish lifestyle (FAC ¶¶20-29);

(3)      In violation of the Citation liens, Gouletas transfers his $3,600,000 in equity in the Garvey Court Project to his wife and other members of his family (FAC ¶¶30-33);

(4)      In violation of the citation liens, in mid-2014 Gouletas sells his stock in CIB Marine BankShares, with the $51,000 in sale proceeds deposited into his wife's checking account (FAC ¶¶34-36);

(5)      Pursuant to the HBI-Parking Lot Scheme, in January of 2015, Gouletas has the over $2,000,000 in profits from the sale of the parking lot disbursed to a Gouletas controlled entity, Defendant Home by Invsco, Inc. ("HBI"), pursuant to a bogus mortgage, and then has the $2,000,000 in profits disbursed to Gouletas' family and friends, and a certain select group of preferred creditors (FAC ¶¶37-46)[6]; and

(6)      In connection with the HBI-Parking Lot Scheme, of the $690,000 that Gouletas had disbursed to another preferred creditor, Defendant Paul Jones, $415,000 from those proceeds was then deposited by Defendant Paul Jones into Touris' checking account so Gouletas could continue to disburse those funds to his friends

---

[6]  In terms of the HBI-Parking Lot Scheme, "[t]he sum total of this factual setting depicts a secretive transaction the effect of which was to convert [the debtor's] only substantial asset into cash which could be more easily placed beyond the reach of creditors." *Alan Drey*, 22 Ill. App.3d at 619.

and relatives, and to pay his other expenses in the regular course of business without those funds being subject to execution by Gouletas' judgment creditors (FAC ¶45).

In terms of the "badges of fraud" listed in §5(b) which allow an inference of fraudulent intent on the part of Gouletas:

(1)     There were a number of transfers to insiders (FAC ¶57);

(2)     Gouletas retained possession or control of the funds that he transferred into Touris' checking accounts, including the $415,000 kicked back to Gouletas by Defendant Jones (FAC ¶45);

(3)     The transfer of Gouletas' funds into Touris' checking accounts was concealed, including the funds kicked back to Gouletas by Defendant Jones;

(4)     Before the subject transfers by Gouletas to his friends, relatives and preferred creditors, Gouletas had already been sued;

(5)     On the assumption that Gouletas accurately listed all of his assets in his Chapter 7 bankruptcy schedules, the transfers involved in this suit were of substantially all of Gouletas' assets;

(7)     Gouletas concealed his assets by transferring over $811,000 into the checking accounts of his friend and American Invsco employee, Touris;

(8)     Gouletas received no consideration for the transfer of the over $3,600,000 equity in the Garvey Court Project to his wife and other family members;

(9)     Gouletas was insolvent when the transfers were made (FAC ¶¶9 & 57; §3(b) ("A debtor who is generally not paying his debts as they become due is presumed to be insolvent")); and

(11)    Gouletas transferred the over $2,000,000 in profits from the sale of the parking lot to a purported lienor, HBI, who then transferred a substantial portion of those proceeds to insiders and other friends (including Defendant Jones), relatives and preferred creditors of Gouletas, with $415,000 of those funds then kicked back to Gouletas by Defendant Jones.

And finally, pursuant to the *Van Iderstine* doctrine, Gouletas transferred his assets to a preferred group of creditors, to the exclusion of certain unfavored judgment creditors. (FAC ¶¶1, 23, 24, 57 & 59) Accordingly, the voluntary transfers by Gouletas to the preferred creditors (including Defendant Jones) in fraud of Gouletas' unfavored judgment creditors are voidable pursuant to §5(a)(1). *See Northwestern Mem'l Hosp.*, 2014 IL App (1st) 133008, ¶31.

