**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **D.A.N. JOINT VENTURE III, L.P.,** | ) | |
| **as Assignee of Bankruptcy Trustee** | ) | |
| **Richard M. Fogel, the Chapter 7 Trustee** | ) | |
| **For the Bankruptcy Estate of Debtor** | ) | **Case No. 1:18-cv-00349** |
| **Nicholas S. Gouletas,** | ) | **Judge Robert M. Dow** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DOROTHEA TOURIS, et al.,** | ) | |
| **Defendants.** | ) | |

**DOROTHEA TOURIS'S MEMORANDUM OF LAW IN SUPPORT OF HER**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT**
**TO RULES 12(b)(6) and 9(b) and MOTION TO JOIN AND ADOPT**
**DEFENDANT NATEL MATSCHULAT'S RULE 12(b)(6) MOTION TO**
**DISMISS BASED ON PLAINTIFF'S LACK OF STANDING**

Defendant Dorothea Touris ("Ms. Touris"), by her attorney, and in support

of her motions pursuant to FED. R. CIV. P. 12(b)(6) and 9(b) to: (1) dismiss

plaintiff's First Amended Complaint ("Complaint") and (2) join and adopt

defendant Natel Matschulat's Rule 12(b)(6) motion to dismiss based on plaintiff's

lack of standing (Doc. #68), respectfully submits her memorandum of law in

support of her motions, and states as follows:

## INTRODUCTION

Ms. Touris moves to dismiss plaintiff's complaint pursuant to Rules

12(b)(6) and 9(b) on several bases. The first addresses plaintiff's lack of standing

1

to bring this action, requiring that it be dismissed, with prejudice, in its entirety. The others address plaintiff's failure to state claims upon which relief may be granted, including its failure to plead facts with the particularity for fraud as required by Rule 9(b), specifically as to Counts I, IV, V, VI, VII and VIII.

## I.      Plaintiff Lacks Standing to Pursue this Matter.

Plaintiff 's complaint purports to allege claims for fraudulent conveyance under the Illinois Uniform Transfers Act, 740 ILCS 160/1 *et seq.* ("the IUFTA"). Plaintiff further attempts to allege common law causes of action against Ms. Touris for civil conspiracy to commit fraud, aiding and abetting fraud, "tortious interference with expectancy of collection upon judgments against Gouletas," and "reimbursement of funds owed to Gouletas prior to the time that he filed for bankruptcy."  Plaintiff asserts all of its claims in this matter as the assignee of claims that allegedly could have been asserted by the Chapter 7 bankruptcy trustee ("Trustee") of debtor Nicholas Gouletas's ("Gouletas" or "Debtor") bankruptcy estate.

However, the trustee, from whom plaintiff purports to have purchased these "litigation claims and alter-ego claims" (Doc. #11, ¶51), has no authority to

2

assign or transfer any of these claims to a third party, such as this plaintiff.[1] Consequently, plaintiff lacks standing to bring this action.

In the interest of judicial economy and efficiency, Ms. Touris joins in and adopts defendant Natel Matschulat's Rule 12(b)(6) motion to dismiss (Doc. #68) which specifically provides the reasons and law warranting the dismissal of plaintiff's claims for its lack of standing. Therefore, for all the reasons set forth in that motion, the complaint should also be dismissed, with prejudice, in its entirety, for lack of standing as to Ms. Touris as well.

## II.    Counts I and IV Alleging Fraudulent Transfers Require Dismissal for Failure to State a Claims for Relief.

At Counts I and IV, plaintiff purports to assert two claims for "Avoidance of Fraudulent Transfers" pursuant to the Illinois Uniform Transfers Act, 740 ILCS 160/1 *et seq.* ("the IUFTA"). But neither count alleges claims upon which relief may be granted against Ms. Touris given the absence of facts pled to support these claims.

