UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D.A.N. JOINT VENTURE III, L.P., as Assignee of Bankruptcy Trustee Richard M. Fogel, the Chapter 7 Trustee For the Bankruptcy Estate of Debtor Nicholas S. Gouletas, <br>        Plaintiff, <br>   v. <br><br> DOROTHEA TOURIS, et al., <br>        Defendants. | Case No. 1:18-cv-00349 <br> Judge Robert M. Dow, Jr. |

**DOROTHEA TOURIS'S REPLY IN SUPPORT OF HER MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT PURUANT TO RULES 12(b)(6) and 9(b) and to JOIN AND ADOPT DEFENDANT NATEL MATSCHULAT'S RULE 12(b)(6) MOTION TO DISMISS BASED ON PLAINTIFF'S LACK OF STANDING**

Defendant Dorothea Touris ("Ms. Touris"), by her attorney, and pursuant to FED. R. CIV. P. 12(b)(6) and 9(b), hereby replies in support of: (1) her motion to dismiss plaintiff's First Amended Complaint ("Complaint"); and (2) her motion to join and adopt defendant Natel Matschulat's Rule 12(b)(6) motion to dismiss based on plaintiff's lack of standing (Doc. #68), as a part of her instant motion to dismiss, and states as follows:

1

I.  **PLAINTIFF CANNOT REFUTE THAT THE BANKRUPTCY TRUSTEE LACKS AUTHORITY TO SELL ITS STATUTORILY PRESCRIBED RIGHT TO PURSUE THESE FRAUDULENT CONVEYANCE CLAIMS.[1]**

In supplement to her joining and adopting defendant Natel Matschulat's Reply on the issue of plaintiff's lack of standing, Ms. Touris emphasizes that it is very important to keep in mind that the Supreme Court has ruled that the phrase "the trustee may [take a specific action]" means that only the trustee may take that action. *See Hartford Underwriters Ins. Co. v. Union Planters bank, N.A.*, 530 U.S. 1 (2000). Because the Supreme Court held that the operative language means that only the trustee may prosecute those actions, a third party such as plaintiff, that buys these claims for its own profit (and not for the benefit of the debtor's estate), lacks standing to assert them.

Equally important is the fact that the very Seventh Circuit case law upon which plaintiff relies actually shows that state law avoidance claims that can only be brought by a creditor and not the debtor, prior to bankruptcy, are not actions which are property of the estate. Therefore, plaintiff lacks standing to bring the state law avoidance claims against Ms. Touris. *See Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290 (7th Cir. 2003).

---

[1] As with her instant motion and its supporting memorandum, and in the interests of judicial economy and efficiency, Ms. Touris joins and adopts defendant Natel Matschulat's Reply in support of her Rule 12(b)(6) motion to dismiss (Doc. #93), and fully incorporates that reply within Ms. Touris's reply for this, her Section I.

2

## II. PLAINTIFF CANNOT REBUT ITS FAILURE TO STATE CLAIMS FOR AVOIDANCE ACTIONS UNDER IUFTA §§5(a)(1) and 6(a).

Try as it may, plaintiff fails to negate Ms. Touris's motion positions with respect to its pleading deficiencies regarding its avoidance claims. Ultimately, plaintiff's response does not refute that Ms. Touris was *not* an insider because she was *not* a "managing agent," and further ignores the absence of the other "badges of fraud" as to Ms. Touris on which plaintiff's response position relies. In addition, plaintiff ignores its own factual inconsistencies within its amended complaint in its attempt to rescue its contention that Gouletas was insolvent at the time of the alleged transfers to Ms. Touris. Accordingly, these continuing failures require the dismissal of these claims.

### A. No Claim is Stated for Relief Under IUFTA §5(a)(1).

Plaintiff responds to the §5(a)(1) challenge by arguing: (1) that the "insider" status is but one "badge of fraud," and that the issue of the IUFTA's application is not singularly dispositive of the determination of that issue; and (2) that a "managing agent" can include an ordinary friendship-relationship, such as existed here, under the IUFTA. (Doc#95:6). However, the facts in this case actually refute plaintiff's position, rather than bolster it.

