Px 1

# Nicholas S. Gouletas
# Balance Sheet
# As of March 31, 2013
## (Unaudited)

### Assets

| | |
|---|---|
| Cash | $ 240,000 |
| Interest in American Invsco Group Ltd. | 5,105,938 |
| Interest in Invsco Holding LLC | 7,947,485 |
| Interest in 800 South Wells Ph II LLC | 11,334,590 |
| Interest in American Invsco Realty, LLC | 659,550 |
| Goodwill - See Footnote 1 | - |
| Total Assets | $ 25,287,563 |

### Liabilities and Net Worth

| | |
|---|---|
| Liabilities | None |
| Net Worth | $ 25,287,563 |
| Total Liabilities and Net Worth | $ 25,287,563 |

**Note 1**
The goodwill or trade value of the company is
This valuation is based on an analysis completed in
2007 by the then outstanding shareholders of the
company.

$45,000,000

_____

By Nicholas S. Gouletas


PLAINTIFF'S EXHIBIT NO. 1

# American Invsco Group, Ltd.
# Balance Sheet
# As of March 31, 2013
## (Unaudited)

|  | Appraised Current Value | Historical Cost |
|---|---|---|
| **Assets** |  |  |
| Tax and Assessment Escrow | S    428,237 | $    428,237 |
| Buildings, Net of Accumulated Depreciation | 6,090,000 | 1,572,045 |
| Deferred Loan Costs, net | 19,801 | 19,801 |
| Net Advances to Affiliates | 2,600,189 | 2,600,189 |
| Total Assets | $ 9,138,227 | $ 4,620,272 |
| **Liabilities and Member's Equity** |  |  |
| Liabilities: |  |  |
| Assessments Payable | $    520,073 | S    520,073 |
| Accounts Payable | 33,099 | 33,099 |
| Accrued Real Estate Taxes | 133,306 | 133,306 |
| Mortgage Payable | 1,345,811 | 1,345,811 |
| Notes Payable | 2,000,000 | 2,000,000 |
| Total Liabilities | 4,032,289 | 4,032,289 |
| Member's Equity | 5,105,938 | 587,983 |
| Total Liabilities and Member's Equity | $ 9,138,227 | $ 4,620,272 |

# Invsco Holdings, LLC
# Balance Sheet
# As of March 31, 2013
## (Unaudited)

|  | Appraised Current Value | Historical Cost |
|---|---|---|
| **Assets** | | |
| Cash (Restricted) | 147,667 | 147,667 |
| Accounts Receivable | 39,044 | 39,044 |
| Real Property | 11,870,000 | 6,462,082 |
| Deferred Loan Costs | 280,448 | 280,448 |
| Total Assets | $ 12,337,159 | $ 6,945,353 |
| | | |
| **Liabilities and Member's Equity** | | |
| Liabilities: | | |
| Accounts Payable | $ 73,349 | $ 73,349 |
| Accrued Real Estate Taxes | 111,371 | 111,371 |
| Other Liabilities | 53,708 | 53,708 |
| Mortgages Payable | 3,851,246 | 3,851,246 |
| Notes Payable | 300,000 | 300,000 |
| Total Liabilities | 4,389,674 | 4,389,674 |
| Member's Equity | 7,947,485 | 2,555,679 |
| Total Liabilities and Member's Equity | $ 12,337,159 | $ 6,945,353 |

# 800 South Wells Phase II, LLC
## Balance Sheet
## As of March 31, 2013
## (Unaudited)

|  | Appraised Current Value | Historical Cost |
|---|---|---|
| **Assets** | | |
| Accounts Receivable | $ 3,184 | $ 3,184 |
| Real Property | 14,880,000 | 2,177,700 |
| Total Assets | $ 14,883,184 | $ 2,180,884 |
| **Liabilities and Member's Equity** | | |
| Liabilities: | | |
| Accrued Real Estate Taxes | $ 248,594 | $ 248,594 |
| Mortgage Payable | 3,300,000 | 3,300,000 |
| Total Liabilities | 3,548,594 | 3,548,594 |
| Member's Equity | 11,334,590 | (1,367,710) |
| Total Liabilities and Member's Equity | $ 14,883,184 | $ 2,180,884 |

# American Invsco Realty LLC
## Balance Sheet
## As of March 31, 2013
## (Unaudited)

### Assets

| | | |
|---|---:|---:|
| Cash Restricted - Earnest Money | | $ 4,200 |
| Commission Due from 2520 North Lakeview | | 234,500 |
| Net Advances to Affiliates | | 425,050 |
| Investment in The Acquest Group, LLC | | |
|     Contributions | $ 48,494 | |
|     Net Income (Loss) to Date | (48,494) | |
|         Net Investment in The Acquest Group, LLC | | - |
| | | |
| Total Assets | | $ 663,750 |

### Liabilities and Members' Equity

Liabilities:

| | |
|---|---:|
| Earnest Money Deposit | $ 4,200 |
|     Total Liabilities | 4,200 |
| Members' Equity | 659,550 |
| | |
| Total Liabilities and Members' Equity | $ 663,750 |

P:\ACCTDATA\AIR LLC\AIR LLC 033113 bal sht.xls

# The Acquest Group, LLC
# Balance Sheet
# As of March 31, 2013
## (Unaudited)

### Member's Equity

| | | |
|---|---|---:|
| Member's Contributions | $ | 48,744 |
| Net income (loss) to date | | (48,744) |
| **Total Member's Equity** | $ | - |

Px 2



*The Nation's Leading Condominium Developer*
**AMERICAN INVSCO**

Honorable Rahm Emanuel, Mayor                                          January 13, 2014
121 N. LaSalle Street
Chicago City Hall, 5th Floor
Chicago, IL 60602

Re: Investor Visa Endorsement

Dear Honorable Mayor Emanuel:

Thank you for taking time to consider our request.

   We are currently in negotiations with a real estate investor from London that intends to invest approximately $200 million in Chicago with the purchase of three new condominium towers. They are purchasing two condominium towers at 1333 and 1345 S. Wabash from CMK Development totaling $137 million. They are also in negotiations with us, American Invsco, to purchase a third tower on land we own at 801 S. Wells, for an additional $65 million. This is a total investment of $202 million in new, or about to be built, condominiums in Chicago.

   Our client, Andrea Cassandro, the COO of the Investin company, has requested but been denied a B1 visa from the American embassy in London. He has a second interview at the embassy in London tomorrow to make another request for a one week visa to complete these business transactions. Andrea Cassandro has received a letter from US Senator, Dick Durbin, requesting the Counsel General in London give every consideration to Andrea to approve the noted visa. Additionally, Andrea's attorney has advised him that a letter from you, Mayor Emanuel, would have significant impact on him being granted the visa to complete these transactions in Chicago.

   We believe his investment would have a very positive and significant impact on the Chicago real estate market by creating jobs and increasing the tax revenue of the City with the addition of nearly 700 new condominiums. Attached are supporting documents for your review and consideration.

We thank you for your time and consideration on our client's behalf.

Best Regards,

Nicholas S. Gouletas
Chairman & CEO

Encls.



# Px 3

*This is an attempt to collect a debt and any information obtained will be used for that purpose.*

## IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| 800 SOUTH WELLS COMMERCIAL LLC, | Case No. 2011-L-002895 |
| Plaintiff, | Judgment Amount: $11,550,040.12 plus accruing statutory interest |
| v. | Date of Judgment: January 23, 2014 |
| NICHOLAS S. GOULETAS and INVSCO MANAGEMENT COMPANY, INC. (d/b/a American Invesco), | Judge WHITE; Room 2503; Calendar 5 |
| Defendants. | Return Date: __JULY 10__ , 2014<br>Return Time: 9:30 a.m. |

### SECOND AMENDED CITATION TO DISCOVER ASSETS

TO: **NICHOLAS S. GOULETAS; SEE ATTACHED SERVICE LIST**

**YOU ARE COMMANDED** to appear before Judge **WHITE**, or any Judge sitting in his stead in **Courtroom 2503** of the Richard J. Daley Center, Chicago, IL 60692 on __JULY 10__, 2014, at 9:30 a.m. to be examined under oath to discover assets or income not exempt from the enforcement of the judgment.

Judgment was entered **on January 23, 2014** in the Circuit Court of Cook County, Law Division, in favor of Plaintiff **800 SOUTH WELLS COMMERCIAL LLC and against Defendants NICHOLAS S. GOULETAS and INVSCO MANAGEMENT COMPANY, INC. (d/b/a American Invesco), in the sum of $11,550,040.12, plus accruing *per diem* statutory interest. Further sums may become due as costs and interest accrued.**

**YOU ARE COMMANDED** to produce at the examination: **See Exhibit "A" and Rider "A" attached hereto and made a part hereof,** along with all books, papers or records in your possession or control which may contain information concerning the property or income of, or indebtedness due judgment debtor.

**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtor, until further order of Court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

**WARNING: IF YOU FAIL TO APPEAR AS DIRECTED IN THIS NOTICE, YOU MAY BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL. 735 ILCS 5/2-1402.**

| | |
|---|---|
| F. Dean Armstrong<br>Armstrong Law Firm<br>1324 Dartmouth Road<br>Flossmoor, Illinois 60422<br>(708) 798-1599<br>Attorney No. 36232 | JUN 0 5 2014 DOROTHY BROWN CLERK OF CIRCUIT COURT<br>_____<br>Clerk of the Court<br><br>_____<br>Deputy Clerk |



PLAINTIFF'S EXHIBIT NO. 3

## CERTIFICATE OF ATTORNEY

Note: This citation must be accompanied at the time of service by either a copy of the underlying judgment or a certification by either the clerk that entered the judgment or the attorney for the judgment creditor setting forth:

1.  Judgment in the amount: $11,550,040.12, plus accruing statutory *per diem* interest;
2.  Name of the Court: Circuit Court of Cook County, Illinois, County Department, Law Division; and
3.  Case No. 2011 L 002895.

I, the undersigned, certify under penalties as provided by law pursuant to 735 ILCS 5/1-109 to the Court that the foregoing information is true and correct.

_____
F. Dean Armstrong

## CERTIFICATE OF SERVICE

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, I, F. Dean Armstrong, hereby certify and state under oath that:

I am over 21 years of age and not a party to this case. Pursuant to the Court's JUNE 5, 2014 Order Granting Plaintiff's Motion Pursuant to Special Order, I served the citation to discover assets on **NICHOLAS S. GOULETAS** by (a) having the process server serve a copy of the Amended Citation to Discover Assets and related Citation proceeding papers upon Defendant Gouletas through the doorman at 111 E. Chestnut Street, Chicago, Illinois, with a directive to deliver these papers to Defendant Gouletas' condominium unit at Suite 28K; (b) having the process server serve a copy of an Amended Citation to Discover Assets and related Citation proceedings upon Defendant Gouletas by taping these pleadings to the door at Gouletas' office address at 182 W. Lake Street, Suite 200, Chicago, Illinois 60601 ; and (c) mailing by certified mail, return receipt requested, a copy of the Amended Citation to Discover Assets and related Citation proceeding papers to Defendant Gouletas' counsel, Katharine M. Grosh, Esq. at Beermann Pritikin Mirabelli Swerdlove LLP, 161 North Clark Street, Suite 2600, Chicago, IL 60601.

_____
Signature of Attorney

F. Dean Armstrong
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, Illinois 60422
(708) 798-1599
Attorney No. 36232

EXHIBIT 4

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, **NICHOLAS S. GOULETAS** ("Deponent" or "Judgment Debtor"), hereby certifies and states that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such, the undersigned certifies as aforesaid that (s)he verily believes the same to be true.

Name:

Social Security and/or Tax I.D. Number:

Residence Address and Telephone Number:

Business Address and Telephone Number:

Name of Business/Businesses and/or interest in same for the two (2) years preceding the date of this request, and address of same:

Dependents:

Stocks, Bonds or other Negotiable Instruments, and where they are located:

Automobile(s)- Make, Model, Year, V.I.N., whether the same are insured and by whom (i.e. proof of insurance):

Real Property Owned and how property is held:

Name of your Bank:

Checking Account Number(s):

Savings Account Number(s):

Certificates of Deposit:

Other Personal Property Owned:

Household Goods:

Money and Jewelry on Person:

Any other title or interest and any other property, real or personal, not listed or described above:

By: _____

Printed
Name: _____
     **NICHOLAS S. GOULETAS**

<u>RIDER A</u>

## I.  GENERAL DOCUMENT REQUEST

All books, papers, documents, computer generated or computer readable media possessed or controlled by you, your agent, your fiduciary, your representative or other persons known to you that directly or indirectly relate to your income or assets or interest in assets held within the last seven (7) years and those documents relating to any income or interest in other assets that you (the "Judgment Debtor" or "Deponent") expects to receive in the future, including moneys or assets expected to be received from any individual, group of individuals, partnerships or corporate entities or government entities.  These documents should include but should not be limited to the following:

A.  State and Federal income tax returns, and gift tax returns, for 2002-2013.

B.  All drafts and final versions of any and all personal financial statements (by whatever name known), whether or not distributed to any third party, including, but not limited to, the "draft financial statement" that was referenced at ¶18 of Gouletas' March 24, 2014 affidavit.

C.  All documents evidencing any account held with a brokerage firm, stock firm, investment firm, bank, savings and loan or other financial institution.

D.  All documents evidencing any safe deposit box, storage locker or other secured storage area.

E.  All documents evidencing ownership of or any interest or beneficial interest in real estate or other real property within the last 7 years.

F.  All documents evidencing any trust, including land trusts, in which the judgment debtor has any interest or over which the judgment debtor holds any power whatsoever.

G.  All certificates of deposit or similar deposit instruments in which the judgment debtor has an interest.

H.  All treasury bills, savings bonds or other instruments evidencing indebtedness to the judgment debtor by the federal, state or local government.

I.  All insurance policies insuring any interest the judgment debtor may possess or annuities or similar interests owing to the judgment debtor as a beneficiary.

J.  All stock certificates, bonds, commodity accounts or any evidence regarding ownership of or power of attorney over same.

K.    All documents in your possession or control pertaining to any loan to which the judgment debtor is a party.

L.    All promissory notes or other evidence of indebtedness to the judgment debtor in your possession and control.

M.    All books of account of any business enterprise in which the judgment debtor holds an interest, including, but not limited to, a Profit/Loss Statement, and all Accounts Receivables and Accounts Payable

N.    All titles to automobiles, planes, boats or other vehicles or modes of transportation, including, but not limited to, a 1971 Mercedes Benz CP280, VIN #11102712003878; 1993 Cadillac Sedan Touring 4 Seville STS, VIN #1G6KY5298PU834808; and 1959 Merz. 4D, VIN #300D9500105, including any appraisals of these forms of transportation.

O.    All documents evidencing any pension plan or other tax-deferred plan or account.

P.    Copies of all pleadings involving actions in which the judgment debtor seeks a money judgment in his favor or in which any business or other entity in which the judgment debtor holds a financial interest seeks a money judgment in its favor.

Q.    All documents evidencing any winnings from a state lottery or lawfully acquired winnings through other forms of gambling, including horse racing and games of chance.

R.    All documents evidencing any interest in horses, livestock or other perishable commodities.

## II.    BANK RECORDS

A.    Any and all documents and records of checking, savings, or any other type of account, foreign or domestic, maintained by deponent with any type of financial institution during the last five years, including but not limited to monthly account statements, checks, check registers, check stubs, cancelled checks, and deposit slips.

