UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D.A.N. JOINT VENTURE III, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:18-cv-349 |
| | ) | |
| DOROTHEA TOURIS, et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT BPMS'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Before the Court is Plaintiff's Motion and Brief for Leave to File a Third Amended Complaint [169 & 169-1] ("TAC"), which is opposed in part by Defendant Beermann Pritikin Mirobelli Swerdlove LLP ("BPMS") only. In BPMS's Opposition [173] ("Opp."), BPMS argues that leave to file the TAC should be denied based on five grounds: (1) futility; (2) undue delay; (3) repeated failure to cure deficiencies; (4) bad faith; and (5) undue prejudice. None of the grounds asserted by BPMS, however, warrants denial of Plaintiff's Motion. Accordingly, and for the reasons explained below, the Court should grant Plaintiff's Motion, and thereby allow Plaintiff leave to file the TAC.

**I.    Legal Standards**

Federal Rule of Civil Procedure 15(a)(2)

> allows a party to amend its complaint with the district court's leave "when justice so requires." Fed.R.Civ.P. 15(a)(2). [A District] Court may deny leave to file an amended complaint in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny a motion to

amend is purely within the discretion of the district court. *J.D. Marshall Int'l Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991).

*Yata v. BDJ Trucking Co.*, 2018 U.S. Dist. LEXIS 111726, *20, 2018 WL 3303290 (N.D. Ill. July 15, 2018). In terms of the potential for denial of amendment based on a claim of futility, this Court has explained that

> [w]here, as here, summary judgment has not been decided, "futility is measured by the capacity of the amendment to survive a motion to dismiss" -- not its ability to survive summary judgment. *Duthie v. Metria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008). In a typical case, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the [party] has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

*United States ex rel. Graziosi v. Accretive Health, Inc.*, 2018 U.S. Dist. LEXIS 160737, *15-16, 2018 WL 4503366 (N.D. Ill. Sept. 20, 2018).

## II. Argument

### A. It Would Not Be Futile To Allow Plaintiff To File The TAC

In the proposed TAC, Plaintiff seeks leave to amend its Complaint to (a) add additional facts as to the wrongful conduct of BPMS which facts were recently learned by Plaintiff through document production from a third party; (b) clarify that Plaintiff's claims against BPMS do not arise out of conduct on its part in the performance of professional services; (c) clarify that BPMS acted in the capacity as a "transferee" under the Illinois Uniform Fraudulent Transfer Act when it directed the deposit of Judgment Debtor Gouletas's funds into its trust account; and (d) delete the claims against a settling Defendant, Warady & Davis. BPMS argues that it would be futile to allow Plaintiff to file the TAC. BPMS is wrong.

2

### (i) The Proposed TAC Fairly Alleges That BPMS's Wrongful Conduct Included Conduct That Did Not Constitute The Rendition Of Professional Services

BPMS argues that the TAC "fails to establish BPMS did not perform professional services." (Opp. p. 4.) According to BPMS, the TAC simply "add[ed] the conclusory statement that BPMS was not performing professional services when the profits from its client's sale of the parking lot were placed in the law firm's IOLTA account", with "[t]he only 'new' allegation . . . that BPMS 'exercis[ed] dominion over those funds' by placing them in the law firm's trust account." (*Id.* p. 4.) BPMS, however, has engaged in too narrow a view of the new allegations set forth in the TAC.

The additional allegations in the proposed TAC (highlighted below) fairly allege sufficient facts to raise the inference that BPMS's wrongful conduct included conduct that did not constitute rendition of professional services:

> 43. The closing on the sale of the Parking Lot occurred on December 29, 2014. The closing statement (Px 20) did not list any indebtedness owed to HBI. Rather, the closing statement showeds that from the $7,750,000 in sale proceeds, $2,038,703.84 was the balance due to the Seller, 800 SWP. (*Id.* p. 2.) Elizabeth Friedgut signed the settlement statement for and on behalf of 800 SWP. (*Id.*) Shortly after the closing, Mr. Teplinsky directed the title company to not pay the balance of the sale proceeds, $2,038,703.84, to the "Seller" as listed on the closing statement, but rather to deposit those funds into BPMS's trust account. Accordingly, at the direction of Mr. Teplinsky, on January 7, 2015, $2,038,703.84 in proceeds from the sale of the Paking Lot was transferred by the title company into BPMS's trust account, with BPMS thereby exercising dominion over those funds. Mr. Teplinsky and his law firm, BPMS, were not engaged in the rendition of professional services when they took dominion over the $2,038,703.84 in profits from the sale of the Parking Lot.
>
> 51.1. Finally, on April 15, 2016, the Chapter 7 Bankruptcy Trustee, Richard Fogel, Esq., inquired of 800 SWP's closing attorney, Elizabeth Friedgut, why the $2,038,703.84 in net sale proceeds was paid to the "Seller", 800 SWP (Px 20), rather than the purported

3

> second mortgagee, HBI. Mr. Teplinsky then quickly intervened to cut off further inquiry by contacting the Chapter 7 Trustee and representing to him that since HBI "was no longer operating and didn't have any bank accounts", "the title company held the amount used to pay the [HBI] lien in escrow", with the $2,038,703.84 in escrowed funds eventually transferred, at Mr. Teplinsky's direction, to the BPMS trust account for the supposed purpose of paying HBI's creditors.

