UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D.A.N. JOINT VENTURE III, L.P., as Assignee of Bankruptcy Trustee Richard M. Fogel, the Chapter 7 Trustee for the Bankruptcy Estate of Debtor Nicholas S. Gouletas, <br><br> Plaintiff, <br><br> vs. <br><br> DOROTHEA TOURIS; STEVEN E. GOULETAS; NATEL MATSCHULAT; PAUL JONES; JAMES PAUL; STUART T. ADLER, Individually and as Trustee of the Stuart T. Adler Revocable Family Trust; GEORGE STRAY; GEORGE SPANOS; BEERMANN PRITIKIN MIRABELLI SWERDLOVE LLP; IRENE GOULETAS; DESIREE WITTE; VICTORIA M. GOULETAS; ROSALIE GOULETAS; LOUIS GOULETAS; MICHAEL GOULETAS; and BRITTANY GOULETAS, <br><br> Defendants. | Case No. 1:18-cv-349 <br> Judge Robert M. Dow, Jr. |

**PLAINTIFF'S AND MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION FOR LEAVE TO JOIN AS A CO-PLAINTIFF REAL PARTY IN INTEREST D.A.N. JOINT VENTURE III, L.P., AS ASSIGNEE OF <u>JUDGMENT CREDITOR 800 SOUTH WELLS COMMERCIAL, LLC</u>**

Plaintiff D.A.N. Joint Venture III, L.P. ("DJV"), as Assignee of Bankruptcy Trustee Richard M. Fogel, and Movant D.A.N. Joint Venture III, L.P., as Assignee of Judgment Creditor 800 South Wells Commercial, LLC ("800 SWC"), hereby seek leave of Court to file the attached proposed Third Amended Complaint ("PTAC"), and to join as a Co-Plaintiff real party in interest

D.A.N. Joint Venture III, L.P., as Assignee of Judgment Creditor 800 South Wells Commercial, LLC.

## Preliminary Statement

Plaintiff and Movant realize that, in a diversity case such as this, it is not this Court's function to make Illinois state law, but to interpret and apply existing Illinois state law. While additional discovery from and after the date of the Second Amended Complaint [120, filed on April 17, 2019] shows that the claims against Defendant Beermann Pritikin Mirabelli Swerdlove LLP ("BPMS") did not arise out of its performance of "professional services", and at least one Court from another jurisdiction has acknowledged that the issue of whether a defendant engaged in "professional services" is "a question of fact for the judge or jury" (*see St. Paul Fire & Marine Ins. Co. v. Couch*, 1990 Tenn. App. LEXIS 597, *8, 1990 WL 120722 (Tenn. App. Aug. 22, 1990)), there are no Illinois state court cases on point upon which this Court could make an informed "Erie guess". *See Northrop Corp. v. Litronic Indus.*, 293 F.3d 1173, 1180 n. 1 (7th Cir. 1994) (Ripple, J., concurring) *citing to* Dolores K. Sloviter, *A Federal Judge Views Jurisdiction Through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1679 (1992) (employing the term "Erie guess").

Moreover, there is no known procedure available to this Court to certify any such question to the Illinois Supreme Court. *See* Illinois S. Ct. R. 20(a) (procedure for allowing certified questions to the Illinois Supreme Court from the United States Supreme Court and the Seventh Circuit Court of Appeals, but no mention of any such procedure available for an Illinois Federal District Court). Since it is not this Court's role to make new Illinois law, even though in the process it would clarify existing bad Illinois law, Plaintiff and Movant will not further burden the Court with that thorny issue. Accordingly, in their Amended Motion for Leave to File Third Amended

Complaint, Plaintiff and Movant will no longer seek to assert the issue that the unlawful and unprofessional conduct of BPMS as summarized in the PTAC (*see Coppock v. State Bar*, 749 P.2d 1317, 1320 & 1327-28 (Cal. 1988) (attorney's placement of judgment debtor's funds in attorney's trust account in an effort to shield those funds from execution efforts was both unlawful and constituted unprofessional conduct)) does not constitute the rendition of "professional services" within the purview of 735 ILCS 5/13-214.3(b).

