## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| D.A.N. JOINT VENTURE III, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-0349 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DOROTHEA TOURIS, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff D.A.N. Joint Venture III, L.P.'s second motion for leave to file a third amended complaint [189]. Defendant law firm Beerman Pritikin Mirabelli Swerdlove LLP ("BPMS") opposes the motion [193]. For the reasons stated below, Plaintiff's motion [189] is granted. Plaintiff is given leave to file its proposed third amended complaint to the extent that the allegations in that complaint are consistent with this order, the Court's prior rulings, and the order also issued today granting Defendant Adler's motion for summary judgment [175]. The proposed third amended complaint should be filed no later than two weeks from today's date, and the parties should consider it the final amended complaint absent unforeseen and unforeseeable circumstances.

## I.      Background

D.A.N. Joint Venture III, L.P. ("DJV") is an Ohio limited partnership with its principal place of business in Ohio. [189-1 at ¶ 6.] DJV brings this action as the assignee of Chapter 7 Bankruptcy Trustee Richard M. Fogel, and the assignee of judgment creditor 800 South Wells Commercial, LLC ("800 SWC"). [*Id* at ¶ 3.] Defendant Beermann Pritikin Mirabelli Swerdlove LLP ("BPMS") is an Illinois limited liability partnership engaged in the practice of law in Chicago, Illinois. [*Id.* at ¶ 7.9.]

DJV alleges that Nicholas S. Gouletas ("Gouletas" or "Debtor") engaged in a series of complicated schemes to hide, transfer, and otherwise shield his assets from certain judgment creditors. [*Id.* at ¶ 1.] In particular, Plaintiff asserts that attorneys at BPMS, acting on behalf of Gouletas, transferred more than $2,250,000 in cash belonging to Gouletas, as well as his equity interest in a mixed-use high-rise commercial development in Chicago, to friends and relatives of Gouletas and a select group of preferred creditors in violation of state-court judgments against Gouletas prohibiting him from making such transfers. [*Id.*] Plaintiff brings state-law claims for (i) avoidance of fraudulent transfers pursuant to 740 ILCS 160/5(a)(1) (Counts 1 and 2); (ii) avoidance of fraudulent transfers pursuant to 730 ILCS 160/6(a) (Counts 3 and 4); (iii) civil conspiracy to commit fraud (Count 5); (iv) aiding and abetting fraud (Count 6); and (vi) reimbursement of funds owed to Gouletas prior to the time he filed for bankruptcy (Count 7).[1] Plaintiff asserts Counts 1, 4, 5, and 6 against BPMS.

DJV first initiated this action on January 17, 2018 [1]. Since then, Plaintiff has filed two other versions of the complaint [see 11, 120], and unsuccessfully moved the Court for leave to file a third amended complaint [see 169, 185]. This opinion assumes familiarity with the general background of this case based on the Court's many prior rulings and discusses only those facts relevant to the Court's assessment of Plaintiff's latest attempt to overcome the defects outlined by the Court in its order [185] denying Plaintiff's prior motion for leave to file a third amended complaint.

### A. Relevant Factual Background

Gouletas owned and controlled a group of companies generally referred to as "American Invsco" that were involved in condominium conversions and other real estate developments. [*Id.*

---

[1] The proposed third amended complaint [189-1] alleges multiple schemes to defraud creditors involving a variety of participants named as defendants.

2

at ¶ 8.]  Two companies within the American Invsco group are central to one alleged fraudulent scheme: Home By Invsco, Inc. ("HBI") and 800 South Wells Phase II, LLC ("800 SWP"). [*Id.*] Plaintiff asserts that both HBI and 800 SWP "were controlled, operated and conducted by Gouletas as his alter egos." [*Id.*].