With the many millions of dollars in judgments against Gouletas, and the numerous citation liens prohibiting his transfer of assets, a fair inference of fraudulent intent on the part of Gouletas arises for the transfers asserted herein. Therefore, Plaintiff's allegations are sufficient to state an avoidance action under §5(a)(1), and clearly state enough circumstantial evidence to indicate an intent on the part of Gouletas to defraud his other unfavored judgment creditors. *See Apollo Real Estate Inv. Fund IV, L.P. v. Gelber*, 403 Ill. App.3d 179, 194-97 (1st Dist. 2010) (citing cases[7]). As concluded by Judge Kocoras in a §5(a)(1) case, "[p]resently, [plaintiff's] allegations seem to assert enough of the badges of fraud such that it is plausible that an inference of fraud could arise." *Shapo*, 2000 U.S. Dist. LEXIS 1691, *10. *See, also, Star Ins. Co. v. Risk Mktg. Group*, 507 F.Supp.2d 942, 947 (N.D. Ill. 2007) (Bucklo, J.), *aff'd* 561 F.3d 656 (7th Cir. 2009) (sufficient allegations of badges of fraud to presume a fraudulent intent on the part of the transferor); *Mamacita, Inc.*, 2011 U.S. Dist. LEXIS 25146, *16-18 (sufficient allegations of "badges of fraud" to show fraudulent intent on the part of the transferor); *Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 290 (Bankr. N.D. Ill. 2003) ("The Court finds that a sufficient number of the 'badges of fraud' exists to give rise to an inference of the Debtor's intent to hinder or delay the creditors").

---

[7] The IUFTA at §5(a)(1) parallels 11 U.S.C. §548(a)(1). "Because the provisions of the UFTA parallel §548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA." *Levit*, 222 B.R. at 164.

### D. Plaintiff Need Not Allege Facts To Defeat Defendant Jones' Affirmative Defense Of Good Faith

Defendant Jones argues that Plaintiff has not properly stated a §5(a)(1) avoidance action because

> Plaintiff has completely ignored that Section 9 of the UFTA provides a defense to transferees who took such transfer in good faith and for reasonably equivalent value . . . [and,] Plaintiff has failed to present any facts to support its conclusion that [Defendant] Jones knew or should have known of Gouletas' legal problems.

(Mem. (D.N. 62) pp. 8 & 9) Defendant Jones, however, has incorrectly assumed that it was Plaintiff's burden, in asserting a §5(a)(1) avoidance action, to allege facts to defeat Defendant Jones' §9(a) affirmative defense of good faith.

An avoidance action under §5(a)(1) is not a strict liability statute. Rather, a creditor who claims to have been paid by the transferor in good faith and in the regular course of business can attempt to defeat a §5(a)(1) avoidance action by pleading, and then proving, the "good faith" affirmative defense set forth in §9(a). *See Levit*, 222 B.R. at 168. While a plaintiff in an avoidance action must allege sufficient facts to plausibly state a *prima facie* case for a violation of §5(a)(1), a plaintiff need not plead facts to defeat a potential affirmative defense that a defendant may (but may not) eventually raise. Rather, the burden is upon the defendant in a §5(a)(1) avoidance action to plead and prove good faith as an affirmative defense. As noted by Judge Castillo, "§9(a) of the UFTA . . . requires defendants to prove both *good faith* and *full consideration* to establish an affirmative defense to fraud in fact." *Levit*, 222 B.R. at 165 (emphasis in original). *See, also, Knippen v. Grochocinski*, 207 U.S. Dist. LEXIS 36790, *17 & 19 (N.D. Ill. May 18, 2007) (Conlon, J.) (the transferee has the burden to prove the good faith defense); *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 879-80 (Bankr.

16

N.D. Ill. 2000) ("The defendant bears the burden of proof on the defense under [11 U.S.C.] §548(c)").

While misconstruing the burden of proof issue for a §9(a) "good faith" defense, Defendant Jones quotes from a portion of the 1974 decision in *Allen Drey Co. v. Generation, Inc.*, 22 Ill. App.3d 611, 619 (1st Dist. 1974). (Mem. (D.N. 63) p. 9) The Seventh Circuit in *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717 (7th Cir. 2009), however, went much further on explaining the availability of a "good faith" affirmative defense under §9(a) to a §5(a)(1) avoidance action:

> It is somewhat easier to identify situations in which good faith is lacking. Thus, for example, good faith will probably be lacking if the transferee knows that the transfer may be voidable because he knows of an outstanding judgment against the transferor. The Illinois Court of Appeals has found a lack of good faith where the transferee knew of a pending lawsuit against the transferor and accepted the transfer without informing the plaintiff. *Kennedy v. Four Boys Labor Servs.*, 279 Ill. App. 3d 361, 664 N.E.2d 1088, 1093, 216 Ill. Dec. 160 (Ill. App. Ct. 1996). Similarly, in a case decided before the enactment of UFTA, the Illinois Court of Appeals found a lack of good faith where the transferee knew of an outstanding judgment and sought protection should any claim to the transferred property arise from that judgment. *Alan Drey Co. v. Generation, Inc.*, 22 Ill. App. 3d 611, 317 N.E.2d 673, 680 (Ill. App. Ct. 1974). * * * Most importantly, the Illinois cases we cited earlier show that a transferee who knows about a judgment against the transferor does not take the asset in good faith.