---

[1] Ms. Touris joins and adopts defendant Natel Matschulat's motion to dismiss plaintiff's complaint brought for lack of standing, and for the same reasons. That motion is presently being considered by the Court. (Doc. #68) Accordingly, Ms. Touris requests that the Court stay its consideration and disposition of the remaining parts of her instant motion to dismiss with respect to Counts I, V, VI and VII, until the Court has litigated and disposed of defendant Natel Matschulat's motion to dismiss on lack of standing pursuant to Rule 12 (b)(6).

1.      **<u>Plaintiff's Claim Under §5(a)(1) Fails to State a Claim for Relief.</u>**

In attempting to fashion a claim pursuant to the IUFTA §5(a)(1) at Count I, plaintiff alleges that Ms. Touris, was an "insider" within the meaning of the IUFTA "because Touris acted as a 'managing agent' for the handling, use and distribution of Gouletas' funds." (Doc. #11 at ¶57)   However, the complaint is devoid of any facts that support its claim that Ms. Touris was debtor's "managing agent," and, thereby, an insider under the IUFTA.

Since Ms. Touris is not an "insider" to individual debtor Gouletas as provided for individual debtors by the IUFTA, plaintiff reaches beyond those statutory terms, and, instead, qualifies the meaning of "managing agent" by suggesting that Ms. Touris "***acted as***" a "managing agent."  But this attempt to modify that IUFTA definition and foist this reduced status upon Ms. Touris is of no avail because the "managing agent" relationship is one which exists within the formal corporate or partnership context – not one which found to be between mere friends.

The IUFTA defines an "insider" in relation to an individual debtor, such as Gouletas, as either: (a) a relative of the debtor of a general partner of the debtor; (b) a partnership in which the debtor is a general partner; (c) a general partner in a partnership described in clause (b); or (d) a corporation of which the debtor is a

director, officer, or person in control. 740 ILCS 160/2(g)(1). Clearly, Ms. Touris does not qualify as an insider under any of these definitions.

Undaunted, plaintiff moves on to the remaining IUFTA insider definitions and chose to apply the term "managing agent." 740 ILCS 160/2(g)(5) Apparently realizing that this term is also not relevant to individual debtors, but, rather, applies to formal business entities and their relationships with business associates, plaintiff claims that Ms. Touris was an 'insider' within the meaning of 740 ILCS 160/2(g)(5) because she "**acted as** a 'managing agent' of Gouletas for the handling, use and distribution of Gouletas' funds." (Doc. #11 at ¶57) However, the only relationship pled to have existed between Gouletas, individually, and Ms. Touris, is that they were friends and that she did design work for American Invsco. (Doc. #11 at ¶21)

Plaintiff further attempts to bolster its preference by claiming that "Gouletas had been sued as well as threatened with further suits," and merely imputes that knowledge upon Ms. Touris. But plaintiff does not (and cannot) plead that Ms. Touris had known that Gouletas had been sued or threatened with more actions. (Id.). Indeed, there are no allegations pled that Ms. Touris had knowledge of any judgments, citations or lawsuits against Gouletas.

In *A.G. Cullen Constr., Inc. v. Burnham Partners, LLC,* 29 N.E.3d 579 (Ill. App. 1st 2015) the Illinois Appellate Court addressed the question of a managing

agent qualifying as an insider under the IUFTA provision advanced by plaintiff here, albeit in the context of business entities, not individuals.[2]  The relevant facts in that case include that defendant Burnham Partners LLC, an Illinois limited liability real estate development company, created Westgate Ventures LLC, to develop a warehouse and distribution facility.  Westgate was governed by the Westgate Ventures I, LLC, limited liability agreement (LLC agreement). The LLC agreement named defendant Burnham as the initial manager of Westgate and listed numerous duties of the manager, including acquisition, ownership, improvement, sale, and lease of company property.

Westgate and Burnham later entered into a development and asset management agreement (development agreement) in which Burnham agreed to provide development services to Westgate, including purchasing land, hiring an architect, engineers, and contractors, overseeing construction of the building, finding a tenant, and ultimately, selling the building.  The development agreement also provided that the duties of the project manager, Burnham, would be performed and supervised by Robert Halpin and that Westgate would pay Burnham a development management fee. *Id.*, at 29 N.E.3d 582.