First, in its response to Ms. Touris, plaintiff incorporates its prior responses with respect to defendant Paul Jones's motion to dismiss to support its avoidance claims, which are contained in Doc. #74. Consequently, as defendant Jones's

3

reply position relates to Jones, those same reply positions refute plaintiff's incorporated argument against Ms. Touris here in that the alleged transfers to Ms. Touris were not fraudulent because:

- Ms. Touris was not an insider (factor 1);

- Gouletas did not control the entirety of the alleged transfers (factor 2);

- The alleged transfers were not concealed (factor 3)

- Plaintiff fails to allege that the alleged transfers to Ms. Touris were substantially all of Gouletas's assets, (factor 5);

- Gouletas did not abscond (factor 6);

- Plaintiff's amended complaint contradicts its assertion that Gouletas was insolvent at the time the alleged transfers were made and does not plead facts showing that any eventual insolvency resulted from these alleged transfers to Ms. Touris (factor 9);

- Plaintiff's only pled insolvency date for Gouletas is at the time of his bankruptcy on January 17, 2016; this was actually a year after the first alleged transfer complained of was made to Ms. Touris, and approximately eight months after the last such alleged transfer. (See, Doc.#80:10) (factor10);

- Plaintiff did not allege that Gouletas "transferred the essential assets of the business to a lienor who transferred who transferred the assets to an insider of the debtor (factor 11)

740 ILCS 160/5(b). Therefore, a close reading of plaintiff's amended complaint shows that plaintiff has not "adequately alleged numerous 'badges of fraud'" against Ms. Touris.

4

Second, plaintiff's response position that the IUFTA's meaning of "managing agent" is not exclusive to corporate and/or business relationships ignores the case law cited by Ms. Touris which apply that status only to business relationships. (Doc.#80:4-9) While there may not be cases limiting the meaning of "managing agents" of a debtor to business organizations *per se*, plaintiff fails to offer any cases providing that the "managing agent" status applies to individuals in the way Ms. Touris demonstrates that the courts have applied it only to businesses and corporations. (Doc.#95:6)

In the end, plaintiff's attempt to stretch the meaning of "managing agent" in order to cloak Ms. Touris with insider status is contrary to the cited Illinois and the Seventh Circuit's application of that term. This is a critical point because plaintiff's Count I against Ms. Touris is entirely constructed upon her being presumed to be such an insider by virtue of plaintiff's distorted meaning of "managing agent" which is neither contemplated by the terms of the IUFTA, or applied by the Illinois court that addresses that specific term in the context of that law.

**B.     No Claim is Stated for Relief Under IUFTA §6(a).**

In attempting to defend its claim for avoidance under the IUFTA §6(a), plaintiff refers to its amended complaint Exhibit Px16 in suggesting that it somehow establishes Gouletas's insolvency by way of a balance sheet dated

5

February 28, 2014. (Doc.#95:7) However, that exhibit is not pled in alleging Gouletas's insolvency, but rather, it is cited relative to Gouletas's disclosure of a first mortgage regarding an entity parking lot noting that the same balance sheet failed to also disclose certain indebtedness owed, not by Gouletas, but by "800 SWP to HBI on the HBI Second Mortgage, or any other alleged indebtedness supposedly owed by 800 SWP to HBI." (Doc.#11:17-18)

On the other hand, plaintiff's actual factual allegations regarding Gouletas's personal solvency alleges that as of March 31, 2013 Gouletas had a net worth of $25,287,560 and "was flush with cash" in the amount of $240,000. (Doc. #11 at ¶¶8,9); and further alleges that the outstanding judgments against Gouletas by January 23, 2014 totaled $12,522,130, thus resulting in the pled conclusion that Gouletas had a positive net worth as of January 23, 2014 in the amount of approximately $12,765,430. (Doc. #11 at ¶¶12-14)

Again, since plaintiff is otherwise silent as to any time reference which establishes Gouletas's insolvency within the meaning of the IUFTA, (other than the date of his Bankruptcy filing in 2016), it has failed to establish that Gouletas was insolvent at the time of any alleged transfers to Ms. Touris in 2015. On the contrary, plaintiff actually pleads facts demonstrating that Gouletas was solvent at the time of these transfers, while pleading no facts to show that he eventually became insolvent in 2016 as a result of these particular transfers to Ms. Touris.