B.    All documents that refer to, relate to, reflect or concern any transfers made to or from any financial account held for the benefit of deponent, by any third party, for the last five years.

C.    Any and all signature cards that name deponent as an authorized signatory on any financial account, for any entity or other third party, for the past five years.

D.    Any and all financial statements, credit applications or other documents submitted to any financial institution, or any other person or entity, by deponent, for any loan,

credit, extension or advance, in any capacity (borrower, guarantor, or surety) for the past five years.

E. Any and all documents concerning any interest in, or claimed title to, any certificates of deposit, letters of credit, money orders, cashier's checks, traveler's checks, bank deposits or escrow funds owned or held be deponent in the past five years.

F. Any and all documents related to any account in which any of deponent's earnings or other income has been deposited into in the past five years, whether deponent continued to have an interest in it or not.

G. Any and all documents evidencing deponent having authority to access any safe deposit box or other bank-secured area, for the last five years.

H. Any and all documents evidencing any application signed by deponent or on behalf of deponent or deponent's wife and/or children, to open a foreign or offshore financial account in the name of deponent or any other entity.

I. Copies of IRA contracts for all IRAs that you currently have.

J. Copies of any IRA or 401K's that were "rolled over".

K. Complete contribution and distribution records for any current or previous IRAs or 401Ks.

L. Copies of any and all bills or living expenses paid for with your IRA or 401K distributions.

M. Copies of any loans taken against your IRA or 401K.

III. **REAL PROPERTY**

A. Any and all documents that refer to, reflect, or relate to any real property owned by deponent in the past five years.

B. Any and all documents that refer to, reflect, or relate to encumbrances on any real property owned by deponent.

C. Any and all documents evidencing ownership of real property in which deponent currently enjoys a direct or indirect beneficial interest.

D. Any and all checks, receipts, deeds or other evidence of the sale or transfer of any real property in which you had a legal or equitable ownership interest in, within the past five years.

E. Any and all lease agreements for real property in which deponent is the landlord, or has a beneficial interest in.

F. Any and all lease agreements for real property in which the deponent is the lessor or lessee.

G. Any and all documents that evidence deponent's name being on any real property tax records, as payor or trustee for the past five years.

H. Any and all deeds that title any real property to deponent as trustee for any other person or entity.

I. Any and all deeds of trust or mortgages held in favor of deponent at present or owned during the last five years.

J. Any and all documents evidencing any time-shares that deponent enjoys the use of.

K. Copies of any appraisals or other forms of valuation for any property that you have an interest in or had an interest within the past five years.

L. Promissory Notes or Mortgages you signed during the past six years.

M. Copies of all deeds/mortgages to which you hold property as tenants by the entireties, tenants in common or joint tenants.

N. Copies of any and all deeds, leases, tax statements and all utility bills (including, but not limited to, gas, electric, water and cable bills) for any place that you have resided from January 1, 2002 to the present, including, but not limited to 111 E. Chestnut Street, Suite 28J and/or 28K, Chicago, Illinois.

## IV. PERSONAL PROPERTY

A. Certificates of title or other evidence of ownership of any boat, automobile, truck, watercraft, motorcycle, four-wheeler, recreational vehicle, go-kart, aircraft, agricultural equipment, or construction equipment owned by or in possession of deponent, whether owned by deponent or entity that deponent is affiliated with, or held in trust by deponent.

B. Any and all note receivables, pledges or security interests in favor of deponent now, and in the past five years.

C. Copies of all homeowner's insurance policies and any other insurance policies or riders that have insured any property that deponent owns or has the benefit of use of, for the past five years.

D. List of household furnishings and fixtures that have been purchased within the last year that had a purchase price of $999 or more, including all cell phones, computers and iPads/tablets, as well as copies of all documents pertaining to the acquisition thereof, as well as copies of all telephone, cable and internet bills for the last five years.

E. Copies of all dock slips or other documentation evidencing the right to dock any watercraft, whether deponent has a legal or beneficial interest in.

F. Any and all documents that refer to or reflect any horses or livestock owned by deponent within the past five years.

G. List and valuation of all collectibles (i.e. stamps, coins, sports cards, etc) that deponent now owns or has owned within the past five years.

H. Any and all documents that refer to, or relate to any guns, jewelry, antiques, art, paintings or other similar assets owned by deponent or in deponents possession within the past five years.

I. Any and all documents evidencing any interest deponent may have in any patents, trademarks, copyrights, franchises, royalties of any kind, oil and gas rights, timber rights, or mineral rights.

V.  **BUSINESS INTERESTS/EMPLOYMENT**

A. All documents that identify the name and addresses of any person or entity that has employed deponent within the past five years.

B. All documents that identify any person or entity that deponent has acted as an independent contractor for in the past five years.

C. All documents referring in any way, directly or indirectly, to any and all businesses in which deponent is a stockholder, partner, officer, director, owner, member, manager or registered agent.

D. Any and all corporate charters, minutes of stockholders meetings, operating agreements, resolutions, or recorded evidence of any kind relating to the affairs of any corporation or LLC owned or controlled by deponent, or any subsidiary or other entity in which such corporation or LLC holds an ownership interest during the past five years.

E. Lists of all customers, clients, etc. of any kind with which the corporation (or any other business entity owned or controlled by deponent) does business or has done business during the past five years.

F.  All local, state and federal tax returns filed by deponent in the past five years, including all attachments, schedules, W-2's, K-1's, 1099 and 1098 forms, and any information regarding any tax refunds or claims for tax refunds.

G.  All documents referring, relating or pertaining to any records of salaries, commissions, bonuses, income from employment, wages, pay stubs, dividends, royalties, allowances, expenses or other sums of money paid to deponent within the past five years.

H.  Any and all employment contracts that deponent has had in the past five years.

VI.  **INVESTMENTS**

A.  Any and all documents and records of stocks, ownership units, membership units, bonds, mutual funds, debentures, certificates of deposit or any other investment vehicle owned or held for the benefit of deponent.

B.  Any and all documents relating to any retirement accounts or annuities, whether individual or employer sponsored, that are owned by deponent, or held for the benefit of deponent.

C.  Any and all rent rolls for all properties in which deponent has had an ownership interest in for the past five years.

D.  Copies of all K-1s, 1099-D's or 1099-I's issued to deponent within the past five years.

E.  Any and all documents referring to any stock options or profit-sharing plans held by deponent or for the benefit of deponent.

F.  Any and all documents that evidence a cash value in any life insurance policy of deponent and copies of all policies whether term, whole life or universal

VII.  **MISCELLANEOUS**

A.  All documents evidencing any trusts or amendments to trusts in which the deponent is a grantor, settlor, trustee, or beneficiary.

B.  All documents evidencing any and all trusts or amendments to trusts that the deponent has directly or indirectly contributed any assets to within the past ten years.

C.  Copies of all pre and post-nuptial agreements, to include the list of assets and liabilities to be held separately.

D. Copies of all separate property agreements, to include the list of assets and liabilities to be held separate.

E. Copy of any Wills including all amendments in which deponent is or was named as a beneficiary.

F. All passports for travel outside of the United States.

G. Copies of any and all credit card statements, for all cards in which deponent is an authorized user, for the past two years.

H. All documents referring or reflecting the name and address of any storage facility or mini-warehouse to which deponent has access.

I. Copies of any and all financial statements that deponent has prepared for any lender, creditor, court or any other person or entity in the past five years.

J. Copies of any and all professional licenses that are held by deponent.

K. Copies of all driver's licenses.

L. Copy of birth certificate.

M. Copies of all divorce decrees and any affidavits submitted in those proceedings.

N. Copies of documents pertaining to any advances and/or retainers paid to any lawyer and/or law firm by you or any other person or entity for or on your behalf.

O. Copies of all corporate books and records for 800 South Wells Phase II LLC, including all documents pertaining to the sale, transfer, pledging and/or encumbrance of the vacant land located at 800 South Wells Street, Chicago, Illinois 60605, Permanent Index Nos. 17-16-401-013 and 17-16-401-014.

P. Copies of all documents in any way pertaining to any cash, gold, investment securities, partnership interests, real estate or any other asset of any form or nature whatsoever that any person or entity holds or controls for or on your behalf or for your use, enjoyment or benefit.

Q. Please provide your affidavit of completeness, verifying under oath that you have produced all documents within your possession, custody and control responsive to each of the categories set forth in all parts of §§I-VII above.

Px 4



BOFD:71006495 Date:08/01/2014 HostAccount:0000000171401908 Account:171401908 Amount:$1,530.62
Serial:171000166 HostTranCode:451 TranCode:0 TR:71001180 Sequence:7483520690 DbCr:D Canadian:-





Px 5



SOFD:21000099 Date:08/04/2014 HostAccount:0000000171401908 Account:171401908 Amount:$10,000.00
Serial:171000167 HostTranCode:481 TranCode:0 TR:71001160 Sequence:2706825920 DbCr:D Canadian:-





Px 6



BOFD:71006486 Date:08/25/2014 HostAccount:0000000171401908 Account:171401908 Amount:$1,500.00
Serial:171000175 HostTranCode:481 TranCode:0 TR:71001180 Sequence:2735927400 DbCr:D Canadian:-





Px 7





## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
   - Please cash/deposit this Cashier's Check as soon as possible to
     prevent this from occurring
   - In most cases, the funds will be considered "abandoned"
     before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
   - Stop Payment can only be placed if the Cashier's Check
     is lost, stolen, or destroyed
   - We may not re-issue or refund the funds after the stop payment has
     been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          Customer Copy

**CASHIER'S CHECK**                            9488626643

08/22/2014
Void after 7 years

Remitter:   NICHOLAS S GOULETAS

                                              $** 2,500.00 **

'ay To The   NICHOLAS S. GOULETAS
)rder Of:

lemo:_____           Drawer JPMORGAN CHASE BANK, N.A.
ote: For information only. Comment has no effect on bank's payment.   **NON NEGOTIABLE**



Px 8

2/6/15

DOROTHEA A. TOURIS
6301 N. KNOX AVE.
CHICAGO, IL 60646

134

Date 2/6/15

Pay to the order of STEVEN G. GOULETAS          $ 195,000.⁰⁰

One Hundred ninetyfive thousand dollars and 00 cents

mb financial bank

⑆071001737⑆ 220001596800 0134

#134 PD 2/9/2015 $195,000.00

#134 PD 2/9/2015 $195,000.00



PLAINTIFF'S
EXHIBIT
NO. 8

7

Px 9

2/6/15



#135 PD 2/9/2015 $50,000.00

Seq: 31
Batch: 558887
Date: 02/07/15

#135 PD 2/9/2015 $50,000.00



PLAINTIFF'S
EXHIBIT
NO. 9

Px 10

Case: 1:18-cv-00349 Document #: 1-1 Filed: 01/17/18 Page 34 of 100 PageID #:67

Page 1 of 1

## Transaction History

**Customer:** DOROTHEA A TOURIS
**Account:** IL Checking #XXXXX2032

*required field

| Current Balance | Present Balance | Available Less Overdraft | Available Balance | Calendar |
|---|---|---|---|---|
| $9,736.54 | $9,736.54 | $9,736.54 | $445,329.91 | |

⋆ denotes end of day balance

| Date Posted | Tran Type | Description | $ Debits(-) | $ Credits(+) $ | Balance |
|---|---|---|---|---|---|
| 02/18/2015 | Check | CHECK # 123 | -7,000.00 | | 9,736.54 ⋆ |
| 02/17/2015 | Wire Transfer | FEDWIRE CREDIT VIA: THE PRIVAT | | 15,730.00 | 16,736.54 ⋆ |
| 01/23/2015 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.54 ⋆ |
| 12/19/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.53 ⋆ |
| 11/24/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.52 ⋆ |
| 10/31/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 1,006.51 ⋆ |
| 10/22/2014 | Interest | INTEREST PAYMENT | | 0.01 | 981.51 ⋆ |
| 09/24/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 981.50 ⋆ |
| 09/22/2014 | Fee | SERVICE FEE | -25.00 | | 956.50 ⋆ |
| 09/22/2014 | Interest | INTEREST PAYMENT | | 0.01 | 981.50 |
| 09/08/2014 | ACH Debit | CITI CARD ONLINE PAYMENT 13 | -26.15 | | 981.49 ⋆ |
| 08/21/2014 | Fee | SERVICE FEE | -25.00 | | 1,007.64 ⋆ |
| 08/21/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,032.64 |
| 08/20/2014 | ACH Debit | American Express ACH PMT | -148.00 | | 1,032.63 ⋆ |
| 08/01/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 1,180.63 ⋆ |
| 07/22/2014 | Fee | SERVICE FEE | -25.00 | | 1,155.63 ⋆ |
| | | | | | Older |

$15,730.00
415.00
415,000.00
431,145.00 TOTAL



PLAINTIFF'S
EXHIBIT
NO. 10

DT 0012

JPM160112-002925 Additional Details Received                    Page 1 of 1

## JPM160112-002925 Additional Details Received

usd.prpcemail@globalcustomercare.jpmchase.com
**Sent:** Tuesday, January 12, 2016 4:26 PM
**To:** Peterson, Stephen L

Hi Stephen,
This is with reference to
Case
JPM160112-002925.

Transaction Details:

Sending Bank: THE PRIVATEBANK AND TRUST COMPANY ABA/071006486.

Credit Party: DOROTHEA A TOURIS DDA/xxxxxx2032.

Transaction Date: 2/17/2015

Transaction reference: 6877309048FF .

Amount: 15,730.00/USD.

We see you as the assigned banker for our client DOROTHEA A TOURIS. Please be advised of
the query received from THE PRIVATEBANK AND TRUST COMPANY as they are unable to apply
and need the following details:

Quote....
YOUR REFERENCE JPM160112-002925 TO OUR IMAD DATED 2/17/15 NUMBER 000798 FOR
USD15,730.00. THE REMITTER OF THIS PMNT IS 800 S WELLS PHASE II, LLC, CHI CAGO, IL.
OUR REF PVTB 11948-12JAN 16WH.
Unquote....

Please advise the client accordingly. We appreciate your help.

Regards.
USD WIRE INVESTIGATIONS OUR
REFERENCE
JPM160112-002925
JPMORGAN GLOBAL SOLUTIONS CENTER
(866) 223-0359

DT 0013

# Px 11

i-ARC!                                                           Page 1 of 1

JPMorgan Chase & Co.   i-ARC!