(TAC ¶¶43 & 51.1.)

Finally, BPMS argues that "[t]he placement of client funds in a law firm trust account is neither unique nor problematic." (Opp. p. 5.) Generally true. It is, however, both unlawful and problematic for an attorney, in the face of a citation order prohibiting a judgment debtor from transferring assets (*see* TAC ¶18), to direct the placement of the judgment debtor's cash into a trust account (*see* TAC ¶¶43 & 51.1) so as to avoid a court's injunction order and to shield the debtor's funds from the claims of a judgment creditor. *See Coppock v. State Bar*, 749 P.2d 1317, 1320 & 1327-28 (Cal. 1988) (attorney's placement of judgment debtor's funds in attorney's trust account in an effort to shield those funds from execution efforts was both unlawful and constituted unprofessional conduct); *The Cadle Company v. Flanagan*, 2005 WL 1039005, *11 (D. Conn. May 2, 2005) (attorney's role in directing a client's fraudulent transfers and violations of a court order enjoining the client's transfer of assets "far exceeds the rendering of legal advice and suggests participation in fraudulent conduct.") Here, Attorney Howard Teplinsky from BPMS understood that when Gouletas was served with the Citation, Gouletas was prohibited from transferring anything after receiving the Citation (TAC ¶18), and specifically was "**PROHIBITED** from making or allowing any transfer or other disposition of . . . any [cash] to which [Gouletas may be entitled or which may . . . become due to [Gouletas]." (*Id*. ¶18.) Moreover, an Illinois citation lien extends even to assets nominally held by related parties, which are considered the property of the judgment debtor. *See Brown v. Szabo (In re Szabo)*, 353 B.R. 554, 560-61 (Bankr. N.D. Ill. 2006).

4

At a minimum, the additional allegations in the TAC fairly posit a question of fact for resolution by the jury as to whether BPMS's direction to a title insurance company to place over $2,000,000 in profits from the sale of a parking lot into BPMS's trust account, in violation of a citation lien and as part of a scheme to defraud a judgment creditor, constitute the rendition of unlawful services, as opposed to the provision of lawful professional services. A jury should be given the opportunity to weigh in on that factual dispute. And in terms of the Motion before the Court, it would not be futile to allow Plaintiff leave to file the TAC to add those additional allegations.

### (ii) The TAC Seeks To Clarify That BPMS Acted In The Capacity As A "Transferee" Under The Illinois Uniform Fraudulent Transfer Act When It Directed The Deposit Of Judgment Debtor Gouletas's Funds Into Its Trust Account

BPMS argues that the TAC is futile because "Plaintiff improperly seeks to tag BPMS with liability beyond what it received." Not true.

In the TAC, Plaintiff seeks to clarify that BPMS acted in the capacity as a "transferee" under the Illinois Uniform Fraudulent Transfer Act when it directed the deposit of Judgment Debtor Gouletas's funds into its trust account. While it is correct that the Court in its March 25, 2020 Order [157] ("Order") ruled that Plaintiff, as the assignee of the bankruptcy trustee, could not pursue conspiracy and aiding and abetting secondary liability fraudulent transfer claims against BPMS because any such theory of joint and several liability would run contrary to the "disgorgement" model which governs fraudulent transfer claims asserted by a bankruptcy trustee (*id*. p. 17), the Court did not purport to limit Plaintiff's ability to pursue an Illinois fraudulent transfer claim against BPMS as a "transferee" of the funds it actually received. And here, in the TAC [169-1], Plaintiff seeks to clarify the amount BPMS actually received as a transferee. *See id*. ¶¶67(j) & 90(h).

5

In arguing futility of amendment, BPMS argues, contrary to the allegations in the TAC, that it "simply acted as an intermediary, or mere conduit" when it received the over $2,000,000 in profits from Gouletas's sale of the parking lot, and, citing to the decision in *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988), argues that it cannot be held liable as a "transferee" of the fraudulently transferred funds. (Opp. p. 6.) While BPMS is free to make that argument to the jury upon the trial of this case, the TAC adequately alleges that BPMS is liable as a "transferee" of the over $2,000,000 in profits from the sale of the parking lot that Attorney Teplinsky directed to be deposited into BPMS's trust account. *See* TAC ¶¶43 & 51.1.