> I. **DJV, As Bankruptcy-Trustee-Assignee, Cannot Assert Claims On Behalf Of The Creditor-Assignor Without Joining As A Co-Plaintiff DJV In Its Capacity As Assignee Of The Creditor**

The first issue which the Court directed the parties to address is "whether Plaintiff, who brought the complaint as an assignee of a Chapter 7 bankruptcy trustee, can also pursue claims as an assignee of a defrauded creditor?" (Order p. 1; *see, also, id*. pp. 4 & 7.) As noted by this Court at p. 10 of its Order:

> As of now, the answer is "no," because the creditor-assignee is not a party to the case, and Plaintiff's motion to amend does not seek leave to add the creditor-assignee as a plaintiff or provide any argument or authority for doing so.

Indeed, while not frequently addressed, case law acknowledges that a claim by a plaintiff-assignee of a cause of action is a claim asserted by the assignee standing in the shoes of the assignor, and is not a claim asserted by the assignee in its own right. *See Resurgence Properties v. W.E. O'Neil Constr. Co*., 1995 U.S. Dist. LEXIS 9468, *19-20 (N.D. Ill. July 10, 1995) (Pallmeyer, M.J.) (citing a "handful of cases" in discussing the question of whether "an assignee of the claim is the real party in interest even when the assignment is not made until after the initiation of litigation"). *See, also, Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co*., 2004 U.S. Dist. LEXIS 6583, *3-4, 2004 WL 830154 (S.D.N.Y. April 13, 2004) (discussing *Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857, 861-62 (2d Cir. 1995), and noting the

3

difference between a plaintiff suing in its own capacity for its own claims, and a plaintiff suing in a representative capacity based on an assignment of claims).

Accordingly, if a plaintiff as the assignee of the claims of one assignor wants to assert an additional claim as assignee of another claim by a different assignor, the complaint must be amended to assert the second and separate group of claims as the assignee of the second, and different, assignor. And in doing so,

> [a]lthough Rule 17(a) does not explicitly address the issue of the timeliness of an assignment, courts in construing the rule have held that even when the claim is not assigned until after the action has been instituted the assignee is the real party in interest and can maintain the action.

*Campus Sweater & Sportswear Co. v. M.B. Kahn Constr. Co.*, 515 F.Supp. 64, 84 (D. S.C. 1979) (collecting and discussing cases). *See, also, Health Cost Controls of Ill., Inc. v. Washington*, 1997 U.S. Dist. LEXIS 11762, *9, 1997 WL 461077 (N.D. Ill. 1997) (noting that although the plaintiff assignee produced an assignment a year and a half after the suit was commenced, the assignment was produced before the trial began, and thus the assignment giving the plaintiff collection rights after commencement of the suit, but before trial, conferred standing upon the plaintiff to bring the suit); *Resurgent Properties*, 1995 U.S. Dist. LEXIS 9468, *19-20 (noting that "[i]n a handful of cases, courts have taken up the question of whether an assignee of a claim is the real party in interest even when the assignment is not made until after the initiation of litigation").

**II. Plaintiff's And Movant's Rule 17(a)(3) Motion To Join Real Party In Interest D.A.N. Joint Venture III, L.P., As Assignee Of <u>Judgment Creditor 800 SWC, Should Be Granted</u>**

Plaintiff and Movant hereby move, pursuant to Rule 17(a)(3), Fed. R. Civ. P., for leave of Court to add as a Co-Plaintiff DJV, as Assignee of the claims of judgment creditor 800 SWC.