Gouletas also managed a company called 800 South Wells Commercial, LLC ("800 SWC"), which owned certain commercial space in the River City Complex located at 800 South Wells Street in Chicago. [*Id.* at ¶ 11.].  As manager of 800 SWC, Gouletas hired one of his own companies, Invsco Management Company ("Invsco"), to manage the commercial space at River City Complex. [*Id.*]  800 SWC paid Invsco management fees through that arrangement. [*Id.*] Eventually, 800 SWC defaulted on a $5,000,000 loan obligation to DJV, and in November 2006, DJV took over as the manager of 800 SWC. [*Id.*]

### 1.    The HBI Parking Lot Mortgage

On December 5, 2006, DJV brought an action against Gouletas in the Circuit Court of Cook County, Illinois, alleging that Gouletas had breached his limited guarantee obligation on the $5,000,000 loan that 800 SWC owed to DJV. [*Id.* at ¶ 27.]  DJV later amended the complaint to add 800 SWC as a defendant. [*Id.*]  The case proceeded to trial on September 8, 2009.  On June 16, 2010, the court entered a final judgment in favor of DJV in the amount of $1,000,000 against Gouletas, and $11,550.040 against 800 SWC. [*Id.* at ¶ 28.]    According to the proposed Third Amended Complaint, after the trial took place in the guaranty action but before the court entered judgment, Gouletas used his business entities—800 SWP and HBI, in particular—to "shield" his personal equity from the potential judgment against him.

800 SWP owned a 1.77 acre, 126-space parking lot at 800 South Wells Street in Chicago, Illinois, next to the River City Complex. [*Id*. at ¶ 29.]  As of November 1, 2009, there was only

3

one mortgage against the parking lot, which was in favor of River City Investors, LLC in the original principal amount of $2,000,000. [*Id.* at ¶ 31.] The parking lot was worth far more than $2,000,000, however, so on November 1, 2009, Gouletas had another entity he controlled—HBI—place a false mortgage against the parking lot in the amount of $2,177,700 (the "HBI Second Mortgage"). [*Id.*] While Gouletas signed the HBI Second Mortgage on November 1, 2009, American Invsco's internal financial documents did not reflect any indebtedness supposedly owed by 800 SWP to HBI on the HBI Second Mortgage [*id.* at ¶ 32], and on June 29, 2010 Gouletas represented the same to the court in connection with the guaranty action [*id.* at ¶ 33].

800 SWP filed for bankruptcy in August 2013. [*Id.*at ¶ 35.] In late 2014, a third party bought the parking lot from 800 SWP for $7,750,000. [*Id.* at ¶ 36.] Of that amount, $5,711,000 was due to RCI for its mortgage, and after other expenses related to the sale, 800 SWP was left with $2,038,017 in proceeds from the sale. [*Id.* at ¶ 43.] The sale was completed on December 29, 2014. [*Id.*]

### 2. 800 SWC Judgment and Citations Against Gouletas

In March 2011, 800 SWC brought an action against Gouletas in the Circuit Court of Cook County, Illinois, on claims of self-dealing and breach of fiduciary duties owed to 800 SWC. [*Id.* at ¶ 12.]. The court entered a final judgment against Gouletas on January 23, 2014 in the amount of $11,550,040. [*Id.* at ¶ 16.]. Gouletas was unsuccessful in his attempt to set aside the judgment on appeal. [*Id.* at ¶ 17.]

On December 19, 2013, citations to discover assets were issued against Gouletas in connection with two lawsuits against him, as well as a charging order, which limited Gouletas's ability to receive cash distributions from his single-member limited liability company, 800 SWP. [*Id.* at ¶ 18.] Accordingly, as of late December 2013, Gouletas was prohibited from transferring

his assets by virtue of the citations issued against him. [*Id.*]  A third citation was issued against Gouletas in June 2014 after 800 SWC filed a citation to discover assets based on Gouletas's failure to pay the 800 SWC Judgment. [*Id.* at ¶ 19.]  Under that citation, Gouletas was instructed:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of * * * any property not exempt from execution * * * belonging to the judgment debtor [Gouletas] or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor * * *, until further order of Court or termination of the proceedings.

[*Id.* at ¶ 20.]  800 SWC filed a Motion for Contempt against Gouletas on April 24, 2015 "[b]ased on the numerous violations by Gouletas of the Citation Lien." [*Id.* at ¶ 95.]

### 3.    BPMS's Representation of Gouletas

Howard Teplinsky, a partner at BPMS, led Gouletas's legal representation through the citation proceedings. [*Id.* at ¶ 21.]  On March 23, 2014, Gouletas entered into an engagement agreement with BPMS which provided that BPMS would represent Gouletas and his company, Invsco Management Company, in connection with the 800 SWC lawsuit in exchange for an initial retainer of $10,000, with an additional $50,000 due to BPMS by June 1, 2014. [*Id.* at ¶ 22.]