560 F.3d at 721-22.

Plaintiff has not yet had the opportunity to conduct discovery from Defendant Jones in this case. In Defendant Jones' Answer and Affirmative Defense, however, Defendant Jones failed to allege the specifics of how, why and from whom he received the $690,000 payment on January 21, 2015: "The funds were received by [Defendant] Jones in good faith and in satisfaction of pre-existing obligations due [Defendant] Jones, thereby providing reasonably

17

equivalent value for all amounts received." (Ans. (D.N. 64) pp. 55-56 ¶3) A good faith creditor who was paid in the ordinary course of business should have specific information about the how, from whom, and the why $690,000 was paid by a debtor who had long ago defaulted on the financial obligations owed to the transferee, and why $415,000 of those funds was then kicked back to Gouletas through the Dorothea Touris checking account scheme.

According to Defendant Jones:

> The Complaint contains no allegations against [Defendant] Jones save that he received a transfer -- allegedly from Gouletas or some unidentified entity or individual acting on Gouletas' behalf. The Complaint contains no allegations of [Defendant] Jones having any connection with Gouletas' allegedly fraudulent scheme except for receiving some money due him from Gouletas or one of Gouletas' entities. Plaintiff has failed to allege any facts to support its conclusion that [Defendant] Jones had, or should have had, knowledge of Gouletas' problems.

(Mem. (D.N. 62) p. 10) Defendant Jones, again, is wrong.

The facts as alleged, and the reasonable inferences to be drawn therefrom, show that Defendant Jones was, at a minimum, aware of Gouletas' financial difficulties and fraudulent transfer scheme.

Here, Plaintiff has a good faith basis to allege that the $690,000 payment by Gouletas to Defendant Jones on January 21, 2015 was not in the regular course of business. Rather, although not revealed by Defendant Jones in his Answer or otherwise, on information and belief, Defendant Jones was a friend of Gouletas who invested in one or more of Gouletas' "American Invsco" projects and received an "investor note" from a Gouletas entity with a maturity date over ten years prior to the January 21, 2015 payment, and thereby the delinquent debt was probably barred by the Illinois ten-year statute of limitations. *See* 735 ILCS 5/13-206. Further, in the FAC it is specifically alleged that:

1.   The Debtor, Nicholas S. Gouletas ("Gouletas"), engaged in a complicated scheme to hide, transfer and otherwise shield his assets from the claims of certain of his judgment creditors. And while Gouletas was implementing his fraudulent transfer scheme, he selectively transferred over $2,000,000 in cash and his other assets to his friends, relatives and a select group of creditors, all in violation of state court citation liens prohibiting Gouletas from transferring his assets. On the eve of being held in contempt for violation of one such citation lien, Gouletas sought the sanctuary of bankruptcy through a Chapter 7 bankruptcy filing.

20.  Apparently tired of the process of obtaining cashier's checks in his name, Gouletas then turned to a close personal friend, Touris, to assist him with a money laundering scheme that would allow Gouletas to maintain his lavish lifestyle, but all the while evade paying his creditors, and skirt the judicial prohibitions against his transfer of assets imposed by the Citation Liens.

41.  In late 2014, Gouletas received a solid offer from a financially sound third party to purchase the Parking Lot for $7,750,000. With the RCI Mortgage and other expenses of the sale totaling approximately $5,711,000, Gouletas, with the assistance of one or more Doe Defendants 1-10, came up with a plan to shield the approximately $2,038,000 in profits from Gouletas' unfavored creditors. Basically, the plan involved the false claim that the HBI Second Mortgage was legitimate, and then Gouletas would have the approximately $2,038,000 in profits from the sale of the Parking Lot (that otherwise would have been paid to Gouletas) distributed to certain preferred creditors and other friends and relatives of Gouletas, with those friends and relatives then funneling a portion of the profits from the sale of the Parking Lot back to Gouletas through Touris' checking accounts.