---

[2] A search for cases involving the IUFTA's managing agent meaning in the context of an individual debtor rendered negative results.

Eventually, failures of payments occurred with respect to the project, and after a series of arbitrations, litigation and a filed bankruptcy by Westgate, the Illinois Appellate Court reviewed, (among others), the issue of whether the UFTA was violated when, in winding down Westgate, Burnham disbursed all the company's assets to themselves and other unsecured creditors when they knew their potential liability to plaintiff there on its arbitration claim. The Illinois Appellate Court concluded that:

> First, under the [IUFTA], where the debtor is a corporation, like Westgate, an 'insider'… also includes the managing agent of Westgate. 740 ILCS 160/2(g)(4), (5) (West 2012). Burnham, as the managing agent of Westgate, constituted an insider. Robert Halpin was also an insider, as the sole member of Burnham, which held a 90% interest in Westgate and was in control. Lori Halpin was also an insider under the Act, as the "relative of a person in control."

*Id.*, at 29 N.E.3d 538. Importantly, the appellate court's finding that Burnham was Westgate's managing agent under the IUFTA was in recognition of the facts that Burnham - an LLC - agreed, pursuant to a development agreement, to provide specific services and undertake duties within a commercial relationship between business entities. That development agreement also provided for the duties of the project manager, Burnham. Also, Burnham's sole member (Halperin) as the managing agent, was found to be an insider, and, in turn, his wife was also an insider because she was a relative of a person in control.

Unlike the facts in *A.G. Cullen Constr., Inc. v. Burnham Partners*, there existed no such relationship between Gouletas and Ms. Touris which makes her Gouletas's managing agent within the meaning of the IUFTA, despite plaintiff's attempt to create one. There is no agreement creating any business relationship providing that any duties were to be performed by her on his behalf, and no employment agreement existed between them. Certainly, no agency relationship has been alleged, nor facts pled, which can suggest the existence of any such relationship.

Analogously, in *Heater v. Chesapeake & Ohio Railway Co.*, 497 F.2d 1243 (7th Cir. 1974) the Seventh Circuit considered the definition of "managing agent" in the corporate context as was called for by former FED. R. CIV. P. 43(b), which then provided that:

> A party may call an adverse party or an officer, director or managing agent of a public or private corporation which is an adverse party…

The court of appeals considered this provision and ruled that:

> An employee is a 'managing agent' only if he acts with supervisory authority, being invested with general powers to exercise his discretion and judgment in dealing with corporate matters and his interests are identified with those of the corporation.

*Heater,* at 497 F.2d 1247-48 (citations omitted).

Again, consistent with the Illinois Appellate Court's conclusion in the IUFTA context, the Seventh Circuit determined that a managing agent is a status

8

which exists within the corporate business relationship, and that the term's definitional qualities include supervisory authority, powers to use discretion and judgments, and common interests with the person's corporate entity. There are simply no such qualities presented, (and certainly none alleged), to have existed between these friends, Ms. Touris and Gouletas. Ultimately, there is nothing factual in plaintiff's complaint which establishes that Ms. Touris was Gouletas's managing agent, and thereby, an insider under the IUFTA.

For these reasons, the complaint fails to state a claim for which relief can be granted against Ms. Touris on the basis that she was Gouletas's managing agent, requiring that Count I be dismissed.

2. **Plaintiff's Claim Under §6(a) Fails to State a Claim for Relief.**

At Count IV plaintiff purports to state a claim pursuant to the IUFTA §6(a) and alleges that Ms. Touris received four cash transfers which are voidable because "Gouletas made the Cash Transfers without receiving a reasonably equivalent value in exchange for these transfers." (Doc. 11 at ¶78) However, this claim also fails because no facts are pled to show that Gouletas was insolvent within the meaning of the IUFTA.