Indeed, plaintiff's Exhibit Px 16 does not resolve this factual pleading inconsistency—it creates it! Its post-pleading attempt to now assert that the February 28, 2014 balance sheet somehow trumps the inconsistent facts pled indicating that Gouletas had a positive net worth the month before, on January 23, 2014, in the amount of approximately $12,765,430, is remarkable but not tolerable. As the Seventh Circuit has opined: "Although our pleading rules do not tolerate factual inconsistencies in a complaint, they do permit inconsistencies in legal theories." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir., 2008). Plaintiff's response offers no inconsistent legal theory, but, rather, inconsistent facts in an attempt to save a deficient complaint. Hence, it should not be tolerated.

Moreover, plaintiff entirely avoids addressing Ms. Touris's showing that it distorts the IUFTA's insolvency definition in stating that "Gouletas was generally not paying *all of* his debts as they became due" so as to invoke the IUFTA §3(b)'s insolvency by presumption definition, and thereby trigger the Act's application. (Doc. #11 at ¶9) This ostrich in the sand response position is telling because, as shown, the IUFTA's §3(b) actually provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." (740 ILCS 160/3(b)) The words "all of" are plaintiff's, not the IUFTA's. It is also telling for the reason that plaintiff's amended complaint

7

admits that Gouletas failed to only pay some unidentified "unfavored creditors" while, at the same time, admitting that he did "routinely pay" others. (Doc. #11 at ¶9) This allegation is clearly incongruous with the IUFTA which does not apply to situations where a debtor may generally be paying his debts, but fails to pay only certain debts. (See, Doc.#80:8-11)

### III. THE AMENDED COMPLAINT'S PURPORTED COMMON LAW THEORY CLAIMS AT COUNTS V, VI and VII REMAIN DEFICIENT.

Plaintiff responds to Ms. Touris's challenges against its common law theories by merely stitching together a collection of general remarks, claiming that it provides sufficient facts comporting with Rule 9(b). But plaintiff actually avoids its obligation to provide the threshold specificity called for by Rule 9(b). Rather than facetiously asking whether Ms. Touris's demand for specific allegations to which she is entitled under Rule 9(b) are advanced "with a straight face," plaintiff should direct itself towards the four corners of its facts-starved pleading, and thereby, remedy it.

#### A. Speculation Cannot Support a Claim for Civil Conspiracy.

Specifically, in response to Ms. Touris's challenge against plaintiff's civil conspiracy claim, plaintiff readily admits that, at best, it hopes that "upon trial, Plaintiff will be able to prove that . . . [Ms. Touris] knew for sure that Gouletas was in serious financial difficulty," effectively excusing its present duty to plead that she in fact agreed to participate in tortious or wrongful conduct as required

8

by its reliance upon *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 645 N.E. 2d 888 (Ill. 1994).

This presents two problems for plaintiff's position: First, the *Adcock* court declared that:

> To state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character.

[citations omitted]. Merely alleging that Ms. Touris knew that Gouletas was in "financial difficulty" and agreed to write checks for him does not sufficiently allege wrongful or tortious conduct as required by *Adcock* to plead conspiracy against Ms. Touris. Illinois law requires that plaintiff establish that Ms. Touris knew that Gouletas was committing a wrongful or tortious act relative to the judgments and citations pending against him, and that her actions were wrongful and tortious because of that knowledge.

Second, just "suggesting the existence of an agreement," as plaintiff posits, is insufficient because, as the *Adcock* court further states:

> Once a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy. . ."

*Adcock*, at 164 Ill. 2d 64. Without knowing that an act is unlawful or tortious, Ms. Touris cannot be alleged to have conspired to commit an unlawful act.