PLAINTIFF'S
EXHIBIT
NO. 11

DT 0011

Px 12

Case: 1:18-cv-00349 Document #: 1-1 Filed: 01/17/18 Page 39 of 100 PageID #:72



| Date Posted | TranType | Description | Debits (-) | Credits (+) | Available End of Day Balance |
|---|---|---|---|---|---|
| 01/23/2015 | Interest | INTEREST PAYMENT | | 0.01 | -1(0061541) |
| 02/18/2015 | Check | CHECK # 123 | | | 16,736.54 |
| 02/27/2015 | Interest | INTEREST PAYMENT | | 0.04 | 9,736.58 |
| 03/06/2015 | Deposit | DEPOSIT ID NUMBER 811306 # 14 | | 415,000.00 | 424,736.58 |
| 03/12/2015 | Misc. Debit | Debit for $414,585.00, an item 14 | -414,585.00 | | 10,151.58 |
| 03/16/2015 | Withdrawal | WITHDRAWAL # 574511264 | -5,000.00 | | 5,151.58 |
| 03/17/2015 | Withdrawal | WITHDRAWAL # 572411406 | -5,000.00 | | 420,151.58 |
| 03/20/2015 | Misc. Debit | Transfer to Chk XXXXXX5547 | -10,000.00 | | 415,151.58 |
| 03/20/2015 | Wire Transfer | WIRE TRANSFER VIA: SANTANDER B | -10,000.00 | | 405,151.58 |
| 03/20/2015 | Withdrawal | WITHDRAWAL # 554772728 | -90,000.00 | | 395,151.58 |
| 03/20/2015 | Withdrawal | WITHDRAWAL # 554772727 | -5,000.00 | | 375,151.58 |
| 03/20/2015 | Misc. Debit | Transfer to SAV XXXXXX5061 | -20,000.00 | | 371,151.98 |
| 07/7/2015 | Check | CHECK # 1160 | -53,000.00 | | 290,151.98 |
| 07/20/2015 | Check | CHECK # 1161 | -16,000.00 | | 210,151.98 |

WIRE CREDIT VIA: THE
FEDWIRE CREDIT VIA: THE
PRIVAT
( -7,000.00 )

| Date Posted | Item Type | Description | Debit(-) | (denotes end of day balances) Credit(+) | Balance |
|---|---|---|---|---|---|
| 03/27/2015 | Check | CHECK # 2152 ATM/T Service | -97.25 | TEVER | 159,127.10 |
| 03/27/2015 | Check | CHECK # 2156 | -1,865.16 | 33 DEUINQ | 154,892.28 |
| 03/27/2015 | Check | CHECK # 2157 | -2,798.28 | 33 DEUINQ | 154,892.28 |
| 03/27/2015 | Check | CHECK #2154 OCWEN LOCKBO | -2,949.02 | MORTGAGE | 157,780.57 |
| 03/26/2015 | Check | CHECK # 2153 | -869.09 | CON. ED | 160,729.59 * |
| 03/26/2015 | Check | CHECK # 2155 | -1,061.00 | B OF A. MORTGAGE | 161,598.68 |
| 03/26/2015 | Check | CHECK # 2158 | -3,436.06 | | 162,659.68 |
| 03/26/2015 | Check | CHECK # 2159 | -5,512.22 | /// ASSESSMENTS | 166,095.74 |
| 03/25/2015 | Check | CHECK # 2151 | -897.06 | STAY PKNG | 171,607.66 * |
| 03/25/2015 | Misc. Debit | Transfer to SAV XXXXXX5061 | -1,006.56 | | 171,607.66 |
| 03/24/2015 | Check | CHECK # 2164 | -30,000.00 | MATEL M. | 172,505.02 |
| 03/24/2015 | Check | CHECK # 2163 | -440.00 | STEVEN G | 173,511.58 * |
| 03/24/2015 | Check | CHECK # 2162 | -7,200.00 | STEVEN G | 203,511.58 |
| 03/24/2015 | Check | CHECK # 2161 | -16,000.00 | STEVEN G | 203,951.58 |
| 03/24/2015 | Check | CHECK # 2160 | -53,000.00 | STEVEN G | 211,151.58 |
| 03/20/2015 | Misc. Debit | Transfer to SAV XXXXXX5061 | -90,000.00 | DAT | 227,151.58 |
|  |  |  |  |  | 280,151.58 * |

Older

DT 0115

| Date Posted | Type | Description | Debit(s) | Credit(s) | Resulting or day Balance |
|---|---|---|---|---|---|
| | | | | 1,022. | 270,080.39 * |
| | | | | 50,000.00 | 203,951.58 * |
| 04/01/2015 | | INTEREST PAYMENT | | | |
| | | Transfer from SAV XXXXXX5061 | | | |
| | Check | CHECK # 2152 AT&T Service | -97.23 | | 153,029.90 |
| | Check | CHECK # 2156 | -1,865.16 | | 153,127.13 |
| | Check | CHECK # 2157 | -2,788.28 | | 154,992.29 |
| | Check | CHECK # 2154 OCWEN LOCKBO | -2,949.02 | | 157,780.57 |
| | Check | CHECK # 2153 | -869.09 | | 160,729.59 * |
| | Check | CHECK # 2155 | -1,061.00 | | 161,598.68 |
| | Check | CHECK # 2158 | -3,436.06 | | 162,659.68 |
| | Check | CHECK # 2159 | -5,512.22 | | 166,095.74 |
| | Check | CHECK # 2151 | -897.06 | | 171,607.96 * |
| | Misc. Debit | Transfer to SAV XXXXXX5061 | -1,006.56 | | 172,505.02 |
| | Check | CHECK # 2164 | -30,000.00 | | 173,511.58 * |
| | Check | CHECK # 2163 | -440.00 | | 203,511.58 |
| | Check | CHECK # 2162 | -7,200.00 | | 203,951.58 |

Older

| Date Posted | Type | Description | Debit(s)/Credit | Balance |
| --- | --- | --- | --- | --- |
| 04/01/2015 | Wire Transfer | WIRE TRANSFER VIA: MONT CNTY B | 500.00 | 203,530.92 * |
| 04/01/2015 | Misc. Credit | TRANSFER FROM CHK XXXXX4044 | 10,000.00 LOWDER MANAGEMENT LLC | 193,530.92 * |
| 04/03/2015 | Check | CHECK # 2365 | -3,581.01 —Ill Chestnut | 189,949.91 * |
| 04/13/2015 | Check | CHECK # 2369 GREENTREE SE | -1,391.55 —Greentree Sell | 188,558.36 |
| 04/13/2015 | Check | CHECK # 2412 | -230.00 Liberium Nurses | 188,328.36 * |
| 04/03/2015 | Check | CHECK # 2362 | -65.00 City of Chgo | 188,263.36 * |
| 04/02/2015 | Check | CHECK # 2413 | -22,474.24 —NATIONSTAR | 165,789.12 |
| 04/09/2015 | Check | CHECK # 2358 OGWEN LOCKBO | -4,299.75 —Mortgage | 161,489.37 |
| 04/02/2015 | Check | CHECK # 2409 | -2,634.74 —Del PC Asses | 158,854.63 |
| 04/02/2015 | Check | CHECK # 2361 AT&T Service | -1,639.82 —ConEd | 157,214.81 |
| 04/01/2015 | Check | CHECK # 2360 | -125.10 — Amort | 157,089.71 * |
| 04/01/2015 | Check | CHECK # 2401 SPECIALIZED | -4,167.06 — Flest Service | 152,922.65 * |

| Date Posted | Item Type | Description | Debit (-) | Additions (+) | Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | Check | CHECK # 2971 ▦ | -10,000.00 — *Cross Springs* | | 76,422.07 * |
| 03/01/2015 | Check | CHECK # 2972 ▦ | -13,000.00 — *NATEL* | | 86,422.07 |
| 03/30/2015 | Interest | INTEREST PAYMENT | | 1.24 | 99,422.07 * |
| 04/30/2015 | Check | CHECK # 419172 ▦ | -2,000.00 | | 99,420.83 |
| 04/30/2015 | Misc. Debit | Payment to credit card VIS XXX | -499.00 | | 101,420.83 |
| 04/29/2015 | Check | CHECK # 2970 ▦ | -200.00 — *Chase* | | 101,919.83 |
| 04/29/2015 | Check | CHECK # 2416 ▦ | -1,500.00 — *GK Church* | | 102,119.83 |
| 04/29/2015 | Check | CHECK # 2417 ▦ | -3,500.00 — *Annunciation GK* | | 103,619.83 |
| 04/28/2015 | Check | CHECK # 2364 ▦ | -1,628.10 — *Ill Chestnut* | | 107,119.83 |
| 04/27/2015 | Check | CHECK # 2414 ▦ | -10,000.00 — *Karen Trotton* | | 108,747.93 * |
| 04/23/2015* | Check | CHECK # 2363 ▦ | -662.25 | | 118,747.93 |
| 04/22/2015 | Check | CHECK # 952038 ▦ | -19.99 | | 119,410.18 * |

Newer    Older

Case: 1:18-cv-00349 Document #: 1-1 Filed: 01/17/18 Page 44 of 100 PageID #:77

| Date Posted | Activity Type | Description | Debit(s) | Deposit(s) | Balance |
|---|---|---|---|---|---|
| 06/04/2015 | Transfer | Payment to Chase card ending i | -2,171.10 | | 17,266.16 |
| 06/08/2015 | Check | CHECK # 2866 | -6,178.31 | for CHASE NOT | 17,266.16 |
| 06/08/2015 | Check | CHECK # 2850 | -1,000.00 | leslee | 19,437.26 |
| ... | Check | CHECK # 3999041 | -536.96 | | |
| 05/18/2015 | Check | American Express Agent Pmt | -5.95 | | |
| 05/18/2015 | ACH Debit | American Express Agent Pmt | -500.00 | | |
| 05/18/2015 | Transfer | | | | |
| 06/08/2015 | Check | CHECK # 2849 | -10,000.00 — Vivien | | 19,437.26 |
| 06/08/2015 | Check | CHECK # 2847 | -6,178.31 | | 29,437.26 |
| 05/29/2015 | Interest | INTEREST PAYMENT | | 0.55 | 35,615.57 |
| 05/29/2015 | Check | CHECK # 776472 | -900.00 NICKS CARD | | 35,615.02 |
| 05/29/2015 | Online Transfer | Payment to Chase card ending i | -6,500.00 HATELS CARD | | 42,115.02 |
| 05/28/2015 | Withdrawal | WITHDRAWAL # 571813332 | -5,000.00 | | 43,015.02 |
| 05/28/2015 | Withdrawal | WITHDRAWAL # 571813333 | -5,000.00 | | 48,015.02 |
| 05/28/2015 | Misc. Debit | Transfer to SAV XXXXXX5061 | -10,000.00 | | 53,015.02 |
| 06/26/2015 | Misc. Debit | Transfer to CHK XXXXX2557 | -2,712.05 | | 63,015.02 |
| 03/26/2015 | Deposit | DEPOSIT ID NUMBER 183053 # 14 | | 1,000.00 | 65,727.07 |

Older

| Date Posted | Item Type | Detail Information | Debit(-) | * denotes out of line balance | Balance |
|---|---|---|---|---|---|
| 07/06/2015 | Online Transfer | | | | 1,985.41 * |
| 07/01/2015 | Online | | -1,602.60 | | 3,588.01 * |
| 07/01/2015 | Online Transfer | American Express AGH PMT | -658.57 | | 4,246.58 |
| 06/29/2015 | Online Transfer | Payment to Chase card ending1 | -177.60 | | 4,424.18 |
| 07/02/2015 | Online Transfer | Payment to Chase card ending i | -800.00 | | 5,224.18 * |
| 06/30/2015 | Withdrawal | WITHDRAWAL # 571813430 | -2,000.00 | | 7,224.18 * |
| 06/30/2015 | Interest | INTEREST PAYMENT | | 0.15 | 7,224.03 |
| 06/25/2015 | Check | CHECK # 798 | -600.00 | | 7,824.03 * |
| 06/25/2015 | ACH Debit | STATE FARM RO 08 CPC-CLIENT 01 | -997.68 | | 8,821.71 * |
| 06/24/2015 | Check | CHECK # 796429 | -5,000.00 | | 13,821.71 |
| 06/24/2015 | Online Transfer | Payment to Chase card ending i | -1,000.00 | | 14,821.71 * |
| 06/19/2015 | ACH Debit | BILLMATRIX BILLPAYFEE 15 | -2.50 | | 14,824.21 |
| 06/16/2015 | ACH Debit | COMED - WALLET A BILL PAY 15 | -665.34 | | 15,489.55 * |
| 06/15/2015 | ACH Debit | American Express ACH PMT | -200.00 | | 15,689.55 * |
| 06/15/2015 | ACH Debit | American Express ACH PMT | -39.66 | | 15,729.21 |
| 06/10/2015 | Check | CHECK # 392904 | -536.95 | | Older |

DT 6020

| Date Posted | Transaction Type | Description | Debit(s) | Deposit(s) | Balance |
|---|---|---|---|---|---|
| | Interest | INTEREST PAYMENT | | 0.02 | 1,985.45 * |
| | Interest | INTEREST PAYMENT | | 0.02 | 1,985.43 * |
| | Online Transfer | Payment to Chase card ending i | | 0.01 | 1,985.41 |
| | Online Transfer | Payment to Chase card ending i | -1,602.60 | | |
| 07/08/2015 | ACH Debit | American Express ACH PMT. | -658.57 | | 3,588.01 * |
| 07/06/2015 | Online Transfer | Payment to Chase card ending i | -177.60 | | 4,246.58 |
| 07/06/2015 | Online Transfer | Payment to Chase card ending i | -800.00 | | 4,424.18 |
| 07/03/2015 | Withdrawal | WITHDRAWAL #571813430 | -2,000.00 | | 5,224.18 |
| 06/30/2015 | Interest | INTEREST PAYMENT | | 0.15 | 7,224.18 * |
| 06/30/2015 | Check | CHECK # 798 | -600.00 | | 7,224.03 |
| 06/25/2015 | ACH Debit | STATE FARM RO 08 CPC-CLIENT 01 | -997.68 | | 7,824.03 * |
| 06/24/2015 | Check | CHECK # 796429 | -5,000.00 | | 8,821.71 * |
| 06/24/2015 | Online Transfer | Payment to Chase card ending i | -1,000.00 | | 13,821.71 |
| 06/19/2015 | ACH Debit | BILLMATRIX BILLPAYFEE 15 | -2.50 | | 14,821.71 * |

Older

DF-021

Handwritten annotations: "GK ISLANDS R.", "DEBIT AIRLINES", "3 TICKETS TO ATLANTA", "N. CREDIT CARD", "CASH TO NICK FOR NO 7/4", "GK ISLANDS"

# Px 13

 **Ameritrade**

# Outbound Wire Request (Domestic)

PO Box 2209 ▪ Omaha, NE 68103-2209
Fax: 800-875-5485

*Please be aware that processing of this Letter of Instruction can take up to one business day from receipt. Domestic wires (within the U.S.) can take up to one business day to reach the receiving account. If there are any issues processing the wire, we will contact you via the secured Message Center, inside your TD Ameritrade account.*

## 1. DELIVERING ACCOUNT AND WIRE INFORMATION (See section 6 & 7 for clarification)

a. TD Ameritrade Account Number:
nsg031438

b. Title on TD Ameritrade Account:
Nicholas S. Gouletas

c. Name(s) of Sender(s):
Nicholas S. Gouletas

| d. Amount of Wire: | e. Date to Send Wire: |
|---|---|
| $51,323.29 | 09/05/2014 |

## 2. STANDARD AND TWO-BANK WIRE INFORMATION (See section 6 & 7 for clarification)

a. Corresponding Bank:
(if applicable)     None

b. Corresponding Bank ABA/Routing Number:

c. Receiving Bank:
The Private Bank, 120 South LaSalle Street, Chicago, Illinois ph: 312-564-2000

d. ABA/Routing Number:
071006486

e. Name(s) on Receiving Bank Account:
(no initials or abbreviations)     Natel Matschulat

f. Receiving Bank Account Number:
1279157

## 3. ESCROW OR BROKERAGE WIRE INFORMATION (See section 6 & 7 for clarification)

a. Receiving Bank:

b. ABA/Routing Number:

c. Mortgage/Escrow Firm or Brokerage Firm Name:

d. Mortgage/Escrow Firm's or Brokerage Firm's Account Number at Bank:

e. Name(s) on Receiving Mortgage/Escrow or Brokerage Firm Account:
(no initials or abbreviations)

f. Receiving Escrow File/Reference/Loan Number or Brokerage Account or Order Number:

## 4. ADDITIONAL INFORMATION

*Please use this section to note any additional reference information provided by the receiving financial institution, such as addresses for Escrow Wires, reference numbers, order or invoice numbers, etc.*

## 5. SIGNATURES

*We, the account owners, jointly and severally indemnify and hold harmless TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. and the divisions thereof, from any claim, suit, demand, loss, or liability as a result of the clearing firm having effected transactions pursuant to instructions given by the individuals listed on this account, except as may be clearly and convincingly proven to have resulted from gross negligence.*

| ✗ Primary Account Holder's Signature: | Printed Name: | Date: |
|---|---|---|
|  | Nicholas S.Gouletas | 0—0—0—4—2—0—1—4 |
| ✗ Additional Account Holder's Signature: | Printed Name: | Date: |
| ✗ Additional Account Holder's Signature: | Printed Name: | Date: |

*Original signature required; electronic signatures and/or signature fonts are not authorized.*



Page 1 of 2



PLAINTIFF'S
EXHIBIT
NO. 13

# Px 14

11/22/11

Nov 22 2011

American Invsco Liquidity Action Plan Update.