Moreover, the *Bonded Financial* decision actually supports, rather than undercuts, Plaintiff's position that BPMS is liable as a "transferee" for the full amount of the funds that Attorney Teplinsky directed to be deposited into BPMS's trust account. In the *Bonded Financial* case, the defendant Bank, which had loaned $655,000 to debtor Michael Ryan, received a $200,000 check from Ryan's company, debtor Bonded Financial, with the notation to deposit the check into Ryan's account at the Bank. Shortly thereafter, Ryan instructed the Bank to withdraw the $200,000 from Ryan's account, and apply those funds toward Ryan's loan at the Bank. Upon the subsequent bankruptcy filings by Ryan and Bonded Financial, the bankruptcy trustee brought a fraudulent transfer suit against Ryan, Bonded Financial and the Bank under 11 U.S.C. §550(a).

The issue before the Seventh Circuit in *Bonded Financial* was whether the Bank was liable as a "transferee" within the meaning of §550(a) for the $200,000 payment by Ryan toward the reduction of his $655,000 loan. Because there was "[n]othing in the record [to] suggest[] that the Bank knew of Bonded's financial peril or Ryan's plan", the Bank "took for value and without knowledge of the voidability of the initial transaction", and, therefore, the Bank, as a subsequent

6

transferee, was not liable for the fraudulent conveyance because of the good faith provision in 11 U.S.C. §550(b)(1). 838 F.2d at 898.

In connection with its ruling exculpating the Bank from liability, the Seventh Circuit in *Bonded Financial* noted:

> As the Bank saw things on [the date the funds were transferred toward payment of Ryan's loan], it was getting Ryan's money. It would be at risk if Ryan were defrauding his other creditors or preferring the Bank, but the Bank would perceive no reason to investigate Bonded or sequester the money for the benefit of Bonded's creditors.

838 F.2d at 894. The Seventh Circuit further noted, however, that "subsequent transferees who lack 'good faith' must stand and deliver." *Id.* at 896 n. 3.

Here, by contrast, BPMS, through Attorney Teplinsky, knew of the citation lien which prohibited Gouletas from transferring any funds over which he exercised control (*see* TAC ¶18), and was the architect of the scheme to place Gouletas's funds into BPMS's trust account so as to shield those funds from the claims of Gouletas's judgment creditors. (*See* TAC ¶¶43 & 51.1.) In terms of the Motion before the Court, it would not be futile to allow Plaintiff to file the TAC asserting a claim that BPMS is liable as a transferee (as compared to its capacity as a co-conspirator) for the full amount of Gouletas's funds that Attorney Teplinsky directed to be deposited into BPMS's trust account.

Finally, BPMS argues that it would be futile to allow Plaintiff to amend its transferee allegations because Plaintiff has sued other Defendants for their participation in Gouletas's fraudulent transfer scheme, and thus, so says BPMS, Plaintiff is attempting to obtain a "double recovery". (Opp. pp. 6-7.) Not true.

Plaintiff is only entitled to recover once for the full amount of the fraudulent transfers, and hereby so stipulates. To the extent Plaintiff obtains a full recovery from BPMS (from its insurance

carrier or otherwise), the other Defendants would be entitled to a credit for any such recovery. There will no "double recovery" by Plaintiff, and any such baseless claim by BPMS does not render the TAC futile.

### (iii) Plaintiff's Conspiracy And Aiding And Abetting Claims Are Properly Brought By Plaintiff As Assignee Of 800 SWC

BPMS argues that Plaintiff's conspiracy and aiding and abetting claims asserted as an assignee of judgment creditor 800 SWC are futile "for the reasons stated in BPMS' Response [to Plaintiff's Motion for Partial Reconsideration of the Court's March 25, 2020 Memorandum Opinion and Order]." (Opp. p. 7.) Without rearguing the positions raised by Plaintiff in its Motion for Reconsideration [158] and Reply [164], it should be noted that allowance of the TAC would have an impact on the Motion for Reconsideration because the additional allegations in Counts Five and Six make it clear that Plaintiff is proceeding on those claims not in its capacity as the assignee of the fraudulent transfer causes of action held by the bankruptcy trustee, but rather as the assignee of the claims of judgment creditor 800 SWC. *See* TAC ¶¶93 & 96. Accordingly, Plaintiff's conspiracy and aiding and abetting claims are properly brought as assignee of 800 SWC, and it would not be futile to allow Plaintiff to proceed with those claims.