Rule 17(a)(3) provides that:

4

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

As noted by this Court:

> Rule 17(a)(3) . . . bars courts from "dismiss[ing] an action for failure to prosecute in the name of the real party in interest" until the real party in interest has been given a reasonable time to ratify, join, or be substituted into the action.

(Order p. 7.)

The purpose of Rule 17(a)(3) is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17(a) advisory committee's note to 1966 amendment, *quoted in Burns v. FDIC*, 2018 U.S. Dist. LEXIS 25238, *11, 2018 WL 905505 (N.D. Ill. Feb. 15, 2018). Further, "there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 226 (2d Cir. 2018), *quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). In addition, "[e]nsuring that an otherwise proper suit is not dismissed for want of a proper party when that party is ready and willing to join the fray is the very purpose of Rule 17(a)(3)." *Klein*, 906 F.3d 2015 at 226.

Since this Court has ruled that a bankruptcy trustee cannot assert a claim for conspiracy to engage in fraudulent transfers or aiding and abetting fraudulent transfers [157 p. 17], here, Bankruptcy Trustee Fogel could not assign those conspiracy and aiding and abetting causes of action to DJV as was alleged in the Second Amended Complaint. The real party in interest, however, who can assert those claims, is DJV, as Assignee of Judgment Creditor 800 SWC.

5

Here, BPMS recently objected to "Plaintiff as assignee of 800 SWC" asserting those conspiracy and aiding and abetting claims because those claims "are Improperly Brought on Behalf of Non-Plaintiff, 800 SWC". (D.N. 173 p. 7, referencing D.N. 162 p. 6.) *See Bettisworth v. BNSF Ry. Co.*, 2019 U.S. Dist. LEXIS 67027, *4, 2019 WL 1755434 (Dist. Neb. April 19, 2019) (noting that a defendant's motion for summary judgment on standing can constitute an objection that the plaintiff is not the real party in interest). And as previously noted, although Rule 17(a)(3) does not explicitly address the issue of the timeliness of an assignment, numerous Courts in construing the Rule have held that even when the claim is not assigned until after the action has been instituted, the assignee is the real party in interest, and can maintain the action. *See Campus Sweater*, 515 F.Supp. at 84; *Health Cost Controls*, 1997 U.S. Dist. at *9; *Resurgence Properties*, 1995 U.S. Dist. LEXIS 9468 at *19-20.

Accordingly, pursuant to Rule 17(a)(3), Plaintiff DJV, as Assignee of the Bankruptcy Trustee, and Movant DJV, as Assignee of Judgment Creditor 800 SWC, the real party in interest, hereby seek leave of Court to join, as Co-Plaintiff, DJV, as Assignee of 800 SWC, which hereby seeks to ratify, join, and be substituted into this action.

### III. Plaintiff's Amended Motion For Leave To File Amended Complaint Should Be Granted

#### (a) Legal Standards

The legal standards for the granting of a motion for leave to amend complaint were thoroughly set forth by this Court at pp. 5-6 of its February 3, 2021 Order. [185] Further, Rule 15(a)(2)

> allows a party to amend its complaint with the district court's leave "when justice so requires." Fed.R.Civ.P. 15(a)(2). [A District] Court may deny leave to file an amended complaint in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

6

> allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny a motion to amend is purely within the discretion of the district court. *J.D. Marshall Int'l Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991).

*Yata v. BDJ Trucking Co.*, 2018 U.S. Dist. LEXIS 111726, *20, 2018 WL 3303290 (N.D. Ill. July 15, 2018). In terms of the potential for denial of amendment based on a claim of futility, this Court has explained that

> [w]here, as here, summary judgment has not been decided, "futility is measured by the capacity of the amendment to survive a motion to dismiss" -- not its ability to survive summary judgment. *Duthie v. Metria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008). In a typical case, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the [party] has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

*United States ex rel. Graziosi v. Accretive Health, Inc.*, 2018 U.S. Dist. LEXIS 160737, *15-16, 2018 WL 4503366 (N.D. Ill. Sept. 20, 2018).