According to the complaint, Gouletas paid the $10,000 retainer fee, but never paid the remaining $50,000 fee. [*Id.* at ¶ 23.]  Instead, Teplinsky and Gouletas negotiated a contingency fee arrangement whereby BPMS would receive an additional $30,000 payment if Teplinsky could successfully move the $2,038,017 that 800 SWP had earned from the sale of the parking lot to HBI. [*Id.*]  The complaint further alleges that Teplinsky and Gouletas arranged for Gouletas to pay Teplinsky an additional $25,000 if Teplinsky was successful "in getting the over $2,000,000 in sale proceeds out of HBI and into the hands of Gouletas's family, friends and his preferred creditors." [*Id.*]  Plaintiff asserts that while the contingency fee arrangement was centered around

the proceeds from sale of the parking lot (though the agreement was never put in writing [*id.* at ¶ 24]), "Teplinsky knew that the HBI Second Mortgage was a sham." [*Id.* at ¶ 34.]

### 4. Gouletas's Bankruptcy

On January 17, 2016, Gouletas filed for Chapter 7 bankruptcy. [*Id.* at ¶ 98.] At that time, any fraudulent transfer claims belonging to creditors of Gouletas became the exclusive property of the bankruptcy trustee. [*Id.*] As a creditor of Gouletas, 800 SWC filed a proof of claim in the bankruptcy proceedings seeking payment on its $11,550,040 judgment against Gouletas. [193-2.] On March 1, 2016, 800 SWC filed a complaint objecting to the dischargeability of the judgment by arguing there (as Plaintiff does here) that Gouletas had made fraudulent transfers to friends and family. [193-3.]

On July 23, 2017, DJV purchased the bankruptcy's claims for $15,000. [189-1 at ¶ 99.] The bankruptcy court authorized the sale to DJV on August 18, 2017, and shortly thereafter the bankruptcy trustee executed an assignment of claims and causes of action to DJV. [*Id.* at ¶ 100.]

Two years later, on March 28, 2019, the bankruptcy court ordered 800 SWC's judgment non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). On April 17, 2019, 800 SWC assigned its fraudulent transfer claims to DJV, "to the extent any such fraudulent transfer claims were not previously effectively assigned to DJV by the [Bankruptcy] Trustee." [*Id.* at ¶ 102.]

### B. Relevant Procedural Background

Two of the Court's prior orders in this case are especially relevant to the instant motion. On March 25, 2020, the Court granted in part and denied in part BPMS's motion to dismiss the four counts against it as alleged in Plaintiff's second amended complaint. [See 157.] In its order, the Court allowed Plaintiff to proceed against BPMS with its avoidance of fraudulent transfer claims, but dismissed Plaintiff's claims for civil conspiracy to commit fraud and aiding and

abetting fraud. [157 at 1.]  Specifically, the Court declined to dismiss the fraudulent transfer claims on statute of limitations grounds because although BPMS was correct that a two-year statute of limitations governs Plaintiff's claims against BPMS, the factual record was too undeveloped at that point to assess whether equitable tolling might apply to Plaintiff's claims. [*Id.* at 10–11.]

After conducting extensive analysis on the decisions of the bankruptcy judges in this district to determine the scope of Plaintiff's rights as assignee of the Chapter 7 bankruptcy trustee, the Court dismissed Plaintiff's claims for conspiracy to commit fraud and aiding and abetting fraud against BPMS. [*Id.* at 17.]  Through its analysis, the Court concluded that the maximum extent to which Plaintiff can seek to impose liability on BPMS for its fraudulent transfer claims *assigned by the bankruptcy trustee* is the amount it actually received.  Quoting *Baldi v. Lynch (In re McCook Metals)*, 319 B.R. 570 (Bankr. N.D. Ill. 2005), the Court explained that "'fraudulent transfer recovery is a form of disgorgement, so that no recovery can be had from parties who participated in a fraudulent transfer but did not benefit from it,'" and this disgorgement theory precluded Plaintiff from attempting to hold BPMS liable for over $2,000,000 in allegedly fraudulent transfers, when BPMS was the "direct transferee" of only $55,020. [157 at 17.]  Thus "Plaintiff's effort to tag BPMS with liability beyond the amount that it actually received by pursuing civil conspiracy and aiding-and-abetting theories runs contrary to the proper analysis * * * *for claims arising under the authority of bankruptcy trustees* to set aside fraudulent transfers" under Section 544 of the Bankruptcy Code, the IUFTA, and the decisions of the bankruptcy judges on which this Court relied. [*Id.* (emphasis added).]