26.  And then, in March of 2015, Gouletas told Touris that a check for $415,000 was coming to her, which she was to deposit in her account for the payment of Gouletas' expenses. Touris then deposited the $415,000 check into her checking account at Chase Bank. (Px 11) According to Touris, she and Gouletas "talked about it together and he wanted the bills paid, so . . . he asked me [Touris], would you deposit this [$415,000 check] in your account and pay the bills." Although Gouletas claimed that the $415,000 was a "loan" to him from Defendant Paul Jones, he admitted that the $415,000 was his money. The total amount of Gouletas' funds that Gouletas deposited into the Touris Chase Account was in excess of $431,145.

45. Then on January 20, 2015, Mr. Teplinsky, for and on behalf of BPMS, directed how the remainder of the $1,271,218.84 from the BPMS escrow account was to be distributed. (Px 24) Of the $396,218.84 paid to Touris (Px 25), Gouletas then had Touris distribute $195,000 of those proceeds to his son, Steven Gouletas, and $50,000 of those proceeds to Gouletas' friend, George Spanos. Further, of the $690,000 distributed to Defendant Paul Jones, $415,000 from those proceeds were then deposited by Paul Jones into Touris' checking account so Gouletas could continue to pay his expenses without those funds being subject to execution by Gouletas' judgment creditors.

(FAC ¶¶1, 20, 41, 26 & 45)

In addition, Plaintiff, in good faith, can additionally allege that Defendant Jones has admitted that:

(1)    he "wasn't certain what [the $415,000 check] pertained to";

(2)    the $690,000 payment to him by Gouletas was "kind of strange"; that he didn't know "what it pertained to"; that he didn't know "where the money came from"; and that Gouletas simply said "deposit this, $690,000, but then I need you to pay [the $415,000] to Dorothea Touris; that's the only way I [Gouletas] can get my money out of this";

(3)    the "had no idea" why he wrote a check to Touris for $415,000;

(4)    the didn't even know Touris, and never spoke with her;

(5)    Gouletas never explained why he didn't just write a check to Dorothea Touris himself; and

(6)    while Defendant Jones supposedly "lost a ton of money investing with Gouletas", "helping him [Gouletas] out was the only way I could get some of my money back."

Although Plaintiff is not required to plead facts to controvert Defendant Jones' affirmative defense of good faith under §9(a), Plaintiff will be able to offer evidence at trial to show that Defendant Jones knew not only of Gouletas' difficult financial condition, but also knew of Gouletas' money laundering and fraudulent transfer scheme.

But in any event, it is not a plaintiff's burden in a §5(a)(1) avoidance action to plead sufficient facts to defeat a defendant's affirmative defense of good faith under §9(a). Rather, Defendant Jones bears that burden, which, Plaintiff respectfully submits, will be a difficult burden for Defendant Jones to meet. It is respectfully submitted that the "good faith" of affirmative defense under §9(a) to a §5(a)(1) avoidance action involves numerous disputed questions of fact which should be resolved by the jury upon the trial of this case. Indeed, for the $690,000 in cash transferred by Gouletas to a "friend", Defendant Jones, with $415,000 of those funds then parked by Defendant Jones in Dorothea Touris' personal checking account for the benefit of Gouletas, "the inescapable implication" is that Gouletas and Defendant Jones, along with Defendant Touris, were knowing and active participants in a fraudulent transfer scheme. *See Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 721 (7th Cir. 2002) (Posner, J.).

Finally, under the circumstances of Gouletas' precarious financial position and the delinquency of the debt, prudence (and good faith) would have dictated that Defendant Jones place the funds in the registry of the Court and file an interpleader action so that all of Gouletas' creditors would be treated fairly. *See For Your Ease Only*, 560 F.3d at 723. The failure of Defendant Jones to do so, and the failure to have received the $690,000 in the ordinary course of business, with $415,000 of those funds then kicked back by Defendant Jones to Gouletas through the Dorothea Touris checking account scheme, shows Defendant Jones' lack of good faith.