"The elements of a cause of action under §6(a) of the UFTA are: (1) a transfer was made by the debtor; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property;

and; (3) the debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer." *In re Zeigler,* 320 B.R. 362, 375 (Bankr. N.D. Ill. 2005) (citations omitted). The IUFTA specifies that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation" (740 ILCS 160/3(a)), and, further, that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." (740 ILCS 160/3(b)).

In this instance, plaintiff fails to plead facts stating that Gouletas was legally insolvent at the time that the transfers were made to Ms. Touris in 2015, or, became insolvent as a result of these transfers - including by way of presumptive insolvency.  While the complaint alleges that Gouletas filed for Chapter 7 bankruptcy on January 17, 2016, this was actually a year after the first transfer complained of was made to Ms. Touris, and approximately eight months after the last such alleged transfer.  (Doc. #11 at ¶83)  Moreover, plaintiff offers no facts to support its general and conclusory statement that Gouletas became insolvent as a result of these alleged Cash Transfers to Ms. Touris. (Id. at ¶80)

Furthermore, plaintiff distorts the IUFTA's insolvency definition in stating that "Gouletas was generally not paying ***all of*** his debts as they became due;" this is in an apparent attempt to invoke §3(b)'s insolvency by presumption definition, and thereby trigger the Act's application.  (Doc. #11 at ¶9)  Actually,

10

the IUFTA's §3(b) provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." (740 ILCS 160/3(b))  The words "all of" are not found in the law, but they are added in the complaint. This certainly suggests that the IUFTA's authority should not be invoked in the case of some debts not being paid, while others are.  In other words, the law does not lend itself to situations where a debtor may generally be paying his debts but fails to pay only certain debts. See, *In re Unglaub*, 332 B.R. 303 (Bankr. N.D. Ill 2005) ("*Evidence that a debtor failed to pay some debts is not sufficient to prove that he is generally not paying his debts and, thus, will not give rise to a presumption that the debtor was insolvent at or near the time of the alleged fraudulent transfer*" under UFTA. Citing, *Schempp v. Lucre Mgmt. Group, LLC,* 75 P.3d 1157, 1164 (Colo. Ct. App. 2003)).

Accordingly, liability under the IUFTA §6(a) cannot be pled, as plaintiff seeks to do, by claiming that Gouletas was legally insolvent because he failed to pay "all of" his creditors because the law actually requires for him to have "*generally* not [been] paying his debts as they became due."  This contradicts plaintiff's claim that Gouletas's failure to pay some unidentified "unfavored creditors" while, at the same time admitting that he did "routinely pay" others, violates the Act.  (Doc. #11 at ¶9)  It does not. Therefore, Count IV fails to state facts supporting a claim under the IUFTA's §6(a).

At the same time, plaintiff does allege that as of March 31, 2013 Gouletas had a net worth of $25,287,560 and "was flush with cash" in the amount of $240,000. (Doc. #11 at ¶¶8,9)  The complaint further alleges that the outstanding judgments against Gouletas by January 23, 2014 totaled $12,522,130.  According to plaintiff then, Gouletas had a positive net worth as January 23, 2014 in the amount of approximately $12,765,430. (Doc. #11 at ¶¶12-14)  Because plaintiff is otherwise silent as to any time reference which establishes Gouletas's insolvency within the meaning of the IUFTA, (other than the date of his Bankruptcy filing in 2016), it has failed to plead facts establishing that Gouletas was legally insolvent at the time of any alleged transfers to Ms. Touris in 2015.  On the contrary, the complaint actually pleads facts demonstrating that Gouletas was solvent at the time of these transfers, while pleading no facts to show that he eventually became insolvent as a result of these particular transfers.

For these reasons Count IV also requires that it be dismissed.

## III.   The Complaint Fails to State Claims under its Purported Common Law Theories at Counts V, VI and VII.

In addition to its IUFTA statutory based claims, plaintiff further alleges various common law claims against Ms. Touris.  However, plaintiff's inadequate factual allegations support none of these in stating claims for which relief can be granted, and these counts are even less sustainable in light of Rule 9(b)'s heightened pleading requirement for fraud claims.