9

Plaintiff's response does not refute the fact that it cannot plead that Ms. Touris agreed with Gouletas to "commit an unlawful act or a lawful act in an unlawful manner" by virtue of any knowledge that Gouletas had judgments and citations pending against him; otherwise, it would do so. Instead, it insufficiently offers the Court a prediction that it may do so in the future before trial.

**B.      Plaintiff provides no response to support Aiding and Abetting.**

No separate cause of action for aiding and abetting a fraud exists under Illinois law. *Renovitch v. Kaufman*, 905 F. 2d 1040, 1049 (7th Cir. 1990). Rather, "aiding and abetting is a theory for holding the person who aides and abets liable for the tort [fraud] itself; the rejection of aiding and abetting as an independent tort is not the same thing as saying that there is never liability for aiding and abetting." *Hefferman v. Bass*, 467 F.3d 596, 601(7th Cir. 2006).

Nevertheless, in order to hold a defendant liable under this theory a plaintiff must allege each of the three elements set forth in Ms. Touris's memorandum in support of her instant motion. (Doc. #80:17)  Again, plaintiff's response ignores those elements and proffers only a reference to its response position which is tantamount to: "We think that we gave you enough and what we didn't give you, we hope to get before trial."

But this is not enough. Ms. Touris is entitled at this pleading stage to be told within the four-corners of a pleading subject to the heightened notice level

10

required by Rule 9(b): (i) how Ms. Touris's actions can be wrongful without plaintiff alleging that she knew of Gouletas's judgments and citations; (ii) how, without that knowledge was Ms. Touris aware of her role when providing the assistance alleged; and (iii) how Ms. Touris knowingly and substantially assisted the alleged scheme without first knowing of those judgments and citations.

### C. Plaintiff cannot allege that Ms. Touris had knowledge of any reasonable expectations of collecting judgments.

Similarly, plaintiff responds to Ms. Touris's motion position regarding its tortious interference claim with the same dismissive indifference that it bestows upon the rest of her motion. But Illinois law clearly requires plaintiff to plead its tortious interference claim with facts towards proving: (1) plaintiff's reasonable expectation of the collection of the judgments; (2) Ms. Touris's knowledge of the plaintiff's expectancy; (3) purposeful interference by Ms. Touris that prevented any such legitimate expectancy from ripening into the collection of the judgments; and (4) damages to plaintiff resulting from such interference. *Fellhauer v. City of Geneva,* 142 Ill. 2d 495, 511 (Ill. 1991); also see: *Clarage v. Kuzma*, 342 Ill. App. 3d 573, (3d Dist. 2003); *GTC Fin. Servs., Ltd. v. Asset Builders Assocs., LLC,* Case No. 13-CV-08605 (N.D. Ill. Lee, J. 2014).

Ultimately, plaintiff's tortious interference claim is fatal for two reasons: (1) Plaintiff cannot plead facts that Ms. Touris had any knowledge of any such expectancies by any underlying judgment-creditors, and; (2) plaintiff cannot

11

allege she did so, either within the pleading requirements of either Rule 8 or Rule 9. In the end, plaintiff's response does nothing to contradict this, thus requiring that this claim should likewise be dismissed.

## IV. CONCLUSION

For all these reasons, as well as those set forth in Ms. Touris's motion to dismiss as and her memorandum of law in support of her motion, it is respectfully requested that the Court enter an order dismissing plaintiff's amended complaint.

                          Respectfully submitted,

                          DOROTHEA TOURIS

                          By:   *Nicholas G. Grapsas*
                                  Her Attorney

Nicholas G. Grapsas
NICHOLAS G. GRAPSAS, LTD.
1642 Colonial Parkway, 2d Floor
Inverness, IL 60067
(847) 963-0100 (Tel.)
(847) 496-4148 (Fax)
nick@grapsaslaw.com

## **CERTIFICATE OF SERVICE**

I certify that on August 20, 2018, I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Northern District, Eastern Division, by using the Clerk of Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Nicholas G. Grapsas*
NICHOLAS G. GRAPSAS