To date the following actions have taken place:

1. 200 North Dearborn

Because of the slow progress of sales, in conjunction with a strong rental market, we decided to change direction and refinance the remaining 90 unit inventory, to take out the Private Bank loan, as well as the seller, with a term loan. In a parallel path, we will be marketin the remaining inventory to a rental bulk purchaser. Because of the low taxes ($1400/unit), and the fact that the units are renting significantly below market ($1.5/sf), we believe that the bulk sale will be better achieved after we prove that we can rent at market, which is approx $2.3psf. We engaged Draper and Kramer for the financing and we expect to close within. We do not expect any significant cash out of the refinancing; the loan will be approximately $11,000,000, which pays outstanding debt and purchase price, as well as association reserves and some cash out. The major liquidity event will happen with the sellout which should take place in Q2 of 2012. At that time we anticipate netting $5,000,000 approximately depending on market conditions.

2. Lake and Wells

We interviewed brokers and conclude on hiring CBRE to market the first floor and second floors of the commercial space. We should have a broker opinion of value from CBRE in by the second week of December. Please note that a sale of the second floor may result in AI needing to move offices, we are evaluating a contingency plan for this event which will be driven by the company's remaining headcount in place next year. Our internal estimate of value for the two floors is $3,000,000 and we expect to net $2,500,000 with a market time of 180 days. We are also actively marketing the remaining 8 residential units for sale

3. 1212 LaSalle

CBRE will also be the listing broker of 1212 LaSalle. We do not have value indications yet, but it should be north of $2,500,000. Our debt is 400K.

4. 800 S Wells Parking

This site has the most potential but will also require the longest time in order to provide liquidity. Our debt at the land is $2,500,000. The last appraisal had a value of $14,880,000. CBRE indicates that due to the sites favorite zoning the market value for the land could be around $12,000,000. We have indicated the urgency to them, and we are going to list it for $13,000,000, anticipating accepting a price around $12,000,000 in the next nine months, again subject to market conditions. Therefore, the net proceeds to the company should be around $9,000,000. We will make an attempt to finance the land in the mean time.



PLAINTIFF'S EXHIBIT NO. 14
PENGAD 800-631-6989

Conclusion

Although timing is hard to anticipate, we are looking at a total liquidity between $15,000,000 and $19,000,000 in the next 12 months, depending on market conditions. We anticipate that the smaller pieces will trade sooner, and we also estimate that we would have new financing in place in the next four to six months, that should alleviate the current liquidity needs.

# Px 15

**American Invsco Companies**
Consolidated Balance Sheet
December 31, 2012

## ASSETS

| | | |
|---|---|---:|
| River City land parcel | $ | 9,500,000 |
| 200 N Dearborn units | | 5,000,000 |
| 182 W Lake commercial space | | 2,000,000 |
| 203 N Wells condominium units | | 1,750,000 |
| 1212 N LaSalle commercial space | | 1,600,000 |

**TOTAL ASSETS** $ **19,850,000**

## LIABILITIES AND SHAREHOLDER EQUITY

| | | | | |
|---|---|---:|---|---:|
| Mortgages on real estate: | | | | |
| River City labd parcel - Detroit | $ | 2,000,000 | | |
| Republic Bank - 182 W Lake and 203 N Wells | | 850,000 | | |
| Parkway Bank - 1212 N LaSalle | | 470,000 | | |
| Second mortgage - 182 W Lake and 203 N Wells | | 539,000 | | |
| Total mortgages on real estate | | | $ | 3,859,000 |
| Other liabillties: | | | | |
| Noteholders' unsettled claims | | 2,000,000 | | |
| Real estate taxes | | 1,205,000 | | |
| Accounts payable | | 950,000 | | |
| Federal and municipal taxes | | 590,000 | | |
| Outstanding legal bills | | 485,000 | | |
| Assesments owed to Homeowner Associations | | 366,000 | | |
| Litigation settlements | | 393,000 | | |
| Total other liabilities | | | | 5,989,000 |

**TOTAL LIABILITIES** 9,848,000

**SHAREHOLDER EQUITY** 10,002,000

**TOTAL LIABILITIES AND SHAREHOLDER EQUITY** $ **19,850,000**



PLAINTIFF'S EXHIBIT NO. 15

# Px 16

2/28/14

**Nicholas S Gouletas**
Balance Sheet
February 28, 2014

## ASSETS

| | | | |
|---|---|---|---:|
| Garvey Court | 20,739 sq ft of retail space (food court) | | $ 7,000,000 |
| 1212 N LaSalle Commercial | 16,188 sq ft of vacant office space and 26 parking spaces | | 2,818,000 |
| 200 N Dearborn Unsold Condominium Units | Unit 701 - 1,535 sq ft | | 483,525 |
| | Unit 702 - 1,475 sq ft | | 442,500 |
| | Unit 4602 - 1,165 sq ft | | 512,600 |
| | Unit 4701 - 2,875 sq ft | | 1,149,500 |
| | 4 parking spaces | | 140,000 |
| | Less: Unit refurbishment allowance | | (450,000) |
| Net value of 200 N Dearborn condominium units | | | 2,278,125 |
| 182 W Lake Commercial | 2nd floor office space - 8,006 sq ft | | 1,125,000 |
| Century Tower Condominiums | 4 residential units at $125,000 each | | 500,000 |
| Value of 182 W Lake property | | | 1,625,000 |
| 440 N Wabash Commercial LLC | 7 E Illinois - 2,900 sq ft | | 875,000 |
| River City Land | 1.77 acres vacant land | | 6,500,000 |
| **TOTAL ASSETS** | | | **$ 21,096,125** |

## LIABILITIES

### SECURED DEBT

| | | | |
|---|---|---|---:|
| Garvey Court | First mortgage - Private Bank (includes estimated legal fees) | | $ 2,525,000 |
| Garvey Court | Second mortgage - Affordable Lawless | | 1,250,000 |
| CSV lien | Agreed amount for settlement | | 2,200,000 |
| Lake Dearborn LLC | Claims filed with Bankruptcy | | 200,841 |
| LaSalle Commercial LLC | Claims filed with Bankruptcy | | 255,709 |
| 182 W Lake | Unpaid assessments and legal fees | | 350,000 |
| 440 N Wabash Commercial LLC | Unpaid assessments and legal fees | | 10,000 |
| River City | First mortgage | | 3,300,000 |
| **TOTAL SECURED DEBT** | | | **10,091,550** |

### UNSECURED DEBT

| | | | |
|---|---|---|---:|
| Lake Dearborn LLC | Claims filed with Bankruptcy | | 16,602 |
| Dearborn Retail LLC | Claims filed with Bankruptcy | | 25,826 |
| Dearborn Residential LLC | Claims filed with Bankruptcy | | 164,141 |
| DR Dearborn Investment LLC | Claims filed with Bankruptcy | | 5,362 |
| LaSalle Commercial LLC | Claims filed with Bankruptcy | | 5,243 |
| Cook County Assessor | Unpaid real estate taxes | | 150,000 |
| Invsco Employee Services, Inc. | Claims filed with Bankruptcy | | 219,976 |
| Employees | Unpaid employee wages from bankruptcy | | 175,570 |
| General creditors | Claims filed with Bankruptcy | | 149,501 |
| Unpaid bankruptcy legal fees | | | 200,000 |
| Acquest Group LLC | | | |
| Notes payable | Notes issued for ST Residential transaction | | 6,000,000 |
| DLA Piper | Legal fees incurred for ST Residential transaction | | 350,000 |
| Other liabilities | Due diligence costs for ST Residential transaction | | 125,000 |
| **TOTAL UNSECURED DEBT** | | | **7,587,220** |

### JUDGEMENT CREDITOR

| | | | |
|---|---|---|---:|
| 800 S Wells Commercial LLC | Judgement lien from River City commercial property | | 15,550,000 |
| **TOTAL JUDGEMENT CREDITOR** | | | **15,550,000** |

| | | | |
|---|---|---|---:|
| **TOTAL LIABILITIES** | | | **33,228,771** |
| **TOTAL NET WORTH AS OF FEBRUARY 28, 2014** | | | **$ (12,132,646)** |


PLAINTIFF'S EXHIBIT NO. 16 — PENGAD 800-631-6989

Px 17

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

D.A.N. JOINT VENTURE III, L.P. )
   Plaintiff,    )
         )  Case No. 06 L 012698
   v.      )
         )
NICHOLAS S. GOULETAS,  )
and 800 S. WELLS COMMERCIAL LLC )
   Defendants.  )

## EMERGENCY VERIFIED MOTION
## FOR STAY OF ENFORCEMENT OF JUDGMENT AND OTHER RELIEF

Defendant, Nicholas S. Gouletas ("Gouletas"), by and through his attorneys, pursuant to

Illinois Supreme Court Rule 305(a) respectfully moves the court to approve the security

proposed by Gouletas and stay enforcement of the judgment entered on June 16, 2010 and

effective June 25, 2010. In support Gouletas states as follows:

  1.  On June 16, 2010 this Court entered judgment against Gouletas in the amount of

$1,000,000 (the "Judgment"). The Judgment provided that the judgment would not be effective

until June 25, 2010. A true and correct copy of the Judgment is attached hereto as Exhibit A.

The parties further agreed that Plaintiff would take no action to enforce its judgment until

Wednesday, June 30, 2010.

  2.  Gouletas intends to file a timely notice of appeal as to the Judgment. In

connection therewith, Gouletas seeks to stay enforcement of the Judgment by presenting security

for the judgment pursuant to Illinois Supreme Court Rule 305(a).

  3.  The amount of judgment is not reasonably available to Gouletas. Gouletas is

without meaningful liquid assets and as such is not likely to be able to secure a bond for the

Judgment.

  4.  Therefore, Gouletas proposes the grant of a mortgage interest in real estate

commonly known as 800 S. Wells, Chicago, Illinois, 60605, PIN 17-16-401-013-0000 and 17-


PLAINTIFF'S
EXHIBIT
NO. 17

16-401-014-0000 (the "Property") as security for the Judgment. A title commitment for the Property, which includes a legal description of the Property, is attached hereto as Exhibit B. Title to the Property is vested in 800 South Wells Phase II, LLC. Ex. B, p. A1. Gouletas is the sole member of 800 South Wells Phase II, LLC and will authorize the grant of a mortgage in the Property as security for the Judgment. Illinois courts have allowed litigants to post interest in real estate as security under Rule 305(a). *Heller v. Lee*, 130 Ill.App.3d 701, (3rd Dist. 1985).

5.    The equity in the Property available as security for the Judgment far exceeds the amount of judgment plus the anticipated interest and costs. The Property is valued at $14,880,000. Exhibit C, Appraisal dated April 26, 2010.   The sole mortgage recorded against the Property is in the recorded amount of $2,000,000. Ex. B, p. B3 ¶ 6. Therefore, there is equity in the amount of $12,880,000 in the Property to serve as security for the Judgment.

WHEREFORE, Defendant Nicholas Gouletas prays for the entry of an order approving the proposed security for the Judgment entered June 16, 2010 and made effective June 25, 2010; staying enforcement of the Judgment throughout the pendency of Gouletas' appeal of the Judgment; and granting whatever other relief the Court deems equitable and just.

Dated: June 29, 2010                     Respectfully submitted,

                                         NICHOLAS S. GOULETAS

                                         By: _____
                                              One of His Attorneys

                                         Daniel Lynch
                                         Avidan J. Stern
                                         LYNCH AND STERN, LLP (#44520)
                                         150 S. Wacker Drive, Suite 2600
                                         Chicago, Illinois  60601
                                         (312) 346-1600

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, Nicholas S. Gouletas certifies that he read and is familiar with the foregoing Emergency Verified Motion for Stay of Enforcement of Judgment and Other Relief and that the allegations contained therein are true and correct to the best of his knowledge and belief.

Nicholas S. Gouletas

# Px 18

Case: 1:18-cv-00349 Document #: 1-1 Filed: 01/17/18 Page 61 of 100 PageID #:94

## Howard Teplinsky

| | |
|---|---|
| **From:** | Steven Gouletas <sgouletas@nrsrentals.com> |
| **Sent:** | Thursday, January 26, 2017 11:34 AM |
| **To:** | Howard Teplinsky |
| **Subject:** | Fwd: seeking contact info for jerry zaben |

Howard,

See below email.

Thanks,
Steve



**Steven Gouletas**

CEO, Managing Broker (IL & FL),
RMP(from NARPM), CAM(from NAA)

 (312) 361-1928
sgouletas@nrsrentals.com

www.NRSrentals.com
10 E Ontario St, 7th Floor
Chicago, IL 60611-2736

**How did we do?**
**Feedback Survey / Review**

All Real Estate consumers / lessees are hereby notified that National Rental Services (NRS) is agent for and/or represents the owner(s) of NRS advertised, managed and/or serviced rentals. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

---------- Forwarded message ----------
From: Friedgut, Elizabeth H. <Elizabeth.Friedgut@dlapiper.com>
Date: Fri, Dec 19, 2014 at 11:15 PM
Subject: seeking contact info for jerry zaben
To: "sgouletas@nrsrentals.com" <sgouletas@nrsrentals.com>

Do you have? If so, please share. I need to talk to him about your dad's tax liability for river city which we are going to be selling shortly. Thanks.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com Thank you.

1



SEG2 000093

# Px 19

Case: 1:18-cv-00349 Document #: 1-1 Filed: 01/17/18 Page 63 of 100 PageID #:96

## Howard Teplinsky

| | |
|---|---|
| **From:** | Steven Gouletas <sgouletas@nrsrentals.com> |
| **Sent:** | Thursday, January 26, 2017 11:35 AM |
| **To:** | Howard Teplinsky |
| **Subject:** | Fwd: NS Gouletas-800 Wells |

Howard,

See below email.