### B. The Relevant Factors Which Might Warrant Denial Of Leave To Amend Are Not Present In This Case

BPMS argues that the Court should not allow the filing of the TAC claiming (1) undue delay; (2) repeated failure to cure deficiencies; (3) bad faith; and (4) undue prejudice. None of these factors, however, warrants denial of leave to amend.

*First*, there has not been any undue delay in seeking amendment which has resulted in any undue prejudice to BPMS. As noted by this Court:

> "[D]elay in itself does not constitute a sufficient basis for a district court's equitable decision" to deny leave to amend a pleading. *King*

> *v. Kramer*, 763 F.3d 635, 644 (7th Cir. 2014). The delay "must be coupled with some other reason, such as prejudice to the defendant." *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 789-91 (7th Cir. 2011). "Undue delay is most likely to result in undue prejudice when a combination of factors -- delay in proceedings without explanation, no change in facts since filing the original complaint, and new theories that require additional discovery -- occurred together." *McDaniel v. Loyola University Medical Center*, 317 F.R.D. 72, 77 (N.D. Ill. 2016) (quoting *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, F.R.D. 341, 347 (N.D. Ind. 2010)) (internal quotation marks omitted).

*Accretive Health*, 2018 U.S. Dist. LEXIS 160737, *25-26.

As in *Accretive Health*, "[t]he combination of factors is not present in this case." *Id*. In that connection, BPMS's claim that "the proposed TAC does not allege **any** new facts" (Opp. p. 8 (emphasis in original)) is factually incorrect. The additional facts that were recently learned by Plaintiff are highlighted in the proposed TAC, and were recently discovered through a document subpoena served on DLA Piper. (*See* TAC ¶¶42, 43 & 51.1.)

*Second*, BPMS's protests to the contrary, there was no prior failure to cure deficiencies by amendments previously allowed.

*Third*, the TAC is not brought in bad faith. There are new facts learned through document discovery set forth in the TAC (*see id*. ¶¶43 & 51.1), and Plaintiff seeks to add clarity to some positions that were not made sufficiently clear in the prior complaint, as made clear by this Court's March 25, 2020 Memorandum Opinion and Order [157]. Further, there is nothing inherently untoward in a plaintiff's amendment of a complaint to add additional facts and claims so as to conform to the law as articulated in a court's prior opinion on a motion to dismiss, and Plaintiff doing so in this case does not constitute bad faith.

*Finally*, BPMS would not be subject to undue prejudice through allowance of the TAC. *See Yata*, 2018 U.S. Dist. LEXIS 111726, *20-21. No depositions have yet been taken in this case,

9

and, as in *Accretive Health*, "it is not clear that allowing amendment will significantly expand the scope of discovery." 2018 U.S. Dist. LEXIS 160737,*27. Indeed, BPMS has not explained what additional discovery burdens it would face should leave to amend be granted, because there are none.

And as far as the defensive theories advanced by BPMS in opposition to Plaintiff's prior complaint, none of those defensive theories would be rendered moot by allowance of the amendment. Even upon filing the TAC, the jury will still determine the relevant facts, this Court will still determine the relevant law, and BPMS will still be allowed to assert the defensive theories that are raised to the prior complaint. Simply, BPMS would not be subject to any undue prejudice upon the filing of the TAC.

## **Conclusion**

As provided in Fed.R.Civ.P. 15(a)(2), leave to file an amended complaint should be "freely give[n] . . . when justice so requires." Here, (a) there has been no undue delay on the part of Plaintiff in seeking amendment of the Complaint; (b) there is no bad faith or dilatory motive on the part of Plaintiff; (c) there was no prior failure on the part of Plaintiff to cure deficiencies by amendments previously allowed; (d) there will not be any undue prejudice to the only objecting Defendant, BPMS, by allowance of the amendment; and (e) it would not be futile to allow the proposed amendment to the Complaint. *See Yata*, 2018 U.S. Dist. LEXIS 111726, *20-21. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Leave to File its Third Amended Complaint.

                                                        Respectfully submitted,

                                                        ARMSTRONG LAW FIRM, P.C.

DATED: August 12, 2020.        By    */s/ F. Dean Armstrong*
                                                        F. Dean Armstrong, Esq.
                                                      ARDC #6199894
                                                      23353 S. 88th Avenue
                                                      Frankfort, IL  60423
                                                      815/464-3243
                                                      Fax: 815/464-3449
                                                      armstronglaw@sbcglobal.net
                                                      **Attorneys for Plaintiff**
                                                      **D.A.N. Joint Venture III, L.P.**

## Certificate of Service

     The undersigned certifies that a true and correct copy of the foregoing pleading was emailed to all counsel listed on the attached Service List, and mailed to *Pro Se* Defendants George Stray and Natel Matshulat, on August 12, 2020.

                                                        */s/ F. Dean Armstrong*
                                                          F. Dean Armstrong