    **(b)**     <u>**Argument**</u>

Here, (a) there has been no undue delay on the part of Plaintiff in seeking amendment to the Complaint; (b) there is no bad faith or dilatory motive on the part of Plaintiff; (c) there is no prior failure on the part of Plaintiff to cure deficiencies by amendments previously allowed; (d) there will not be any undue prejudice to the Defendants by allowance of the amendment; and (e) it would not be futile to allow the proposed amendment to the Complaint. *See Yata*, 2018 U.S. Dist. LEXIS 111726, *20-21, *citing Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Accordingly, Plaintiff and Movant respectfully requests that the Court allow the filing of Plaintiffs' Third Amended Complaint.

      **(i)**       **It Would Not Be Futile To Allow Plaintiff To File The PTAC**

In the PTAC, Plaintiff seeks leave to amend its Complaint to (a) add additional facts as to the wrongful conduct of BPMS which facts were learned by Plaintiff after the filing of the Second Amended Complaint through recent supplemental document productions from two third parties and from BPMS, as well as the recent deposition of Howard Teplinsky, Esq. ("Teplinsky"), the former partner at BPMS who was the architect of the fraudulent transfer schemes set forth in the PTAC; (b) clarify that BPMS acted in the capacity as a "transferee" under the Illinois Uniform Fraudulent Transfer Act when it directed the deposit of Judgment Debtor Gouletas's funds into its trust account; (c) delete the claims against a settling Defendant, Warady & Davis; (d) assert claims on behalf of real party in interest 800 SWC for conspiracy to commit fraud and aiding and abetting fraud; and (e) assert fraudulent transfer claims on behalf of DJV, as Assignee of 800 SWC, which is the real party in interest if the Bankruptcy Trustee did not have the capacity to assign those claims to Plaintiff DJV, as Assignee of the Bankruptcy Trustee.

      **(A)**       **The PTAC Seeks To Clarify That BPMS Acted In The Capacity As A "Transferee" Under The Illinois Uniform Fraudulent Transfer Act When It Directed The Deposit Of Judgment Debtor Gouletas's Funds Into Its Trust Account**

In the PTAC, Plaintiff seeks to clarify that BPMS acted in the capacity as a "transferee" under the Illinois Uniform Fraudulent Transfer Act when it directed the deposit of Judgment Debtor Gouletas's funds into its trust account. While it is correct that the Court in its March 25, 2020 Memorandum Opinion and Order [157] ruled that Plaintiff, as the assignee of the bankruptcy trustee, could not pursue conspiracy and aiding and abetting secondary liability fraudulent transfer claims against BPMS because any such theory of joint and several liability would run contrary to the "disgorgement" model which governs fraudulent transfer claims asserted by a bankruptcy

8

trustee (*id*. p. 17), the Court did not purport to limit Plaintiff's ability to pursue an Illinois fraudulent transfer claim against BPMS as a "transferee" of the funds it actually received. And here, in the PTAC, Plaintiff seeks to clarify the amount BPMS actually received as a transferee. *See id*. ¶¶111(i) & (g).

Further, as shown by the additional facts set forth in the PTAC, BPMS did not act as a good faith "intermediary" or "mere conduit" when it took and received over $2,000,000 in profits from Gouletas's sale of the Parking Lot. (*See* PTAC ¶¶42, 51-3, 58(b) & (c), 66(d) & 70; Pxs 21, 22, 24, 87 & 348.) Moreover, case law from the Seventh Circuit fully supports Plaintiff's position.

In *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988), the defendant Bank, which had loaned $655,000 to debtor Michael Ryan, received a $200,000 check from Ryan's company, debtor Bonded Financial, with the notation to deposit the check into Ryan's account at the Bank. Shortly thereafter, Ryan instructed the Bank to withdraw the $200,000 from Ryan's account, and apply those funds toward Ryan's loan at the Bank. Upon the subsequent bankruptcy filings by Ryan and Bonded Financial, the bankruptcy trustee brought a fraudulent transfer suit against Ryan, Bonded Financial and the Bank under 11 U.S.C. §550(a).