Plaintiff moved for partial reconsideration [158], and later for leave to file a third amended complaint [169].  BPMS opposed both motions. [See 162, 173.]  The Court denied both motions in an order dated February 3, 2021 [185].  In denying the motion to reconsider, the Court

7

determined that Plaintiff had failed to identify any errors of law or fact or present any new evidence to warrant reconsideration. [185 at 7.] The Court also denied Plaintiff's motion for leave to file a third amended complaint. In seeking leave to amend, Plaintiff attempted to reinstate its conspiracy and aiding and abetting claims by asserting them in its capacity as assignee of 800 SWC, rather than as assignee of the Chapter 7 bankruptcy trustee. Without addressing the merits of Plaintiff's new tactic, the Court denied the motion based on the clear procedural flaw in the proposed amended complaint, which was that Plaintiff could not assert claims on behalf of a non-party—in this case, DJV as an assignee of 800 SWC. And so the Court granted Plaintiff another chance to file an amended complaint. Plaintiff was instructed that should it choose to revise its motion for leave to file a third amended complaint, the motion should address the creditor-assignee issue, as well as "at a minimum, the other obviously undeveloped issue in the existing briefing: the 'new' facts in the proposed third amended complaint." [*Id.* at 11.]

Now, for a second time, Plaintiff seeks leave to file a third amended complaint.

## II.     Legal Standard

A motion for leave to file an amended complaint should "freely" be granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F.Supp.2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). Leave to amend should be freely given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation,*

*Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC,* 721 F.3d 865, 869 (7th Cir. 2013). The party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994) (citation omitted). Ultimately, however, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

## III.   Analysis

Plaintiff's motion to amend states that its proposed amended complaint [189-1] intends to achieve four objectives: (1) provide "additional facts" to support its claims against BPMS "which facts were learned by Plaintiff after the filing of the Second Amended Complaint; (2) "clarify" that BPMS was a transferee under the IUFTA with respect to certain of Gouletas's funds; (3) "assert claims on behalf of real party in interest 800 SWC for conspiracy to commit fraud and aiding and abetting fraud"; and (4) "assert fraudulent transfer claims on behalf of DJV, as Assignee of 800 SWC, which is the real party in interest if the Bankruptcy Trustee did not have the capacity to assign those claims to Plaintiff DJV, as assignee of the Bankruptcy Trustee." [190 at 8.]

BPMS opposes the motion on futility grounds. It asserts as its primary argument that DJV, as assignee of 800 SWC, does not possess the rights to any new claims that it did not already possess as the assignee to the Chapter 7 bankruptcy trustee. If that is correct, BPMS contends, then there would be no grounds for adding DJV as assignee of 800 SWC as a real party in interest.

Because DJV as assignee of 800 SWC cannot assert fraudulent transfer claims, BPMS contends, it cannot resurrect Plaintiff's conspiracy to commit fraud and aiding and abetting claims, as those claims must be premised on the underlying unlawful transfer. BPMS further argues that the statute of limitations has run on the conspiracy and aiding and abetting claims.

As outlined above, the last time Plaintiff moved for leave to file an amended complaint, the Court denied the motion on several grounds with the foremost reason being Plaintiff's attempt to assert claims on behalf of a non-party. The Court explained:

> Both the proposed third amended complaint and Plaintiff's reliance on its attempted pleading in the alternative raise this question: may Plaintiff, currently an assignee of a Chapter 7 trustee, also pursue claims as an assignee of a defrauded creditor? As of now, the answer is 'no,' because the creditor-assignee is not a party to the case, and Plaintiff's motion to amend does not seek leave to add the creditor-assignee as a plaintiff or provide any argument or authority for doing so.