### E.     Plaintiff Has Properly Pled A §6(a) Avoidance Action Against Defendant Jones

Plaintiff has also brought suit against Defendant Jones to avoid the $690,000 transfer by Gouletas to Defendant Jones pursuant to §6(a) of the IUFTA, which provides that:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in

> exchange for the transfer . . . and the debtor was insolvent at that
> time or the debtor became insolvent as a result of the transfer . . ..

740 ILCS 160/6(a).

Defendant Jones argues that Plaintiff has not properly stated a §6(a) avoidance action because, supposedly, "Plaintiff's Complaint has not pled any facts which allege and substantiate that [Defendant] Jones received a transfer from Gouletas and that Gouletas did not receive reasonably equivalent value." (Mem. (D.N. 62) p. 12) As a full and fair review of the FAC would show, Plaintiff did, in fact, allege sufficient facts to substantiate that Defendant Jones received a $690,000 transfer from Gouletas' agent (*see* FAC ¶¶1, 2, 20, 22, 26, 37, 38, 43, 45, 47, 56 & 78; Px 24), and Plaintiff adequately alleged that Gouletas did not receive reasonably equivalent value for the transfer. (*See* FAC ¶¶54 & 79) As in *General Elec. Capital Corp.*, 128 F.3d at 1079-80, Plaintiff has sufficiently detailed the circumstances surrounding the transfer of the $690,000 by Gouletas' agent to Defendant Jones so as to put Defendant Jones on fair notice of the nature of Plaintiff's §6(a) avoidance action against Defendant Jones. Accordingly, Defendant Jones' Rule 12(b)(6) Motion to Dismiss Plaintiff's §6(a) avoidance action should be denied.

### III.    The FAC Is Clear As To Which Counts Are Asserted Against Defendant Jones

Finally, Defendant Jones argues that the FAC should be dismissed pursuant to Rule 12(e) because, supposedly, "Plaintiff has not made clear which specific counts are directed against which defendants by specifying same in the individual counts' titles." (Mem. (D.N. 62) p. 12) Further, Defendant Jones claims that the FAC is defective because it "has no Wherefore clause and only a non-specific Prayer at the end of the Complaint which generally asks for judgment to be entered against 'the defendants.'" (*Id.* p. 13) Defendant Jones' claims of ambiguity as to the allegations in the FAC are without merit.

In the body of Counts One (FAC ¶¶55-60) and Four (FAC ¶¶77-83), Plaintiff makes clear as to the date and the amount of the avoidance action claims that are being asserted against Defendant Jones. Indeed, in Defendant Jones' Answer, he readily acknowledges that Plaintiff's claims in Counts Two, Three, Five, Six, Seven and Eight are "not directed against Defendant [Jones] and no answer is therefore required." (Ans. (D.N. 64) ¶¶62, 69, 84, 86, 89 & 91) No confusion there.

Finally, in the Prayer, Plaintiff states that it seeks "actual damages as set forth in each Count above . . ." (D.N. 11 p. 34) There is no ambiguity as the amount of damages Plaintiff seeks to recover from Defendant Jones for the avoidance actions set forth in Counts One and Four.

Accordingly, Defendant Jones' Motion to Dismiss pursuant to Rule 12(e) should be denied.

## PRAYER

Upon a fair reading of the FAC as a whole, it is readily apparent that Plaintiff has plausibly stated §§5(a)(1) and 6(a) avoidance actions against Defendant Jones, and pled its avoidance claims with sufficient particularity to put Defendant Jones on fair notice of the nature of Plaintiff's claims, with no ambiguity or lack of clarity as to the claims Plaintiff asserts against Defendant Jones in this suit. Accordingly, Defendant Jones' Motion to Dismiss should be denied.

Respectfully submitted,

ARMSTRONG LAW FIRM, P.C.

DATED: June 4, 2018.    By   *F. Dean Armstrong*
                     F. Dean Armstrong, Esq.
                 ARDC #6199894
                 23353 S. 88th Avenue
                 Frankfort, IL 60423
                 815/464-3243
                 Fax: 815/464-3449
                 armstronglaw@sbcglobal.net
                 **Attorneys for Plaintiff**
                 **D.A.N. Joint Venture III, L.P.**

### Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 4th day of June, 2018.

                 */s/F. Dean Armstrong*
                 F. Dean Armstrong