1.      **No Claim for Civil Conspiracy to Commit Fraud is Pled.**

Although the complaint purports to allege a claim for civil conspiracy to

commit fraud at Count V, the limited facts that are pled fail to do so. Even the

case upon which plaintiff relies in support of this claim actually rejects it. In that

case, the Bankruptcy Judge instructed that:

> A complaint need not contain detailed factual allegations, but "the grounds
> of his entitlement to relief requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do." [*Bell
> Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, at 1964-65 (2007)] (internal
> quotations omitted). Factual allegations must show that the right to relief
> is more than speculative and "state a claim to relief that is plausible on its
> face." *Id.*, at 1965… The "circumstances constituting fraud" include "the
> identity of the person who made the misrepresentation, the time, place and
> content of the misrepresentation, and the method by which the
> misrepresentation was communicated to the plaintiff." *Vicom, Inc. v.
> Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994). "This means the
> who, what, when, where, and how...." *DiLeo v. Ernst & Young,* 901 F.2d 624,
> 626 (7th Cir.1990).

*In re Restaurant Development Group, Inc., Debtor., Paloian v. Greenfield*, 397 B.R. 891,

896 (Adversary Complaint) (Bankr. N.D. Ill. 2008), ("*Paloian*"). In *Paloian,* the

bankruptcy court also recognized that the elements for a civil conspiracy in

Illinois include: (i) an agreement between of two or more persons, (ii) for the

purpose of accomplishing, by some concerted action, either an unlawful purpose

or a lawful purpose by unlawful means, (iii) in furtherance of which one of the

conspirators committed an overt tortious or unlawful act. *Id.* at 896-97. As in

*Paolian,* this case requires that allegations of fraud must properly be pled to

comply with Fed.R.Civ.P. 9(b). *Id.* at 896, citing: *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir.2007).  Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (quoting Fed. R.Civ.P. 9(b)).

Importantly, in *Paloian,* the defendants (attorneys) conspired with their debtor (client) to effectuate fraudulent transfers from the debtor by knowingly creating back-dated documents in furtherance of the fraudulent transfer. *Id.*, at 897.  There, plaintiff pled facts establishing that defendants agreed to unlawfully back-date transfers which it knew to be fraudulent. Equally important is the fact that, unlike in *Paolian,* it is not alleged here that Ms. Touris back-dated any checks which she wrote, nor that she made any misrepresentations to anyone with respect to those checks.

Plaintiff's lack of facts showing that Ms. Touris unlawfully made any alleged transfers which she knew to be fraudulent is a difference that is fatal to plaintiff's claim.  The Illinois Supreme Court has clearly stated that:

> Civil conspiracy is an intentional tort and requires proof that a
> defendant 'knowingly and voluntarily participates in a common
> scheme to commit an unlawful act in an unlawful manner. [citation
> omitted.] Accidental, inadvertent, or negligent participation in a
> common scheme does not amount to conspiracy. [citation
> omitted.]  Similarly, [a] defendant who innocently performs an
> act which happens to fortuitously further the tortious purpose
> of another is not liable under the theory of 'civil conspiracy.'
> [citation omitted.]

14

*McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102,133 (1999). But here, plaintiff merely states with prohibited "conclusions, and a formulaic recitation," that Ms. Touris "entered into an agreement" but does not state with particularity any facts evidencing any such agreement, or that show the circumstances constituting any alleged fraud. In fact, the complaint is careful to avoid alleging that Ms. Touris was knowingly a part of Gouletas's plan by merely stating that she acted "[p]ursuant to Gouletas's plan" [not hers] in the payment of his expenses. Plaintiff never pleads facts stating that she agreed to that plan, or even was aware that Gouletas had a fraudulent plan. (Id., at ¶22)

Likewise, because nothing is pled stating that Ms. Touris either (1) had known of the citations against him, or (2) had known of any fraudulent intent on Gouletas's part, plaintiff has not pled facts that allege that Ms. Touris acted in a manner "for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means." In alleging only that Ms. Touris was a personal friend to whom Gouletas turned to assist him to evade his creditors, (Doc. #11 at ¶20), without any particular facts pled showing that she agreed to assist him in that endeavor, or knew that she was assisting him in fraud, plaintiff simply cannot support this claim.