Thanks,
Steve



**Steven Gouletas**

CEO, Managing Broker (IL & FL),
RMP(from NARPM), CAM(from NAA)

 (312) 361-1928
sgouletas@nrsrentals.com

www.NRSrentals.com
10 E Ontario St, 7th Floor
Chicago, IL 60611-2736

How did we do?
**Feedback Survey / Review**

All Real Estate consumers / lessees are hereby notified that National Rental Services (NRS) is agent for and/or represents the owner(s) of NRS advertised, managed and/or serviced rentals. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager". This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

--------- Forwarded message ---------
From: Gerald Zaidman <GZaidman@fgmk.net>
Date: Mon, Dec 22, 2014 at 2:12 PM
Subject: NS Gouletas-800 Wells
To: "Friedgut, Elizabeth H." <Elizabeth.Friedgut@dlapiper.com>
Cc: Steven Gouletas <sgouletas@nrsrentals.com>

Liz
I think it is important if you can defer the closing of the 800 Wells property owned by Nick personally till 2015
Please call me to discuss ASAP
I am home this afternoon and can be reached on my home phone 847-579-0828 or my cell 847-840-0409
Jerry

Gerald Zaidman,CPA,CVA,CFF,CVA,CFE



PLAINTIFF'S
EXHIBIT
NO. 19

1

SEG2 000094

Partner
FGMK,LLC
2801 Lakeside Drive, 3rd Floor
Bannockburn,IL. 60015
847-964-5118 direct
847-964-5168 direct fax
Gzaidman@fgmk.net
www.fgmk.net

This message (including any attachments) contains confidential information intended for a specific recipient and purpose. If you are not the intended recipient, you should inform the sender, delete this message and are prohibited from disclosing, copying, distributing, or taking any action based on this message or its contents. Any accounting, business, or tax advice contained or implied herein, has been prepared for a specific recipient based on the unique facts and circumstances provided. In the event these circumstances change new advice should be sought. Nothing in this message is intended to assist with the avoidance of penalties that may be imposed on the taxpayer or activities in contravention of Federal or State Law.

2

SEG2 000095

# Px 20

## Master Settlement Statement

Near North National Title LLC
222 North LaSalle Street, Suite 100
Chicago, IL 60601
Phone: (312) 419-3900    Fax: (312) 419-0778

12/29/14

Date: December 29, 2014                                    Time: 5:08PM
Close of escrow: December 29, 2014                Escrow no.: N01140770
Borrower: 880 S. Wells (Chicago) LLC
Seller: 800 South Wells Phase II, LLC              Escrow officer: Shirley Wrightsell
Property location: 800 S. Wells Street
Chicago, IL 60607

| | Seller | | | Borrower | |
|---|---|---|---|---|---|
| | Debit | Credit | | Debit | Credit |
| **Financial Consideration** | | | | | |
| Contract Sales Price | | 7,750,000.00 | | 7,750,000.00 | |
| **Prorations/Adjustments** | | | | | |
| 2014 Tax Proration | 164,132.19 | | | | 164,132.19 |
| **Commissions** | | | | | |
| Listing Agent Commission to Millennium Properties R/E, Inc. 0.00 @ 0.00% = 232,500.00 | 232,500.00 | | | | |
| Selling Agent Commission to Cushman & Wakefield 0.00 @ 0.00% = 155,000.00 | 155,000.00 | | | | |
| **Title Charges** | | | | | |
| Title Insurance to Near North National Title LLC ALTA 2006 Owners Policy for 7,750,000.00 5,425.00 | 5,425.00 | | | | |
| Tax Payment Service (2 PINS) 2013 to Near North National Title LLC | 80.00 | | | | |
| Tax Payment Service - 2012 to Near North National Title LLC | 100.00 | | | | |
| Deed and Money Escrow to Near North National Title LLC | 1,500.00 | | | | |
| Deed and Money Escrow to Near North National Title LLC | | | | 1,500.00 | |
| ALTA Endorsement 25-06 (Same As Survey) to Near North National Title LLC | | | | 350.00 | |
| GAP - Seller to Near North National Title LLC | 250.00 | | | | |
| ALTA Endorsement 28.1-06 (Encroachments - Boundaries and Easements) to Near North National Title LLC | | | | 225.00 | |
| Later Date Examination to Near North National Title LLC | 185.00 | | | | |
| Work Done Fee to Near North National Title LLC | 500.00 | | | | |
| Water Certification (3) to Near North National Title LLC | 240.00 | | | | |
| ALTA Endorsement 17-06 (Access and Entry) to Near North National Title LLC | | | | 225.00 | |
| ALTA Endorsement 35-06 (Minerals and Other Subsurface Substances - Bldgs) to Near North National Title LLC | | | | 175.00 | |
| ALTA Endorsement 17.2-06 (Utility Access) to Near North National Title LLC | | | | 200.00 | |
| Extended Coverage Endorsement to Near North National Title LLC | 450.00 | | | | |
| ALTA Endorsement 9.2-06 (Restrictions, Encroachments, Minerals - Improved Land) to Near North National Title LLC | | | | 200.00 | |
| ALTA Endorsement 3.1-06 (Zoning-Completed Structure) to Near North National Title LLC | | | | 1,500.00 | |
| ALTA Endorsement 26-06 (Subdivision) to Near North National Title LLC | | | | 175.00 | |
| ALTA Endorsement 18.1-06 (Multiple Tax Parcel) to Near North National Title LLC | | | | 200.00 | |
| IL State Policy Fee to Chicago Title Insurance Company | | | | 3.00 | |
| Later Date Examination to Near North National Title LLC | | | | 185.00 | |
| Obtain Open Item Bills to Near North National Title LLC | 70.00 | | | | |

PLAINTIFF'S EXHIBIT NO. 20   PENGAD 800-531-6989

## Master Settlement Statement

| Seller Debit | Seller Credit | | Borrower Debit | Borrower Credit |
|---|---|---|---|---|
| | | Strict Joint Order Escrow to Near North National Title LLC | 100.00 | |
| | | **Recording Charges** | | |
| 100.00 | | Recording Fees to Near North National Title | 100.00 | |
| 27,125.00 | | City/County Tax Stamps to Cook County Recorder of Deeds / City of Chicago | 58,125.00 | |
| 7,750.00 | | State Tax/Stamps to Cook County Recorder of Deeds | | |
| | | **Payoffs** | | |
| 4,500,000.00 | | Payoff of First Mortgage Loan | | |
| | | Total Payoff        4,500,000.00 | | |
| | | **Other Debits/Credits** | | |
| 100,000.00 | | Legal Services to Goldstein & McClintock LLLP | | |
| 100,000.00 | | Legal Services to DLA PIPER US LLP | | |
| 20,951.50 | | Survey to National Survey Service, Inc. | | |
| 8,919.00 | | Legal Services to Womble Carlyle Sandridge & Rice | | |
| 12.00 | | TPA Service Fee to Cook County Treasurer | | |
| 50.00 | | Water Certification - to Chicago Dept. of Water Management | | |
| 54,311.02 | | 2012 Taxes Parcel ending in 013 to Cook County Collector | | |
| 25,823.58 | | 2013 Taxes Parcel ending in 013 first Installment to Cook County Treasurer | | |
| 20,344.45 | | 2013 Taxes Parcel ending in 013 second Installment to Cook County Treasurer | | |
| 74,205.58 | | 2012 Taxes Parcel ending in 014 first Installment to Cook County Collector | | |
| 64,526.89 | | 2012 Taxes Parcel ending in 014 second Installment to Cook County Collector | | |
| 67,805.31 | | 2013 Taxes Parcel ending in 014 first Installment to Cook County Treasurer | | |
| 53,418.84 | | 2013 Taxes Parcel ending in 014 second Installment to Cook County Treasurer | | |
| 10,364.00 | | As directed to Datapark | | |
| 1,769.00 | | As directed to JC 's United Building Maintenance | | |
| 223.00 | | As directed to Mc Adam Landsacping, Inc | | |
| 185.00 | | As directed to Corp-Link Services, Inc | | |
| 13,000.00 | | As directed to United States Trustee | | |
| | | Buyer Legal Fees to Schain Banks | 40,000.00 | |
| 6,711,295.16 | 7,750,000.00 | Subtotals | 7,853,263.00 | 164,132.19 |
| | | Balance Due FROM Borrower | | 7,689,130.81 |
| 2,038,703.84 | | Balance Due TO Seller | | |
| 7,750,000.00 | 7,750,000.00 | TOTALS | 7,853,263.00 | 7,853,263.00 |

Seller

600 South Wells Phase II, LLC

BY: ELIZABETH PEREDDIT

Near North National Title LLC
Settlement Agent
SHIRLEY WRIGHTSELL

Borrower

663 S. Wells (Chicago) LLC

BY: DAVID O KEEFE

Px 21

**Howard Teplinsky**

From:                   Howard Teplinsky
Sent:                   Monday, January 05, 2015 9:01 AM
To:                     'John Arnold'
Subject:                RE: 800 river city

John.  Let's look at this the following way:

HBI's claim in bankruptcy:                                    $2,177,000.00

Proceeds currently at  CTT to disburse to HBI:        $2,038,703.84 (-$138,296.16l)

Less:                                                    $850,000 (Stuart Adler judgment)
                                                         $15,000 (George Strey)
                                                         $30,000 (Beermann Pritikin Mirabelli Swerdlove)
                                                         $100,000 (repayment of Natel loan)
                                                         $25,000 (for engagement of accountant for HBI's
returns)                                                 $1,018,703.84 (available to HBI creditors)

Plus:                          800 S Wells      $137,835
                                                -461.16 (balance after paying all HBI claims)

Plus:                                           $164,132.19 (underfunded amount by purchaser
(closing)                                       $163,671.03 (funds in excess of HBI's claim)

At a minimum, 800 S. Wells Phase II LLC should retain $163,071.03 to pay any obligations it may have, including possible
IRS obligations.



Howard L. Teplinsky
Partner
BEERMANN | PRITIKIN | MIRABELLI | SWERDLOVE LLP
161 North Clark Street, Suite 2600
Chicago, Illinois  60601
Telephone:  312-621-9700
Facsimile:  312-621-0909
E-Mail:  hteplinsky@beermannlaw.com





PLAINTIFF'S
EXHIBIT
NO. 21

# Px 22

**Howard Teplinsky**

| | |
|---|---|
| m: | Howard Teplinsky |
| Sent: | Wednesday, January 07, 2015 6:03 PM |
| To: | Christine M. Arcus |
| Cc: | 'John Arnold' |
| Subject: | Home By Invsco Wires |
| Attachments: | image001.png |

Hi. I'm going to be in Lake County tomorrow for a good part of the day. After you confirm that the wires have hit our account, I would like some of the money to be disbursed tomorrow. Please keep me posted.

1. Stuart Adler $850,000.

   **Glenview State Bank**
   **800 Waukegan Rd**
   **Glenview, IL 60025**
   **(847) 729-1900**
   **Mr Steve Tabassum- Banker Rep ext 0360**
   **ROUTING # 071920300**
   **Checking account # 730-2291**

2. Natel Matschulat $100,000

   **Citibank**
   **1 East Oak St**
   **Chicago, IL 60611**
   **Routing: 271070801**
   **Account: 0909239130**

3. George Stray $15,000

   **Wells Fargo**
   **North Carolina**
   **Routing 053000219**
   **Account 1810913457**

Howard L. Teplinsky
Partner
BEERMANN | PRITIKIN | MIRABELLI | SWERDLOVE LLP
'1 North Clark Street, Suite 2600
.icago, Illinois 60601
Telephone: 312-621-9700
Facsimile: 312-621-0909
E-Mail: hteplinsky@beermannlaw.com



PLAINTIFF'S
EXHIBIT
NO. 22
PENGAD 800-631-6989

# Px 23


COPY


**The PrivateBank**

**WIRE REQUEST FORM**



## Wire Transfer Information

| | | |
|---|---|---|
| Date: 01/06/2015 | Prepared by: LAIMA PLIOPLYS | Available Balance: 137,835.16 |
| Wire Amount: $137,535.00 | USD: ☑ | Foreign Currency: ☐ |

Client Account Name: 800 S WELLS PHASE II LLC

Client Account Address: 182 W LAKE ST. #200, CHICAGO IL 60601

| Debit Account Number to be charged: 2114960 | Beneficiary Bank ABA or SWIFT: ABA 021000021 |
|---|---|
| Beneficiary Bank Name: CHASE BANK | Intermediary Bank ABA or SWIFT: |

Beneficiary Bank Address: 10 S DEARBORN CHICAGO IL 60602

| Beneficiary Account Number to be Credited: 004235850 | International Payment Code: |
|---|---|

Beneficiary Name: BEERMAN,PRITIKIN, MIRABELLI SWERDLOVE LLP

Beneficiary Address: 161 N CLARK ST #2600, CHICAGO IL 60601

Additional Information:

CLIENT SIGNATURE: (In person only): _____ Date: 01/06/2015

The client agrees that this wire transfer is irrevocable and that the client obligation to pay becomes owned above is to create the ordinary care in processing this wire transfer and, that it is not responsible for any losses to client which occur as a result of any other party's engagement in processing this transfer. In addition, the processing of a wire transfer shall be made subject to terms of the account agreement.

## DODD-FRANK REGULATION E-INTERNATIONAL CONSUMER PAYMENTS

If this wire is USD $15.00 or greater, by order of a consumer located in the United States, and is being sent to any person or entity located in a foreign country for personal, household or family use, you must complete the following information:

| Does this wire fall under the regulation? (Y/N) | No | Is this wire in USD? (Y/N) | |
|---|---|---|---|
| What is the currency of the beneficiary account? | | Is this wire in Foreign Currency? | |

The Dodd Frank regulation requires a pre-disclosure form and a receipt be provided to all consumers that request wire transfers that apply to this regulation. The Bank must disclose fee and the information even if there is none. Call back must be performed for all wires that apply to the regulation. Phone waivers and future wire requests will not be accepted for Dodd Frank Regulation E–International Consumer Wire requests. Exceptions will not be permitted.

☐ In Person Pre-Disclosure Requirements:
Send the completed wire request form to the wire room. Upon receipt of the wire form the Wire Room will e-mail the pre-disclosure and receipt to you for client signature. Return the signed pre disclosure and receipt to the Wire Room. Upon receipt of the signed pre-disclosure and signed receipt the Wire Room will wait the obligatory 30 minutes before processing the payment.

☐ Phone Pre-Disclosure Requirements:
Send the completed wire request to the Wire Room. Upon receipt of the completed wire form the Wire Room will call back the client to confirm the payment and for pre-disclosure approval. The client must verbally confirm the payment instructions and approve the pre-disclosure requirements. When the wire is approved and confirmed the Wire Room will wait the obligatory 30 minutes before processing the payment.

☐ E-mail & Fax Pre-Disclosure Requirements:
Send the completed wire request to the Wire Room. Upon receipt of the completed wire form the Wire Room will e-mail the pre-disclosure to you. You must e-mail/fax the pre-disclosure to your client. The client must e-mail/fax the approval of the pre-disclosure back to the Bank. Send the client approved pre-disclosure to the Wire Room. Upon receipt of the approved pre-disclosure the Wire Room will call back the client to confirm the payment. Once the wire is approved and confirmed the Wire Room will wait the obligatory 30 minutes before processing the payment.