The issue before the Seventh Circuit in *Bonded Financial* was whether the Bank was liable as a "transferee" within the meaning of §550(a) for the $200,000 payment by Ryan toward the reduction of his $655,000 loan. Because there was "[n]othing in the record [to] suggest[] that the Bank knew of Bonded's financial peril or Ryan's plan", the Bank "took for value and without knowledge of the voidability of the initial transaction", and, therefore, the Bank, as a subsequent transferee, was not liable for the fraudulent conveyance because of the good faith provision in 11 U.S.C. §550(b)(1). 838 F.2d at 898.

9

In connection with its ruling exculpating the Bank from liability, the Seventh Circuit in *Bonded Financial* noted:

> As the Bank saw things on [the date the funds were transferred toward payment of Ryan's loan], it was getting Ryan's money. It would be at risk if Ryan were defrauding his other creditors or preferring the Bank, but the Bank would perceive no reason to investigate Bonded or sequester the money for the benefit of Bonded's creditors.

838 F.2d at 894. The Seventh Circuit further noted, however, that "subsequent transferees who lack 'good faith' must stand and deliver" (*id.* at 896 n. 3), which is just what BPMS must do in this case.

Here, BPMS, through Teplinsky, knew of the citation liens which prohibited Gouletas from transferring any funds over which he exercised control and Teplinsky was the architect of the scheme to place Gouletas's funds into BPMS's trust account so as to shield those funds from the claims of Gouletas's judgment creditors. In terms of the Amended Motion for Leave before the Court, it would not be futile to allow Plaintiff to file the PTAC asserting a claim that BPMS is liable as a transferee (as compared to its capacity as a co-conspirator) for the full amount of Gouletas's funds that Teplinsky directed to be deposited into BPMS's trust account.

**B.   The Relevant Factors Which Might Warrant Denial Of Leave To Amend Are Not Present In This Case**

(i)   *First*, there has not been any undue delay in seeking amendment which has resulted in any undue prejudice to BPMS. As noted by this Court:

> "[D]elay in itself does not constitute a sufficient basis for a district court's equitable decision" to deny leave to amend a pleading. *King v. Kramer*, 763 F.3d 635, 644 (7th Cir. 2014). The delay "must be coupled with some other reason, such as prejudice to the defendant." *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 789-91 (7th Cir. 2011). "Undue delay is most likely to result in undue prejudice when a combination of factors -- delay in proceedings without

10

> explanation, no change in facts since filing the original complaint, and new theories that require additional discovery -- occurred together." *McDaniel v. Loyola University Medical Center*, 317 F.R.D. 72, 77 (N.D. Ill. 2016) (quoting *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, F.R.D. 341, 347 (N.D. Ind. 2010)) (internal quotation marks omitted).

*Accretive Health*, 2018 U.S. Dist. LEXIS 160737, *25-26. Here, as in *Accretive Health*, "[t]he combination of factors is not present in this case." *Id*.

Plaintiff's Second Amended Complaint was filed on April 17, 2019. [120] After that date, Plaintiff learned of additional facts pertaining to BPMS's wrongful conduct pursuant to supplemental document productions by third parties DLA Piper and Near North National Title, and by BPMS.

The supplemental document production was made by DLA Piper on February 13, 2020, which revealed, for the first time, Pxs 48 & 336. *See* PTAC ¶66.