[185 at 10.]

In an attempt to answer that question, Plaintiff now seeks to join DJV, as assignee of judgment creditor 800 SWC, as a co-plaintiff pursuant to Federal Rule of Civil Procedure 17. Rule 17(a)(1) provides that every lawsuit must "be prosecuted in the name of the real party in interest." Rule 17 further provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The purpose of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17(a) adv. comm. notes (1966). "In determining the real party in interest, the key consideration is not 'who will ultimately benefit from the recovery,' but rather who, 'by the substantive law, possesses the right sought to be enforced.'" *Etransmedia Tech., Inc. v.*

*Allscripts Healthcare, LLC*, 448 F.Supp.3d 910, 913 (N.D. Ill. 2019) (quoting *Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 764 (7th Cir. 1986)).

As an initial matter, Plaintiff has advised the Court that it will no longer seek to assert that the BPMS's conduct does not constitute the rendition of "professional services" under 735 ILCS 5/13-214.3(b). The Court therefore can turn to the main event. Through several iterations of Plaintiff's complaint, the Court has addressed several novel questions relating to Plaintiff's attempts to state claims against BPMS for conspiracy to commit and for aiding and abetting fraudulent transfers. Before the Court today is a relatively narrow question: whether to grant Plaintiff's request for leave to amend its complaint to assert such claims *as assignee of a judgment creditor*, 800 SWC. To answer that question, the Court asks whether these proposed claims are foreclosed by (a) the bankruptcy court's assignment, (b) this Court's prior rulings, or (c) any other clear factual or legal deficiency. If not, given the permissive standard for amended pleadings under Rule 15, Plaintiff will be allowed to proceed on these claims.[2]

The Court's analysis begins with the terms of the assignment of claims to the Trustee, from whom Plaintiff acquired certain claims to pursue in this litigation. According to Plaintiff:

> Upon Gouletas's filing of bankruptcy on January 17, 2016, all fraudulent transfer claims that a creditor held related to Gouletas's fraudulent transfers became the exclusive property of the Bankruptcy Trustee for the two-year period following the bankruptcy filing, with the creditors divested of the ability to prosecute any such fraudulent transfer claims for the two-year period of exclusivity accorded to the Bankruptcy Trustee. Pursuant to 11 U.S.C. §546(a)(1)(A), when the two-year limitation on the Bankruptcy Trustee's fraudulent transfer claims expired on January 17, 2018, those state-law fraudulent transfer claims, *absent prior effective sale and assignment of those claims by the Bankruptcy Trustee*, automatically reverted back to the creditors which held the fraudulent transfer claims prior to Gouletas's bankruptcy filing.

---

[2] As the Court previously has indicated, although Plaintiff has previously been given multiple opportunities to amend its pleadings, this one additional attempt is justified given the complexity of the factual and legal issues present in this case. At the same time, the parties should now assume that this is the final version of the complaint absent some extraordinary event that could not have been known or anticipated at an earlier stage of the proceedings.

[189-1, ¶ 98.]  In addition, according to Plaintiff, "the referenced assignment expressly carves out from the Bankruptcy Trustee's assignment any 'non-assignable claims arising under a provision of the United States Bankruptcy Code.'" [194 at 5.]

To the extent that any claim for conspiracy to engage in a fraudulent transfer or aiding and abetting a fraudulent transfer was the exclusive property of the Bankruptcy Trustee for the two years of exclusivity, the Court has previously held that the Trustee lacked authority to assert—or, by extension, to transfer to Plaintiff—such claims. [See 157, at 17.]  Accordingly, there was no *effective* sale or assignment of those claims to Plaintiff, and the claims reverted to the original creditors, including 800 SWC, at the end of the two-year period.  [See 189-1, at ¶ 98.]  Once those claims were returned to 800 SWC, it did have the authority to assign them to Plaintiff, as Plaintiff contends happened in 2019.  See *Klingman v. Levinson*, 158 B.R. 108, 113 (N.D. Ill. 1993) ("the trustee's exclusive right to maintain a fraudulent conveyance action expires and creditors may step in (or resume) actions when the trustee no longer has a viable cause of action").  And Rule 17(a)(3) is a proper vehicle for Plaintiff to add as a Co-Plaintiff and real party in interest "D.A.N. Joint Venture III, L.P., as Assignee of Judgment Creditor 800 South Wells Commercial, LLC."