Ultimately, the complaint merely implies that Gouletas ensnared Ms. Touris to assist in his plan of alleged fraud. The glaring realization that is taken

15

away from this complaint is its failure to allege any facts to support its contention that Ms. Touris, a friend and an interior designer, had, or should have had, knowledge of either Gouletas's plan, his citation problems, or, that his request to her was to actually further Gouletas's alleged fraud. Plaintiff cannot meet its Rule 9(b) heightened pleading burden by simply pleading fraud through implication.

### 2.    No Claim for Aiding and Abetting Fraud is Pled.

Neither does plaintiff's claim for aiding and abetting fraud at Count VI survive the same heightened pleading scrutiny as is required for Count V. In this instance, plaintiff simply provides conclusions stating that Ms. Touris was:

> [A]ware of [her] role in Gouletas' fraudulent transfer schemes when [she] provided assistance to Gouletas in the accomplishment his fraudulent transfer scheme, [and that Ms. Touris] provided knowing and substantial assistance to Gouletas in the implementation and execution of Gouletas' fraudulent transfer scheme…[and that she] knowingly induced, participated and assisted in actively defrauding Gouletas' creditors through the implementation and execution of Gouletas' fraudulent transfer scheme…

(Doc. #11 at ¶¶86 and 87). But, again, the complaint here offers only "labels and conclusions, and a formulaic recitation of the elements of a cause of action." This claim is made without any pled facts establishing (1) how Ms. Touris was "aware" of Gouletas's fraudulent intent without even an allegation that she knew of his citations or lawsuits, (2) how she knowingly assisted him in implementing his fraudulent intent, without any factual assertion that she

16

actually knew of it, and (3) how, when and whom did she "induce" to participate in the fraud for which there is no fact pled to establish that she had knowledge of the fraud.

The *Paloian* court also reminded that: "To state a claim for aiding and abetting, one must allege that: (i) the party whom the defendant aids performed a wrongful act causing an injury, (ii) the defendant was aware of his role when he provided the assistance, and (iii) the defendant knowingly and substantially assisted the violation. *Paloian*, at 397 B.R. 897, citing: *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006). In *Paolian*, the court concluded, from very different facts than those pled here, that the Attorney-Defendants knowingly induced, participated and assisted their client-debtor to deliberately defraud its creditors by knowingly creating back-dated documents. *Paolian,* at 397 B.R. 898.

In contrast, even a liberal reading of this complaint shows that, while reciting the elements required for this claim, plaintiff has not stated ***facts*** establishing that Ms. Touris was aware of her role in assisting Gouletas's alleged fraudulent transfers, or knowingly assisted him in any wrongful act by knowing of his alleged fraudulent intent. Indeed, this complaint merely states conclusions which Rule 9(b)'s heightened pleading requirement rejects. Therefore, Count VI should also be dismissed.

### 3.    No Claim for Tortious Interference is Pled.

Plaintiff also purports to state a claim fashioned as "tortious interference with expectancy of collection upon judgments against Gouletas" at Count VII. Unfortunately, the complaint continues to offer only "labels and conclusions, and a formulaic recitation of the elements of a cause of action," disfavored by the Supreme Court in *Twombly, supra.*

Illinois law is clear in that:

> [T]o prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.

*Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (Ill. 1991); also see: *Clarage v. Kuzma*, 342 Ill. App. 3d 573, (3d Dist. 2003); *GTC Fin. Servs., Ltd. v. Asset Builders Assocs., LLC,* Case No. 13-CV-08605 (N.D. Ill. Lee, J. 2014).