Right to Cancel:
The client has the right to cancel the wire within thirty minutes from signature approving or verbally approving the pre-disclosure. To cancel this wire, notify Wire Operations @ 1-866-864-6419 Option 3

## BANK USE ONLY — Mandatory — Must Be Completed

Method / Verification completed by Banker:
☑ In Person – ID verified
☐ Phone (waiver agreement on file) – No call back required.
☐ Facsimile or Email – call back required
☐ Phone (no waiver agreement on file) – Call back required

First and Last Name of client that initiated payment: NICHOLAS S GOULETAS

AUTHORIZED BY: (Refer to Wire Transfer Authorization Limits (See Credit Risk Management Approval Reference Guide)

| Signature | Print Name | Title | Officer # |
|---|---|---|---|
| | EILEEN E KELLY | AMO | 7224 |
| | LAIMA PLIOPLYS | ABM | 7076 |

WIRE STAFF ONLY Initials: _____ Verifier: _____ Reference: 2010
Fax Wires to: 312-564-1795

SIGNATURE VERIFIED

PLAINTIFF'S EXHIBIT NO. 23

# Px 24

## Howard Teplinsky

| | |
|---|---|
| m: | Howard Teplinsky |
| ~nt: | Tuesday, January 20, 2015 7:28 PM |
| To: | Christine M. Arcus |
| Cc: | 'John Arnold' |
| Subject: | Home By Invsco Funds |

Hi. We need to cut the following checks:

From the $1,271,218.84 remaining in escrow,

Paul Jones $690,000
Dorothea Touris $396,218.84
James Paul $110,000

Warady & Davis $35,000
George Stray $15,000

The remaining $25,000 will be paid to us. I will leave an invoice on your chair.

John Arnold from the client will pick up all of the checks *except* for the Warady & Davis check. Please let us know when he can come by. Thanks as always.

Howard L. Teplinsky
Partner
BEERMANN | PRITIKIN | MIRABELLI | SWERDLOVE LLP
161 North Clark Street, Suite 2600
Chicago, Illinois 60601
Telephone: 312-621-9700
Facsimile: 312-621-0909
E-Mail: hteplinsky@beermannlaw.com





CONFIDENTIAL E-MAIL



Px 25



PLAINTIFF'S
EXHIBIT
NO. 25

Px 26

## UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 16-01335 |
| NICHOLAS S. GOULETAS, | ) | Hon. Timothy A. Barnes |
| | ) | Hearing Date:    August 16, 2017 |
| Debtor. | ) | Hearing Time:    10:00 a.m. |

### TRUSTEE'S MOTION FOR APPROVAL OF SALE OF INTERESTS IN PERSONAL PROPERTY AND FOR RELATED RELIEF

Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002 and 6004, Richard M. Fogel, not individually but as Chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Nicholas S. Gouletas (the "Debtor") hereby requests that this Court enter an order that provides the Trustee with the following relief:

- Approves and authorizes the sale by the Trustee of the Estate's interest in certain personal property to D.A.N. Joint Venture III, L.P., or its assignee ("DJV") for the sum of $15,000.00, as more particularly described below;

- Authorizes the Trustee to execute certain documents to effectuate the proposed sale; and

- Provides the Trustee with such other and further relief as may be appropriate under the circumstances and to which the Trustee may be entitled.

In support of this motion, the Trustee respectfully represents as follows:

### Background

1.    On January 17, 2016 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy case in this Court (the "Case").

2.    On the Petition Date, the Trustee was appointed as the Chapter 7 trustee to administer the Estate.

3.    Prior to the Petition Date, the Debtor was a real estate developer and, as set forth in his Schedule of Assets, B. 19, pp. 11-36 [Dkt. No 15] and his Statement of Financial Affairs,

(4273 MOT A0454352 DOC)

PLAINTIFF'S
EXHIBIT
NO. 26

No. 27, pp. 105-130 [Dkt. No. 15], owned and operated a multitude of business entities that owned, developed and managed real estate projects (collectively, the "Business Entities").[1]

4.        Prior to the Petition Date, the Debtor was named as a defendant in a multitude of lawsuits relating to some of the real estate projects, as set forth in his Statement of Financial Affairs, No. 9, pp. 91-93. In some of the actions, judgments were entered against the Debtor and citation liens were obtained by the judgment creditors.

5.        The bar dates for filing claims against the Estate was June 3, 2016 for general creditors and July 15, 2016 for government creditors.

6.        This Court has core subject matter jurisdiction to hear and resolve this motion pursuant to 28 U.S.C. §§ 1334(b), 1334(e), 157 (b)(2)(A), 157(b)(2)(M), 157(b)(2)(N), 157(b)(2)(O) and applicable local rules regarding the referral of cases under title 11 of the United States Code to this Court.

### The Proposed Sale of Assets

7.        Prior to the Petition Date, it appears that the Debtor transferred, or caused one or more of his business entities to transfer, certain personal property to family members, including but not limited to,:

    a.    Approximately $51,000 in cash to his wife, Natel Matschulat ("Matschulat"), on or about September 5, 2014 (the "Matschulat Transfer"); and

    b.    Membership interests in NKM Garvey LLC ("NKM") and SEG Garvey LLC ("SEG") to Matschulat, his children and other family members (collectively, the "Garvey Transfers").

8.        The Trustee received an offer from DJV[2], in the amount of $15,000.00, to purchase:

---

[1] The Trustee was authorized to abandon the Estate's interest in the Business Entities pursuant to order of Court dated November 29, 2016.

[2] DJV is the owner of 800 South Wells Commercial LLC, the Debtor's largest unsecured non-priority creditor.

a.   Any and all claims and causes of action of any nature or form whatsoever (except for non-assignable Bankruptcy Code claims), whether common law, statutory, equitable or otherwise in nature, that the Trustee asserted or could have asserted for or on behalf of the Estate, including, without limitation, claims for fraudulent transfers, breach of fiduciary duties, tort, breach of contract, refunds, reimbursement, indemnification, contribution, constructive trusts, equitable relief, accounting, injunctive relief, attorneys' fees, court costs, or any other claim or cause of action of any nature or form whatsoever, including, without limitation, the Matschulat Transfer and the Garvey Transfers (collectively, the "Litigation Claims"), and

b.   Any and all claims and causes of action of any nature or form whatsoever by the Estate that any corporations, LLCs, limited partnerships, trusts, and any other entities of any nature or form whatsoever (a) are, were or have been used for an improper purpose; (b) are, in fact, the alter-egos or reverse alter-egos of the Debtor; or (c) are shams to thwart, deceive, hinder, and/or delay the Debtor's creditors (collectively, the "Alter-Ego Claims").

9.    A copy of the offer is attached to this motion as <u>Exhibit A</u>.

10.    The Trustee is of the opinion that Matschulat, the children and the other family members may be able to assert defenses to the Litigation Claims and he is of the opinion that the Alter-Ego Claims do not have significant value to the Estate.

<u>Relief Requested</u>

11.    The Trustee asserts that the Litigation Claims and the Alter-Ego Claims are property of the Estate in accordance with the provisions of 28 U.S.C. § 1334(e) and 11 U.S.C. § 541(a).

12.    Pursuant to the provisions of 11 U.S.C. §363(b) (1), the Trustee seeks authority to sell the Litigation Claims and the Alter-Ego Claims for the benefit of the Estate to DJV for $15,000.00, subject to all liens, claims and encumbrances. In his business judgment, the offer is fair and reasonable and is a better alternative than abandonment of the claims. The Trustee does not believe that he could receive a substantially higher offer for the Litigation Claims and the

Alter-Ego Claims through a public sale or any other means of disposition, given the nature of the assets.[3]

13.    Section 363(b) (1) authorizes a trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.    11 U.S.C. §363(b)(1).

14.    Courts generally approve sales outside of the ordinary course of business under § 363(b) (1) whenever such a sale is in the best interests of the estate.  *See, In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988).  Ordinarily, this standard requires: (i) an articulated business justification for the sale; and (ii) evidence that the sale occurred in good faith.  *See, In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993), citing, *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988), *cert. denied*, 490 U.S. 1006, 109 S. Ct. 1642, 104 L.Ed.2d 157 (1989)); *see also, Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (sale under §363 involves exercise of fiduciary duty and requires an "articulated business justification").

15.    In addition to seeking authority to sell the Litigation Claims and the Alter-Ego Claims, the Trustee requests authority to execute and deliver to DJV any documents necessary to transfer the Estate's interest in the assets.

### Notice

16.    The Trustee has served a copy of the motion on 21 days' notice on the Debtor, the United States Trustee, all of the creditors that have filed proofs of claim against the Estate and all counsel of record.

17.    The Trustee requests that the Court consider such notice to be adequate and sufficient under the circumstances, given the nature of the relief sought.

---

[3] The Trustee had been advised by former counsel for the Debtor that neither Matschulat nor the other family members were interested in making a higher offer for the Litigation Claims and the Alter-Ego Claims.

WHEREFORE, the Trustee respectfully requests that this Court enter the proposed order: (i) finding that notice of the hearing on the motion, as described herein, is sufficient; (ii) authorizing and approving the Trustee's proposed sale of the Litigation Claims and the Alter-Ego Claims to DJV for $15,000.00, as set forth in the motion; (iii) authorizing the Trustee to take all further actions and execute and deliver any documents necessary to consummate the transaction described herein; and (iv) providing such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

Dated:  July 24, 2017                         /s/ Richard M. Fogel, Trustee


Richard M. Fogel (#3127114)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
(312) 276-1334

{4273 MOT A0454552.DOC}                    5

# EXHIBIT A

{4273 MOT A0454552.DOC}

# ARMSTRONG LAW FIRM

23353 S. 88th Avenue
FRANKFORT, ILLINOIS 60423

E-MAIL:
armstronglaw@sbcglobal.net

815/464-3243
(FAX) 815/464-3449

July 23, 2017

Richard M. Fogel, Trustee
Shaw Fishman
321 N Clark Street, Suite 800
Chicago IL 60654

      Re:    Gouletas Bankruptcy; Offer to Purchase

Dear Rick:

      As we discussed in mid-October of 2016, and in accordance with your email to me of July 20, 2017, DAN Joint Venture III, L.P. ("DJV") hereby offers to purchase from the Bankruptcy Estate of Debtor Nicholas S. Gouletas ("Gouletas") for a total cash payment of $15,000.00 the following assets of the Bankruptcy Estate:

      (1)    Any and all claims and causes of action of any nature or form whatsoever (except for non-assignable Bankruptcy Code claims), whether common law, statutory, equitable or otherwise in nature, that the Trustee asserted or could have asserted for or on behalf of the Gouletas' Bankruptcy Estate, including, without limitation, claims for fraudulent transfers, breach of fiduciary duties, tort, breach of contract, refunds, reimbursement, indemnification, contribution, constructive trusts, equitable relief, accounting, injunctive relief, attorneys' fees, court costs, or any other claim or cause of action of any nature or form whatsoever, including, without limitation, (a) fraudulent transfer claims related to the transfer by Gouletas of funds to his wife, Natel Matschulat, on or about September 5, 2014; (b) fraudulent transfer claims related to the transfers by Gouletas (either directly or indirectly through any entity owned or controlled, directly or indirectly, by Gouletas) of Gouletas' 25% interest in the "Garvey Court" project at Clark and Lake Streets in Chicago, Illinois; and

      (2)    Any and all claims and causes of action of any nature or form whatsoever by the Gouletas' Bankruptcy Estate that any corporations, LLCs, limited partnerships, trusts, and any other entities of any nature or form whatsoever (a) are, were or have been used for an improper purpose; (b) are, in fact, the alter-egos or reverse alter-egos of Gouletas; or (c) are shams to thwart, deceive, hinder, and/or delay Gouletas' creditors.

      Please let me know if you require any further information about DJV's offers set forth above.

                      Very truly yours,
                      /s/
                      F. Dean Armstrong

cc:    Dan Cadle
       Vic Buente, Esq.

### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 16-01335 |
| NICHOLAS S. GOULETAS, | ) | Hon. Timothy A. Barnes |
| | ) | Hearing Date:  August 16, 2017 |
| Debtor. | ) | Hearing Time:  10:00 a.m. |

### NOTICE OF MOTION

TO:    See attached service list

    **PLEASE TAKE NOTICE** that on **August 16, 2017 at 10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Timothy A. Barnes** in Courtroom 744, Dirksen Federal Courthouse, 219 South Dearborn Street, Chicago, Illinois and shall present the **Trustee's Motion to Approve Sale of Interests in Personal Property and Related Relief**, a copy of which is attached and served upon you, and move for the entry of an order in conformity with the pleadings.

    **AT WHICH TIME AND PLACE** you may appear if you so see fit.

> Richard M. Fogel (#3127114)
> Shaw Fishman Glantz & Towbin LLC
> 321 North Clark Street, Suite 800
> Chicago, IL 60654
> (312) 276-1334

### CERTIFICATE OF SERVICE

    Richard M. Fogel certifies that he caused to be served a true copy of the above and foregoing notice and attached pleadings upon the attached service list electronically or by U.S. Mail, as indicated, on July 24, 2017.

> /s/ Richard M. Fogel

{427J MOT A0454552.DOC}

## ELECTRONIC SERVICE LIST

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Troy M. Sphar
tsphar@smbtrials.com

Frederick D. Armstrong
armstronglaw@sbcglobal.net

## U.S. MAIL SERVICE LIST

Nicholas S. Gouletas
111 E. Chestnut, Unit 28K
Chicago, IL 60611

800 South Wells Commercial LLC
D.A.N. Joint Venture III, L.P.
100 North Center Street
Newton Falls, OH 44444

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

2625 North Clark Condominium Association
c/o Johnson & Sullivan, Ltd
11 East Hubbard, Suite 702
Chicago, IL 60611

Quantum3 Group LLC
as agent for CP Medical LLC
PO Box 788
Kirkland, WA 98083-0788

Pierce R. and Claudia B. Ennessy
296 Aspen Lane
Highland Park, IL 60035

American InfoSource LP
As agent for DIRECTV, LLC
PO Box 5008
Carol Stream, IL 60197-5008

The Private Bank
c/o Autumn L. Sharp
Carlson Dash LLC
216 S. Jefferson Street, Suite 504
Chicago, IL 60661

Guaranty Solutions
c/o Mages & Price LLC
707 Lake Cook Road, Suite 314
Deerfield, IL 60015-5613

Guaranty Solutions, LLC
c/o Mages & Price LLC
1110 Lake Cook Road, Suite 385
Buffalo Grove, IL 60089

William and Edith Apostal
2537 N. Burling Street
Chicago, IL 60614

Hoogendoorn & Talbot LLP
122S. Michigan Avenue, Suite 1220
Chicago, IL 60603

Novack and Macey LLP
100 N. Riverside Plaza
Chicago, IL 60606

James A. West
606 W. 18th St., Unit 6
Chicago, IL 60616

Peter A. Apostal
340 E. Randolph Street #3606
Chicago, IL 60601

# Px 27

Case 16-01335   Doc 96   Filed 08/18/17   Entered 08/22/17 07:19:14   Desc Main
Document   Page 1 of 2

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

In Re:                                            )          BK No.:   16-01335
Nicholas S. Gouletas,                             )
                                                  )
                                                  )          Chapter: 7
                                                  )          Honorable Timothy A. Barnes
                                                  )
                                                  )
                          Debtor(s)               )

### ORDER AUTHORIZING SALE OF PERSONAL PROPERTY

This matter having come on for hearing after notice to creditors and parties in interest with reference to the motion (the "Motion") of Richard M. Fogel, the chapter 7 trustee (the "Trustee") for the estate (the "Estate") of Nicholas S. Gouletas (the "Debtor"), for authority to sell the Estate's interest in certain personal property, and the Court being fully advised in the premises,

IT IS ORDERED THAT:

1. The Trustee is hereby authorized to sell the Estate's interests in A) any and all claims and causes of action of any nature or form whatsoever (except for non-assignable claims arising under a provision of the United States Bankruptcy Code), whether common law, statutory, equitable or otherwise in nature, that the Trustee asserted or could have asserted for or on behalf of the Estate, including, without limitation, claims for fraudulent transfers, breach of fiduciary duties, tort, breach of contract, refunds, reimbursement, indemnification, contribution, constructive trusts, equitable relief, accounting, injunctive relief, attorneys' fees, court costs, or any other claim or cause of action of any nature or form whatsoever and B) any and all claims and causes of action of any nature or form whatsoever by the Estate that any corporations, limited liability companies, limited partnerships, trusts, and any other entities of any nature or form whatsoever (a) are, were or have been used for an improper purpose; (b) are, in fact, the alter-egos or reverse alter-egos of the Debtor; or (c) are shams to thwart, deceive, hinder, and/or delay the Debtor's creditors to DAN Joint Venture III, L.P., subject to all liens, claims and encumbrances, for $15,000.00.