Further, a supplemental document production was made by BPMS on February 15, 2021 which revealed, for the first time, additional wrongful conduct by Teplinksy, the partner at BPMS who was the architect of Gouletas's fraudulent transfer schemes. *See* Pxs 78, 79, 113, 114, 120, 121, 154, 157, 178, 187, 199, 202, 217, 238, 259, 302, 333, 334 & 339; PTAC ¶¶23, 24, 25, 26, 35, 36, 37 (second half), 38, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 52 (second half), 63, 64, 65, 66, 67, 68, 69 & 76. In addition, the deposition of Teplinsky was conducted on February 17, 2021, which revealed for the first time additional wrongful conduct by Teplinsky and BPMS. *See* PTAC ¶¶23-26.

Finally, on October 7, 2020 and February 26, 2021, supplemental document productions were made by the title company, Near North National Title, which revealed, for the first time, details about Teplinksy's scheme to evade the efforts by Attorney Alfred Murray, who was attempting to obtain a copy of the final closing statement for the sale of the Parking Lot so as to

secure for his clients any proceeds from the sale pursuant to the Charging Orders that were previously served upon Gouletas. *See* Pxs 75 & 348; PTAC ¶¶47-48.

(ii) *Second*, there is no prior failure to cure deficiencies by amendments previously allowed.

(iii) *Third*, the PTAC is not brought in bad faith. As discussed above, there are new facts learned through supplemental document productions and the recent deposition of Teplinsky which are set forth in detail in the PTAC. Further, Plaintiff seeks to add clarity to some positions that were not made sufficiently clear in the prior complaint. In addition, there is nothing inherently untoward in a plaintiff's amendment of a complaint to add additional facts and claims so as to conform to the law as articulated in a Court's prior opinion on a motion to dismiss, and Plaintiff doing so in this case does not constitute bad faith.

(iv) *Finally*, the Defendants would not be subject to undue prejudice through allowance of the PTAC. *See Yata*, 2018 U.S. Dist. LEXIS 111726, *20-21. Only two depositions have so far been taken in this case -- Defendant Jones on January 29, 2021 and Teplinsky on February 17, 2021, with no discovery cut-off date yet set. And, as in *Accretive Health*, "it is not clear that allowing amendment will significantly expand the scope of discovery." 2018 U.S. Dist. LEXIS 160737,*27. Indeed, the additional claims asserted in the PTAC are related to the prior claims in the Second Amended Complaint, and would not require any additional discovery. Accordingly, the allowance of the PTAC would not impose any undue prejudice upon the Defendants.

And as far as the defensive theories advanced by BPMS in opposition to Plaintiff's prior complaint, none of those defensive theories would be rendered moot by allowance of the amendment. Even upon filing the PTAC, the jury will still determine the relevant facts, this Court will still determine the relevant law, and BPMS will still be allowed to assert the defensive theories

that are raised to the prior complaint. Simply, neither BPMS, nor any of the other Defendants, would not be subject to any undue prejudice upon the filing of the PTAC.

## PRAYER

Based on the foregoing, Plaintiff DJV, as Assignee of the Bankruptcy Trustee, and Movant DJV, as Assignee of Judgment Creditor 800 SWC, respectfully request that the Court grant their Motion for Leave to File Third Amended Complaint, and grant their Motion for Leave to Join Real Party in Interest DJV, as Assignee of Judgment Creditor 800 SWC, as a Co-Plaintiff in this case.

Respectfully submitted,

ARMSTRONG LAW FIRM, P.C.

DATED: March 5, 2021.  By   *F. Dean Armstrong*
  F. Dean Armstrong, Esq.
ARDC #6199894
23353 S. 88th Avenue
Frankfort, IL  60423
815/464-3243
armstronglaw@sbcglobal.net
**Attorney for Plaintiff
D.A.N. Joint Venture III, L.P.,
as Assignee of Bankruptcy Trustee
Richard M. Fogel, and Attorney for
Movant D.A.N. Joint Venture III,
L.P., as Assignee of Judgment
Creditor 800 South Wells
Commercial, LLC**

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 5th day of March, 2021. Parties not part of the CM/ECF system were served via United States Mail.

   */s/F. Dean Armstrong*