Significantly, Plaintiff has responded to BPMS's valid concern about allowing "two plaintiffs to recover on the same fraudulent transfer claims" [193, at 10] by "stipulat[ing] that there will be no such double recovery in this case" [194, at 6].  The Court notes that acknowledgment, which will bind Plaintiff going forward in the litigation.  See *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989).  And Plaintiff's allegations [see 189-1 at ¶¶ 112, 138] adequately claim that BPMS committed a tortious or unlawful overt act in support of a fraudulent transfer of funds on behalf of Gouletas.

12

The Court has considered BPMS's judicial estoppel argument [see 193, at 5, 9 n.7] but ultimately finds it unpersuasive. When the Court first considered the intricacies of the bankruptcy court's transfer order in 2019 [see 115, at 10], it took no position on the split of authority on the authority of a bankruptcy trustee—or anyone standing in the trustee's shoes as an assignee—to pursue the claims now at issue in the instant motion. Instead, as BPMS notes, the Court concluded that the weighing in on that issue would require it to collaterally attack the bankruptcy court's order. Subsequently, the Court undertook a fulsome analysis of the bankruptcy authorities [see 157, at 11-17] and now concludes that its analysis then, again last year [see 185], and now today all constitute appropriate interpretations of the bankruptcy court's orders, not collateral attacks on them.

The Court is cognizant that all of its prior rulings on Plaintiff's purported claims for conspiracy to commit and aiding and abetting fraudulent transfers took place in the narrower context of claims arising under the authority of a bankruptcy trustee under bankruptcy court decisions construing the Bankruptcy Code. Those claims are dead and gone; the current iteration of Plaintiff's claim seeks to advance a state law claim as the assignee of a defrauded creditor itself. The Court's decision today does no more than allow Plaintiff to file its complaint adding that claim. To underscore the point, the Court sets out below issues that it has NOT decided, and stresses that these issues remain open to be challenged under Rule 12, explored in further discovery, litigated under Rule 56, and/or decided at trial.

First, the Court expresses no opinion at this time as to whether the combination of (1) Plaintiff's additional factual allegations about BPMS's involvement in the receipt and later transfer of funds from the debtor (Gouletas) and (2) Plaintiff's legal claim against BPMS as a "transferee" of those funds will lead the Court to revisit its prior conclusion that, at least under the bankruptcy

13

case law, BPMS's exposure is limited to disgorgement of approximately $55,000. Again, the Court's prior opinions do not explore the applicability of this principle outside the bankruptcy context.

Second, the Court expresses no opinion on BPMS's statute of limitations defense or the possibility that equitable tolling may apply.

Third, the Court expresses no opinion on the ultimate legal viability of claims for conspiracy to commit or aiding and abetting a fraudulent transfer under state law when asserted by a judgment creditor or its assignee. While the Court concludes today that Plaintiff has a *plausible* claim to that relief, nothing in this ruling or any prior ruling in this case forecloses BPMS from arguing that "there is no such thing as a claim for aiding and abetting a fraudulent transfer" (*Audette v. Kasemir (In re Concepts America, Inc.*, 2018 WL 1174900, at *12 (Bankr. N.D. Ill. Mar. 1, 2018) for anyone, not just a bankruptcy trustee, if BPMS has legal support for that proposition.

In short, all of these questions remain on the table for resolution at any stage of the case where they can be raised consistent with the Federal Rules of Civil Procedure.

## IV. Conclusion

For the reasons explained above, Plaintiff motion for leave to file a third amended complaint [189] is granted. Plaintiff is given leave to file its proposed third amended complaint to the extent that the allegations in that complaint are consistent with this order, the Court's prior rulings, and the order also issued today granting Defendant Adler's motion for summary judgment [175]. The proposed third amended complaint should be filed no later than two weeks from today's date, and the parties should consider it the final amended complaint absent unforeseen and unforeseeable circumstances.

Dated:  February 17, 2022

Robert M. Dow, Jr.
United States District Judge