Again, since plaintiff has not pled facts with particularity either (1) alleging that Ms. Touris was even aware of any such judgments or citations, or (2) claiming that Ms. Touris had knowledge of the judgment-creditors' alleged expectancies in satisfying their judgments against Gouletas, this claim fails. Plaintiff offers no particular facts showing that Ms. Touris purposefully interfered to prevent any of Gouletas's judgment-creditors' "legitimate

18

expectancy to collect their judgments" because it does not allege that Ms. Touris was aware that their expectancies even existed in the first place.

Therefore, Count VII should be dismissed for plaintiff's failure to state a claim upon which relief can be granted on this theory as well.

## IV. The Complaint Fails to Satisfy the Heightened Pleading Requirements of FED. R. CIV. P. 9(b) As to All Counts.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." This particularity requirement demands a higher degree of notice than that required for other claims. The "circumstances constituting fraud" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994). "This means the who, what, when, where, and how...." *DiLeo v. Ernst & Young,* 901 F.2d 624, 626 (7th Cir.1990). This requirement insures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.,* 754 F. Supp. 1226, 1230 (N.D.Ill.1990). This heightened pleading standard applies to all "averments of fraud," regardless of

whether those averments pertain to a "cause of action" for fraud. *Borsellino v. Goldman Sachs Group, Inc.* 477 F.3d 502, 507 (7th Cir. 2007).

This complaint clearly does not allege with particularity the following circumstances in claiming that Ms. Touris committed fraud: (1) to whom did Ms. Touris make any such misrepresentation, (2) when was any misrepresentation made by her, (3) where was any misrepresentation made by her, (4) what was the misrepresentation, that is, what is the content of any misrepresentation made by her, and (5) how was (the manner in which) any misrepresentation made by her communicated to plaintiff's underlying judgment-creditors.

Other than generally alleging that Ms. Touris was a friend of Gouletas to whom he requested that she deposit funds into her checking accounts for payment of his expenses, and thereafter paid expenses "pursuant to Gouletas's plan," without any facts showing that she was aware of his "plan" (Doc. #11 at ¶22), the complaint remains without any of the particular facts providing for the circumstances which Rule 9(b) demands. Accordingly, Counts I, IV, V, VI and VII of the complaint should also be dismissed because they fail to plead facts which satisfy Rule 9(b)'s heightened pleading requirements for fraud.

## V. Attorneys' Fees Are Not Recoverable Under the IUFTA.

The complaint contains a single prayer, seemingly encompassing all eight of its counts alleged against all of its 32 defendants. Included within that single

prayer is a general request for attorney's fees. However, any such request relative to Counts I and IV against Ms. Touris is disallowed by Illinois law. Attorneys' fees are not recoverable under the IUFTA.

In *Bank of America v. WS Management, Inc.*, 2015 IL App (1st) 132551 at ¶121 the Illinois Appellate Court ruled that:

> Although here, plaintiff sought punitive damages in its complaint, the circumstance remains that the current version of the Fraudulent Transfer Act does not specify that attorney fees are recoverable and Illinois courts generally refuse to allow recovery for attorney fees unless the statute specifically states that "attorney fees" are recoverable. See *Negro Nest, LLC,* 362 Ill. App. 3d at 649. We decline to follow plaintiff's cited cases from other states that provide for attorney fees or punitive damages for a fraudulent transfer claim.

Accordingly, that part of plaintiff's prayer should be stricken to the extent that it seeks fees by way of the IUFTA.

Respectfully submitted,

DOROTHEA TOURIS

By:  *Nicholas G. Grapsas*
      Her Attorney


Nicholas G. Grapsas
NICHOLAS G. GRAPSAS, LTD.
1642 Colonial Parkway, 2d Floor
Inverness, IL  60067
(847) 963-0100
nick@grapsaslaw.com

## **CERTIFICATE OF SERVICE**

I certify that on June 18, 2018, I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Northern District, Eastern Division, by using the Clerk of Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Nicholas G. Grapsas
NICHOLAS G. GRAPSAS