2. The Trustee is hereby authorized to take all further actions and execute any documents necessary to consummate the transaction.

3. Notice of the Motion is deemed to be adequate under the circumstances and further notice is hereby waived.

Enter:

                                                  _____
                                                  United States Bankruptcy Judge

Dated:      AUG   18  2017

**Prepared by:**
Richard M. Fogel (#3127114)

PLAINTIFF'S
EXHIBIT
NO. 27

Case 16-01335    Doc 96    Filed 08/18/17    Entered 08/22/17 07:19:14    Desc Main
Document    Page 2 of 2

Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60654
(312) 276-1334

Rev: 20120501_bko

Px 28

## ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

This Assignment of Claims and Causes of Action (the "Assignment") is made and executed as of this 13TH day of September, 2017 by and between Richard M. Fogel, not individually but solely as chapter 7 trustee (the "Trustee") of the bankruptcy estate of Nicholas S. Gouletas (the "Debtor"), located in Chicago, Illinois, to and for the benefit of D.A.N. Joint Venture III, L.P. (the "Assignee"), located in Newton Falls, Ohio.

WHEREAS, on January 17, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code and thus initiated the case styled In re Nicholas S. Gouletas, Case No. 16-01335 (the "Case"), currently pending before the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court");

WHEREAS, on the Petition Date, the Trustee was appointed to administer the Debtor's chapter 7 bankruptcy estate (the "Estate");

WHEREAS, on the Petition Date, the Estate acquired the right to assert claims and causes of action, including, without limitation, claims for fraudulent transfers, breach of fiduciary duties, tort, breach of contract, refunds, reimbursement, indemnification, contribution, constructive trusts, equitable relief, accounting, injunctive relief, attorneys' fees and court costs (the "Litigation Claims");

WHEREAS, on the Petition Date, the Estate acquired the right to assert claims and causes of action that any of the Debtor's corporations, limited liability companies, limited partnerships, trusts, and any other entities of any nature or form whatsoever (a) are, were or have been used for an improper purpose; (b) are, in fact, the alter-egos or reverse alter-egos of the Debtor; or (c) are shams to thwart, deceive, hinder, and/or delay the Debtor's creditors (the "Alter Ego Claims");

WHEREAS, the Bankruptcy Court has entered an order in the Case authorizing the Trustee to assign the Estate's interest in the Litigation Claims and the Alter Ego Claims to the

{4273 AGR A0484161.DOC}

PLAINTIFF'S
EXHIBIT
NO. 28

Assignee, subject to all liens, claims and encumbrances, for the sum of $15,000.00 (the "Sale Order").

NOW, THEREFORE, pursuant to the terms of the Sale Order and in exchange for the good and valuable consideration and obligations set forth in this Assignment, the receipt and sufficiency of which is hereby acknowledged, the Trustee and the Assignee hereby agree as follows:

1.     The Trustee hereby assigns to the Assignee any and all claims and causes of action of any nature or form whatsoever (except for non-assignable claims arising under a provision of the United States Bankruptcy Code), whether common law, statutory, equitable or otherwise in nature, that the Trustee asserted or could have asserted for or on behalf of the Estate, including, without limitation, claims for fraudulent transfers, breach of fiduciary duties, tort, breach of contract, refunds, reimbursement, indemnification, contribution, constructive trusts, equitable relief, accounting, injunctive relief, attorneys' fees, court costs, or any other claim or cause of action of any nature or form whatsoever.

2.     The Trustee hereby assigns to the Assignee any and all claims and causes of action of any nature or form whatsoever by the Estate that any corporations, limited liability companies, limited partnerships, trusts, and any other entities of any nature or form whatsoever (a) are, were or have been used for an improper purpose; (b) are, in fact, the alter-egos or reverse alter-egos of the Debtor; or (c) are shams to thwart, deceive, hinder, and/or delay the Debtor's creditors

3.     The Trustee makes no representations or warranties of any kind with respect to the Litigation Claims or the Alter Ego Claims.

4.     This instrument shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, legal representatives and assigns.

{4273 AGR A0484161.DOC}

IN WITNESS WHEREOF, the Trustee and the Assignee have caused this Assignment

to be executed as of the day and year first written above.


RICHARD M. FOGEL, not individually, but
as chapter 7 trustee of the bankruptcy estate
of Nicholas S. Gouletas

D.A.N. Joint Venture III, L.P.

By: The Cadle Company, its General Partner

By: _Richard G. Persinger_

    Richard G. Persinger, President

{4273 AGR A0484161.DOC}

Px 29

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (this "Release and Settlement Agreement") is made and entered into, as of December 30, 2014, by and among Stuart T. Adler, as Trustee of the Stuart T. Adler Revocable Family Trust dated January 31, 1992 ("Adler") and Nicholas S. Gouletas ("Gouletas") and Homes By Invsco, Inc. ("Invsco," with Gouletas, "Borrowers").

## RECITALS

The following recitals form the basis for and are a material part of this Release and Settlement Agreement:

A.      On April 2, 2012, Borrowers executed and delivered to Adler, for value received, a Promissory Note ("Note") in the sum of $1,020,000 in which Borrowers promised to pay Adler the principal amount of $1,020,000, plus accrued interest.

B.      On or about August 4, 2014, Adler brought suit against Borrowers for breach of the Note in the Circuit Court of Cook County, Case No. 2014 L 050584 (the "Litigation").

C.      On September 17, 2014, a final judgment in the amount of $900,500.00 plus accruing interest, attorneys' fees, and costs of suit was entered against Borrowers in the Litigation. The judgment remains outstanding.

D.      On or about November 11, 2014, Borrowers were served with a citation to discover assets in the Litigation.

E.      In response to the citation and in an effort to fully and finally resolve any issues relating to the Note and the pending Litigation, each of the parties desires to finally and completely settle and compromise their disputes and differences subject to the terms set forth herein.

NOW, THEREFORE, in consideration of the premises, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## AGREEMENT

1.      Affirmation of Recitals.  Each of the parties acknowledges and agrees that the foregoing recitals are true and correct and agrees that the recitals are a part of this Release and Settlement Agreement.

2.      Settlement Payment.  On or before December 30, 2014, Invsco will pay to Adler $850,000.00 in cash ("Payment"), by wire transfer of same day funds to the following account upon execution of this Release and Settlement Agreement:

> Glenview State Bank
> 800 Waukegan Rd
> Glenview, IL 60025
> (847) 729-1900



PLAINTIFF'S
EXHIBIT

NO. 29

Mr Steve Tabassum- Banker Rep ext 0360
ROUTING # 071920300
Checking account # 730-2291
RE: Homes By Invsco Settlement

Borrowers represent that the Settlement Payment will be made by Invsco from its readily available funds not subject to any lien. If for any reason Adler is ordered to return or disgorge the Payment or any portion thereof, any obligation of Adler hereunder shall be null, void and of no effect, including, without limitation, with regard to Borrowers' continuing obligations under the Note.

3.　　No Bankruptcy. In the event Invsco files a voluntary bankruptcy petition or is named in an involuntary petition, that filing shall constitute a breach of this Agreement.

4.　　Release by Adler. Effective ninety-one (91) days after the payment of the Settlement Payment, and only in the event Borrowers have complied with their obligations under this Agreement, Adler, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, hereby fully forever, irrevocably and unconditionally releases, remises, acquits and discharges all and each of the Borrowers and their respective agents, employees, officers, directors, partners, managers, members, trustees, parents, subsidiaries, predecessors, successors, affiliates, representatives, heirs, beneficiaries, executors, administrators and assigns from any and all claims, charges, complaints, demands, actions, causes of action, suits, rights, appeals and rights of appeal, debts, dues, sums of money, costs, losses, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, executions, obligations, liabilities and expenses (including attorneys' fees and costs) of every kind, nature and description whatsoever, existing or contingent, ascertained or unascertained, asserted or unasserted, suspected or unsuspected, known or unknown, in law, equity or mixed, arising out of or relating to the Note or the Litigation other than those arising out of this Agreement. In addition, in the event Borrowers have complied with their obligations under this Agreement, Adler shall deem the judgment in the Litigation satisfied in full, but shall preserve all claims relating to the breach of this Agreement.

5.　　Release by Borrowers. Each of the Borrowers, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, hereby fully forever, irrevocably and unconditionally releases, remises, acquits and discharges Adler and his respective agents, employees, officers, directors, trustees, partners, managers, members, parents, subsidiaries, predecessors, successors, affiliates, representatives, heirs, beneficiaries, executors, administrators and assigns from any and all claims, charges, complaints, demands, actions, causes of action, suits, rights, appeals and rights of appeal, debts, dues, sums of money, costs, losses, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, executions, obligations, liabilities and expenses (including attorneys' fees and costs) of every kind, nature and description whatsoever, existing or contingent, ascertained or unascertained, asserted or unasserted, suspected or unsuspected, known or unknown, in law, equity or mixed, arising out of or relating to the Note or the Litigation other than those obligations arising out of this Agreement.

6.　　Confidentiality. This Release and Settlement Agreement and all matters relating to the terms and negotiation of the Release and Settlement Agreement, shall be confidential and

2

are not to be disclosed except by order of the court, an agreement in writing by the parties hereto or in the context of a privileged communication, except that (i) the Release and Settlement Agreement may be disclosed where required by law following notice to the other Party; and (ii) the Release and Settlement Agreement may be disclosed as necessary or required in enforcing the terms of this Release and Settlement Agreement.

7.  Non-Disparagement.  The parties hereto shall not without legal privilege, justification or excuse, publish or communicate false and/or disparaging words about each another's business dealings, the relationships between the parties or this Release and Settlement Agreement.

8.  Representations and Warranties.

(a)  Each of the parties hereto represents and warrants that the concepts embodied in this Release and Settlement Agreement have been voluntarily and independently negotiated by and between the parties hereto, and each such party has had the opportunity to consult with legal counsel of such party's choosing, this Release and Settlement Agreement is satisfactory to each of the parties to this Release and Settlement Agreement, and each such party has the mental capacity to enter into this Release and Settlement Agreement, understands the terms of this Release and Settlement Agreement and intends to fully perform and be bound by this Release and Settlement Agreement.

(b)  Each of the parties represents and warrants that it is duly created, validly existing and in good standing under the laws of the state of its organization and that the party signing on behalf of it is authorized on its behalf to execute and deliver this Release and Settlement Agreement, and any other instrument executed and delivered in connection herewith, and upon such execution and delivery each such entity shall be bound by all such instruments.

(c)  Each of the parties hereto represents and warrants that such party has the legal right, power, capacity and authority to enter into and perform such party's covenants, obligations and agreements under this Release and Settlement Agreement and the other instruments referenced herein and delivered pursuant hereto, all corporate, company, partnership and other actions required in connection with the authorization, execution, delivery and performance of this Release and Settlement Agreement by such party have been duly taken and, when executed and delivered by such party, this Release and Settlement Agreement shall constitute the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, subject only to the satisfaction of the conditions contained in paragraph 5 hereof.

(d)  Each of the parties hereto represents and warrants that neither the execution and delivery of this Release and Settlement Agreement, nor consummation of any of the transactions contemplated herein, nor compliance with the terms and provisions hereof, will contravene any provision of law, statute, rule or regulation to which such party is subject or any judgment, decree, license, order or permit applicable to such party, or will conflict or will be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions or provisions of, or constitute a delay under any other obligation of such party.

(e)      Each of the parties hereto represents and warrants that no consent, approval, authorization or order of any court or governmental authority or third party is required in connection with the execution, delivery and performance by any party to this Release and Settlement Agreement.

(f)      Each of the parties hereto represents and warrants that it has neither sold nor assigned any of the claims to be released pursuant to the terms of this Release and Settlement Agreement.

MISCELLANEOUS

9.      <u>Descriptive Headings</u>.   The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Release and Settlement Agreement.

10.      <u>Parties in Interest</u>.  This Release and Settlement Agreement shall be binding upon and inure to the benefit of each party hereto and each of their respective successors and assigns, and nothing in this Release and Settlement Agreement is intended to confer upon any other person, whether or not named herein, any rights or remedies of any nature whatsoever under or by reason of this Release and Settlement Agreement.

11.      <u>Counterparts</u>.  This Release and Settlement Agreement may be executed in any number of counterparts, by original or facsimile signature, each of which when executed and delivered shall be deemed an original, and such counterparts together shall constitute one instrument.

12.      <u>Further Actions</u>.  The parties hereto hereby agree to execute and deliver all such documents and instruments and do all such other reasonable acts and things as may be necessary and appropriate to carry out the provisions of this Release and Settlement Agreement.

13.      <u>Amendment</u>.  This Release and Settlement Agreement may not be amended except by an instrument in writing signed by all of the parties hereto.

14.      <u>Entire Agreement, Severability</u>.    This Release and Settlement Agreement constitutes the entire understanding and agreement between the parties hereto respecting the subject matter hereof and supercedes all prior written and oral agreements between the parties respecting the subject matter of this Release and Settlement Agreement.  If any term or provision of this Release and Settlement Agreement or the application thereof to any party or circumstance shall be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, the validity, legality and enforceability of the remaining terms and provisions of this Release and Settlement Agreement shall not in any way be affected or impaired thereby, and the affected term or provision shall be modified to the minimum extent permitted by law so as to achieve most fully the intention of this Release and Settlement Agreement.

15.      <u>Governing Law: Submission to Jurisdiction: Jury Trial Waiver.  Waiver of Punitive and Consequential Damages</u>.   This Release and Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws.  **EACH**

4

PARTY HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF ILLINOIS AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS RELEASE AND SETTLEMENT AGREEMENT SHALL BE LITIGATED IN SUCH COURTS. EACH PARTY WAIVES ITS RIGHT TO HAVE ANY MATTER ARISING FROM OR RELATED TO THIS RELEASE AND SETTLEMENT AGREEMENT TRIED BEFORE A JURY. BORROWERS EACH WAIVE ANY RIGHT TO ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES IN CONNECTION HEREWITH OR DIRECTLY OR INDIRECTLY RELATED HERETO OR TO THE LOAN DOCUMENTS.

IN WITNESS WHEREOF, the parties hereto have caused this Release and Settlement Agreement to be duly executed as of the day and year first set forth above.

Stuart T. Adler, as Trustee of the Stuart T. Adler Revocable Family Trust dated January 31, 1992

Nicholas S. Gouletas

HOMES BY INVSCO, INC.

By: _____

Name: _____

Its: _____

101984212

5

# Px 30

CONFIDENTIAL AND SUBJECT TO PROTECTIVE ORDER

**AIGL REAL ESTATE COMPANY**
*182 West Lake Street, Suite 200*
*(312) 595-4800*

*Total $700,000.00 Investment* take on SCHD c/L

*+ $50,000*

**PROMISSORY NOTE** *NS by President*

$ *500, 000.00* + *$150, 000 APR* Issue Date: 4-25-2013

Chicago, Illinois

FOR VALUE RECEIVED, the undersigned, **AIGL Real Estate Company,** an Illinois corporation, with an address of 182 West Lake St., Suite 200, Chicago, Illinois 60601 ("AIGL"), promises to pay to the order of *Paul A. Jones* , an individual with an address of *#5 Ashley Oaks Lane, Flossmoor, Illinois* ("Payee"), the principal sum of $ *500, 000.00* within ninety (90) days of the Issue Date, at such place as Payee may designate.

The undersigned further promises to pay to the order of Payee interest for the ninety (90) day term in the amount of Fifty Cents ($.50) for every One Dollar ($1.00) of principal. Therefore, the Payee will receive interest in the amount of $ *250, 000.00* on the aggregate unpaid principal amount outstanding for the ninety (90) day period. AIGL may prepay the principal balance and accrued inte

rest ➤

due under this Promissory Note, in whole or in part at any time without penalty.

Payments received from AIGL in payment of this Promissory Note shall be applied, as follows: first, to any unpaid costs and collections of this Promissory Note including, without limitation, reasonable attorney fees and court costs; second, to the accrued interest due hereunder; and third, to the unpaid principal balance of this Promissory Note.

At the option of Payee, any or all of the obligations of AIGL hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events of default: (a) failure in payment of any obligations of AIGL hereunder to the Payee; (b) a filing of a proceeding under the any bankruptcy, insolvency or similar law by or against AIGL, or (c) an assignment by AIGL for the benefit of creditors.

The undersigned waives presentment, protest and demand and notice of presentment, protest of nonpayment of Promissory Note.

No delay on the part of the Payee in the exercise of any right or remedy hereunder shall operate as a waiver hereof, and no single or partial exercise by the Payee of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

This Promissory Note has been delivered at Payee's address and shall be governed by and construed in accordance with the internal laws, and not the choice of laws, of the State of Illinois. Whenever possible, each provision of this Promissory Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Promissory Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision, or of the remaining provisions of this Promissory Note.

This note has been delivered prior to the receipt of funds from Payee and is conditioned on the receipt by AIGL of $ *500, 000.00 +/150* TOTAL *650 —NSA Beach*

*Px 30*

Jones 000072

CONFIDENTIAL AND SUBJECT TO PROTECTIVE ORDER

AIGL REAL ESTATE COMPANY
*182 West Lake Street, Suite 200*
*(312) 595-4800*

AIGL Real Estate Company,
an Illinois corporation

By  Nicholas S. Gouletas, President

Px 31

**AIGL REAL ESTATE COMPANY**
*182 West Lake Street, Suite 200*
*(312) 595-4800*

## PROMISSORY NOTE

$250,000                                                    Issue Date:May 8, 2013
                                                                Chicago, Illinois

FOR VALUE RECEIVED, the undersigned, AIGL Real Estate Company, an Illinois corporation, with an address of 182 West Lake St., Suite 200, Chicago, Illinois 60601 ("AIGL"), promises to pay to the order of James and Linda Paul, an individual with an address of 2640 14th Avenue Carmel, CA  93923-9222 ("Payee"), the principal sum of $250,000 (Two Hundred and Fifty U.S. Dollars) within ninety (90) days of the Issue Date, at such place as Payee may designate ("Payment Date").

The undersigned further promises to pay to the order of Payee interest for the ninety (90) day term in the amount of Fifty Cents ($.50) for every One Dollar ($1.00) of principal. Therefore, the Payee will receive interest on the Payment Date in the amount of $125,000 (One Hundred Twenty-Five Thousand U.S. Dollars) on the aggregate unpaid principal amount outstanding within ninety (90) days of the Issue Date, at such place as Payee may designate ("Payment Date"). AIGL may prepay the principal balance and accrued interest due under this Promissory Note, in whole or in part at any time without penalty.

AIGL shall be responsible for costs, if any, related to collection on this Note.  Payments received from AIGL in payment of this Promissory Note shall be applied, as follows:  first, to any unpaid principal balance of this Promissory Note, second, to the accrued interest due thereunder, and, finally, to any unpaid costs of collections related to this Promissory Note including, without limitation, reasonable attorney fees and court costs.

At the option of Payee, any or all of the obligations of AIGL hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events of default: (a) failure in payment of any obligations of AIGL hereunder to the Payee; (b) a filing of a proceeding under the any bankruptcy, insolvency or similar law by or against AIGL; or (c) an assignment by AIGL for the benefit of creditors.

The undersigned waives presentment, protest and demand and notice of presentment, protest of nonpayment of Promissory Note.

No delay on the part of the Payee in the exercise of any right or remedy hereunder shall operate as a waiver hereof, and no single or partial exercise by the Payee of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

This Promissory Note has been delivered at Payee's address and shall be governed by and construed in accordance with the internal laws, and not the choice of laws, of the State of Illinois.  Whenever possible, each provision of this Promissory Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Promissory Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision, or of the remaining provisions of this Promissory Note.

This note has been delivered prior to the receipt of funds from Payee and is conditioned on the receipt by AIGL of $250,000 (Two Hundred and Fifty thousand U.S. Dollars).

LENDER                                    BORROWER
                                          AIGL Real Estate Company,
                                          an Illinois corporation

_____  _____          _____
               Date                   By: Nicholas S. Gbuletas, President          Date

Px 31

Px 32

*182 West Lake Street, Suite 200*
*(312) 595-4800*

~Copy

## PROMISSORY NOTE

$250,000.00

Issue Date: April 28, 2013
Chicago, Illinois

FOR VALUE RECEIVED, the undersigned, AIGL Real Estate Company, an Illinois corporation, with an address of 182 West Lake St., Suite 200, Chicago, Illinois 60601 ("AIGL"), promises to pay to the order of George Spanos, an individual, with an address of 250 N Washtenaw Avenue ("Payee"), the principal sum of $250,000.00 (Two Hundred and Fifty Thousand U.S. Dollars) within ninety (90) days of the Issue Date, at such place as Payee may designate ("Payment Date").

The undersigned further promises to pay to the order of Payee interest for the ninety (90) day term in the amount of Fifty Cents ($.50) for every One Dollar ($1.00) of principal. Therefore, the Payee will receive interest on the Payment Date in the amount of $125,000.00 (One Hundred Twenty Five Thousand U.S. Dollars) on the aggregate unpaid principal amount outstanding within ninety (90) days of the Issue Date, at such place as Payee may designate ("Payment Date"). AIGL may prepay the principal balance and accrued interest due under this Promissory Note, in whole or in part at any time without penalty.

AIGL shall be responsible for costs, if any, related to collection on this Note. Payments received from AIGL in payment of this Promissory Note shall be applied, as follows: first, to any unpaid principal balance of this Promissory Note, second, to the accrued interest due thereunder, and, finally, to any unpaid costs of collections related to this Promissory Note including, without limitation, reasonable attorney fees and court costs.

At the option of Payee, any or all of the obligations of AIGL hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events of default: (a) failure in payment of any obligations of AIGL hereunder to the Payee; (b) a filing of a proceeding under the any bankruptcy, insolvency or similar law by or against AIGL; or (c) an assignment by AIGL for the benefit of creditors.

The undersigned waives presentment, protest and demand and notice of presentment, protest of nonpayment of Promissory Note.

No delay on the part of the Payee in the exercise of any right or remedy hereunder shall operate as a waiver hereof, and no single or partial exercise by the Payee of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

This Promissory Note has been delivered at Payee's address and shall be governed by and construed in accordance with the internal laws, and not the choice of laws, of the State of Illinois. Whenever possible, each provision of this Promissory Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Promissory Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision, or of the remaining provisions of this Promissory Note.

This note has been delivered prior to the receipt of funds from Payee and is conditioned on the receipt by AIGL of $250,000 (Two Hundred Fifty Thousand U.S. Dollars).

LENDER
George Spanos

*(signature)* 4-28-2013
George Spanos          Date

BORROWER
AIGL Real Estate Company,
an Illinois corporation

*(signature)* 4-28-2013
By: Nicholas S. Gouletas, President          Date

Px 32

Blumberg No. 5137

Px 33

*MLR→PLCM*
MAR 1 3 2017



**Warady & Davis LLP**
*Certified Public Accountants & Consultants*

1717 Deerfield Road, Suite 300 South
Deerfield, Illinois 60015-3977
847-267-9600   Fax 847-267-9696
www.waradydavis.com

Home by Invsco
Howard Teplinsky
c/o Beerman Pritikin Mirabelli Swerdlove LLP
161 N Clark St Ste 2600
Chicago, IL 60601

| **Invoice Date:** | Tuesday, November 01, 2016 |
| --- | --- |
| **Invoice Number:** | 73018 |
| **Client Number:** | 0001052.0000 |

Services rendered

| | | |
| --- | --- | --- |
| | $ | 12,404.65 |
| Progress Applied | | (3,120.00) |
| Current Amount Due | $ | 9,284.65 |

| 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Over 120 | Balance |
| --- | --- | --- | --- | --- | --- |
| 9,284.65 | 0.00 | 0.00 | 3,120.00 | (25,000.00) | (12,595.35) |

INVOICES ARE PAYABLE UPON RECEIPT - THANK YOU

*Px 33*

W&D000001

Px 34

## ASSIGNMENT OF FRAUDULENT TRANSFER CLAIMS

1. On June 16, 2010, D.A.N. Joint Venture III, L.P. ("DJV") obtained a final judgment against 800 South Wells Commercial, LLC ("800 SWC") in the amount of $11,550,040.12 (the "DJV Judgment") in No. 2006 L 012698, Circuit Court of Cook County, Illinois.

2. On January 23, 2014, 800 SWC obtained a final judgment against Nicholas S. Gouletas ("Gouletas") in the amount of $11,550,040.12 (the "800 SWC Judgment") in No. 2011-L-2895, Circuit Court of Cook County, Illinois.

3. On January 17, 2016, Gouletas filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois, No. 16-01335, with Richard M. Fogel, Trustee, appointed as the Bankruptcy Trustee (the "Trustee") for Gouletas' Chapter 7 bankruptcy case.

4. Upon Gouletas' filing of bankruptcy on January 17, 2016, all fraudulent transfer claims that a creditor held against Gouletas became the exclusive property of the Trustee for the two-year period following the bankruptcy filing, with the creditors (including 800 SWC) divested of the ability to prosecute any such fraudulent transfer claims during the two-year period of exclusivity accorded to the Trustee.

5. Pursuant to 11 U.S.C. §546(a)(1)(A), when the two-year limitation on the Trustee's fraudulent transfer claims expired on January 17, 2018, those state-law fraudulent transfer claims, without effective sale and assignment of those claims by the Trustee, automatically revert back to the creditors, including 800 SWC, which held the fraudulent transfer claims prior to Gouletas' bankruptcy filing.

6. On July 23, 2017, the Trustee received an offer from DJV to purchase the Trustee's fraudulent transfer claims, litigation claims and alter-ego claims for $15,000.



7.    On July 24, 2017, the Trustee filed in the Bankruptcy Court the Trustee's Motion for Approval of Sale of Interests in Personal Property and for Related Relief, which specifically included the state-law fraudulent transfer claims that were the exclusive property of the Trustee for the two-year period following Gouletas' bankruptcy filing. No one offered a higher bid for those claims, and neither Gouletas, nor any creditor, objected to the Trustee's Motion or the proposed sale by the Trustee.

8.    After due notice to all interested parties, and after hearing before the Bankruptcy Court, on August 18, 2017, the Bankruptcy Court presiding over the Gouletas Bankruptcy entered its Order Authorizing Sale of Personal Property. Neither Gouletas, nor any creditor, objected to the order of sale, or appealed the order of sale. Thereafter, on September 13, 2017, the Trustee and the representative of DJV executed an Assignment of Claims and Causes of Action, thereby transferring the Trustee's fraudulent transfer claims to DJV.

9.    In the event that such fraudulent transfer claims were not effectively assigned by the Trustee to DJV, on January 17, 2018, the state-law fraudulent transfer claims previously held by 800 SWC automatically reverted to 800 SWC.

10.   Accordingly, in consideration of a $5,000,000 reduction in the amount that 800 SWC owes to DJV in connection with the DJV Judgment, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, 800 SWC hereby assigns, transfers and conveys to DJV (a) a 50% interest in the 800 SWC Judgment; and (b) all of 800 SWC's fraudulent transfer claims, and any related tort or statutory claims, pertaining to the 800 SWC Judgment.

Dated: April __, 2019.

D.A.N. JOINT VENTURE III, L.P.

By: The Cadle Company,
its General Partner

By: _____
     Daniel C. Cadle,
     Chairman

800 SOUTH WELLS COMMERCIAL, LLC

By: its Manager,
D.A.N. Joint Venture III, L.P.

By: The Cadle Company,
its General Partner

By: _____
     Daniel C. Cadle
     Chairman

Px 35

JPMorgan Chase   1/12/2016 11:15:50 AM   PAGE   1/002   Fax Server

i-ARC!

JP-MORGAN CHASE & Co.   i-ARC!

Page 1 of 1

View Image Screen

Item Deposit Screen

PAUL A. JONES
DEWIZAR D. HOWARD-JONES

Pay to the order of Dorothea Touris

Four Hundred Fifteen Thousand Dollars

$415,000.00

3694

| Field | Value |
|---|---|
| Posting Date: | 02/17/2015 |
| Sequence Number: | 3170113360 |
| Amount: | 415,000.00 |
| Account: | 1556222 |
| Routing Transit Number: | 071000015 |
| Check/Serial Number: | 000000003694 |
| Bank Number: | 111 |
| IRD: | 0 |
| Image Type: | P |
| BOFD: | 074909882 |
| Cost Center: | 775200 |
| Teller Number: | 10 |
| Teller Sequence Number: | 24 |
| Capture Source: | BY |
| Entry Number: | 0052093431 |
| UDK: | 1111150317003170113360 |



PX 35