IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D.A.N. JOINT VENTURE III, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-0349 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DOROTHEA TOURIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff D.A.N. Joint Venture ("DJV" or "Plaintiff"), as assignee of the Chapter 7 trustee of the estate of Nicholas Gouletas ("Gouletas" or "Debtor"), has alleged multiple schemes to defraud creditors involving a variety of participants. Before the Court now is Defendant Stuart T. Adler's motion for summary judgment [175]. For the reasons stated below, Defendant's motion [175] is granted.

**I.      Background**

DJV is an Ohio limited partnership with its principal place of business in Newton Falls, Ohio. [178 at ¶ 1.] DJV brings claims as the assignee of Bankruptcy Trustee Richard M. Fogel, who is the Bankruptcy Trustee for the Chapter 7 Bankruptcy Estate of Nicholas S. Gouletas. [178 at ¶1; 120 at ¶ 5.2.] Defendant Stuart T. Adler is a trustee to the Stuart T. Adler Revocable Family Trust dated January 31, 1992, which is an Illinois trust. [178 at ¶ 2.]

Plaintiff alleges that Gouletas engaged in a complicated scheme to hide, transfer, and otherwise shield his assets from the claims of certain of his judgment creditors by transferring more than $2,000,000 in cash and other assets to his friends, relatives, and a favored group of creditors. [120 at ¶ 1.] The complaint lists eight counts against a total of seventeen defendants [see

generally 120]. Plaintiff asserts only one of those claims against Adler: Count I – Avoidance of Fraudulent Transfers pursuant to 740 ILCS 160/5(a)(1).

### A. Plaintiff's Claim Against Adler

The Court has issued several opinions throughout this case in which it has detailed the facts leading up to this litigation [see 115, 116, 157, 185], and the Court assumes familiarity with those facts. However, none of those orders deals specifically with Plaintiff's claim against Adler. Thus, the Court thus briefly summarizes Plaintiff's theory of its case against Adler.

According to the complaint, Gouletas managed a company called 800 South Wells Commercial, LLC ("800 SWC"), which owned certain commercial space at the River City Complex located at 800 South Wells Street in Chicago. [120 at ¶ 10.] A 1.77 acre, 126-space parking lot occupied the land next to the River City Complex and was owned by a company called 800 South Wells Phase II, LLC ("800 SWP"). [*Id.* at ¶ 37.] Gouletas was the manager, sole member, and control person of 800 SWP. [*Id.*] As of November 1, 2009, there was only one mortgage against the parking lot, which was in favor of River City Investors, LLC ("RCI") in the original principal amount of $2,000,000. [*Id.* at ¶ 38.] Later that month, however, Gouletas arranged for another entity he controlled—Home By Invsco, Inc. ("HBI")—to place a "bogus mortgage" against the parking lot in the amount of $2,177,700 "to protect the equity in the Parking Lot from the claims of Gouletas's creditors." [*Id.*] By March 2011, Gouletas's relationship with 800 SWC had soured, and the company brought an action against him in state court for self-dealing and breaching fiduciary duties owed to 800 SWC. [*Id.* at ¶ 11.] The court ultimately entered a final judgment against Gouletas for $11,550,040. [*Id.* at ¶ 14.]

In late 2014, a third party purchased the parking lot for $7,750,000. [*Id.* at ¶ 41.] According to Plaintiff, after paying off the RCI Mortgage and other expenses from the sale totaling

approximately $5,711,000, Gouletas "came up with a plan to shield the approximately $2,038,000 in profits from Gouletas's unfavored judgment creditors." [*Id.* ¶ 41.] The alleged scheme involved Gouletas, through HBI, asserting as legitimate HBI's mortgage on the parking lot, thus entitling HBI to the $2,038,000 balance remaining from the sale. [*Id.* at 13.] Drawing from the net proceeds of the 800 SWP sale, as the Court discusses in more detail below, Gouletas and HBI then transferred $850,000 to Adler to repay an outstanding debt. On January 17, 2016, Gouletas filed for Chapter 7 bankruptcy. [*Id.* at ¶ 54.]. Gouletas had not paid any portion of the judgment against him that resulted from 800 SWC's action for breach of fiduciary duty, the rights to which Plaintiff DJV possessed. See *In re Gouletas*, 590 B.R. 494, 500 (Bankr. N.D. Ill. 2018).[1]

### B. Local Rule 56.1

The Court addresses first the parties' proffered "undisputed" facts. Local Rule 56.1(a)(2) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue," *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009), which must include "concise numbered paragraphs" with "specific references" to supporting material. N.D. Ill. L.R. 56.1(a), (d). The nonmoving party must then submit a response to each of the movant's statements of fact. N.D. Ill. L.R. 56.1(b)(2). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact," in which case the response "must specify which part of the asserted fact is admitted and which part is disputed." N.D. Ill. L.R. 56.1(e)(2). In addition, a response "may not set forth any new facts," nor "assert legal arguments except to make an objection." *Id.* Furthermore, if the nonmovant wants to assert facts not set forth in the movant's statement of facts,

---

[1] "[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996).

it may submit a statement of additional material facts, N.D. Ill. L.R. 56.1(b)(3), to which the movant may respond in conjunction with its reply, N.D. Ill. L.R. 56.1(c)(2).

Plaintiff responds to most of Adler's Rule 56.1 statement [178] by stating: "Not disputed." [See generally 182.] In two instances, however, Plaintiff does not so respond, and appears to dispute the statements because the record citations accompanying each statement "do not *** support Adler's representation." [182 at ¶¶ 20–21.] These responses do not comply with Local Rule 56.1 and do not constitute fact disputes for the purpose of summary judgment. The Court is unpersuaded by Plaintiff's contention that the citations Adler provides fail to support the asserted fact statements. Plaintiff's only dispute with these paragraphs is that Adler neglected to include Plaintiff's legal conclusions that, if true, strengthen its claim against Adler.[2] Although the local rules permit legal arguments in a response "to make an objection *** based on materiality, or absence of evidentiary support," other forms of legal argument are not allowed. N.D. Ill. L.R. 56.1(e)(2). What Plaintiff tries to cloak as an argument asserting an absence of evidentiary support is merely an assertion relating to the legal merits of its claim. The Court thus disregards Plaintiff's ineffective attempts to dispute those facts and takes them as admissions. See *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.").

The Court also disregards significant portions of Plaintiff's statement of additional facts [181]. While the local rules permit a responding party to submit a statement of additional material

---

[2] Plaintiff's response to paragraph 20 makes especially clear that Plaintiff "disputes" the statements' absence of argumentative language favoring Plaintiff. According to Plaintiff, that "HBI received the 800 SWP Net Sale Proceeds" is inaccurate, because in fact, "Nicholas S. Gouletas, as part of a scheme to defraud his judgment creditors, directed that his alter-ego, HBI, should receive the 800 SWP Net Sale Proceeds." [182 at ¶ 20.]

4

facts, that statement, like the movant's, must consist of "concise numbered paragraphs" supported by evidence which do "not contain legal argument." N.D. Ill. L.R. 56.1(d). Here, several paragraphs in Plaintiff's statement consist of irrelevant fact assertions and elaborate multi-sentence assertions, many of which are unsupported or improperly supported, and therefore do not comply with Rule 56.1.[3] See *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (Defendant's statement of material facts "did not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture").

The Court thus deems admitted Adler's statement of material facts in entirety [178] and considers from Plaintiff's statement of additional facts [181] only those relevant for resolving *this* motion. See *Igasaki v. Ill. Dept. of Fin. and Prof. Reg.*, 988 F.3d 948, 957–58 (7th Cir. 2021) ("[A] district court may strictly, but reasonably, enforce local rules."). "The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment" and "[i]t is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). The Court is in no way obligated to "scour the record looking for factual disputes." *Waldridge v. Am. Hoechst Corp.*, 25 F.3d 918, 922 (7th Cir. 1994).

### C. Relevant Undisputed Facts

Between 2003 and 2004, Adler, HBI, and Gouletas executed two promissory notes in favor of Adler in the total amount of $1,300,000. [178 at ¶ 6; 178-4 at 9, 12.] HBI and Gouletas breached

---

[3] The Court declines to declare line-by-line which facts it admits and which it excludes. The Court has discretion to strike certain improperly asserted facts and consider others, see *Igasaki*, 988 F.3d at 957–58, and nothing in this Circuit's law requires that the Court "delineate[ ] a ruling on each material fact indicating each as undisputed or disputed in is order on the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015).

their obligations to Adler, [see 178 at ¶ 6], and in 2011, Adler filed suit against HBI and Gouletas in the Circuit Court of Cook County to enforce the 2003 and 2004 promissory notes. [*Id.* at ¶ 7.] On April 2, 2012, to settle the 2011 lawsuit, Adler, HBI, and Gouletas executed a new promissory note in favor of Adler in the amount of $1,020,000. [*Id.* at ¶ 8.] HBI and Gouletas breached their obligations to Adler again [*id.* at ¶ 9], and Adler filed a new suit in the Circuit Court of Cook County to enforce the 2012 promissory note. [*Id.* at ¶ 10.]

On September 17, 2013, the court issued a judgment in favor of Adler and against HBI and Gouletas in the amount of $900,500, plus post-judgment interest, costs and fees. [*Id.* at ¶¶ 5, 10.] To enforce the judgment, Adler served citations to discover assets on both HBI and Gouletas. [*Id.* at ¶ 11.] On December 30, 2014, Adler, Gouletas, and HBI entered into a release and settlement agreement in which HBI agreed to pay Adler $850,000 to resolve the court's judgment. [*Id.* at ¶¶ 12–14.] On January 8, 2015, Adler received the full $850,000 settlement payment by wire transfer. [*Id*. at ¶ 15.] The $850,000 settlement payment is the transfer Plaintiff seeks to avoid and recover from Adler in Count I of its complaint. [See *id.* at ¶ 16; see also 120 at ¶¶ 61–67.]

A brief summary of the source of the funds with which Adler was paid is necessary to place the instant motion in context. 800 SWP owned a parking lot at 800 South Wells Street in Chicago. [See 178 at ¶ 17; see also 120 at ¶ 37.] Gouletas was the manager, sole member, and control person of 800 SWP. [181 at ¶ 5.] On December 29, 2014, the bankruptcy estate of 800 SWP sold the parking lot to a third-party buyer. [178 at ¶ 18.] After the sale, the bankruptcy estate paid the first mortgage on the property, which left remaining in proceeds from the sale of $2,038,703.84 [*id.* at ¶ 19; 178-6 at 4–5], which were paid to HBI, which also had a mortgage on the parking lot. [178 at ¶ 20.] The $850,000 settlement payment to Adler was paid out of funds generated from the 800 SWP net sale proceeds. [*Id.* at ¶ 21.]

6

Adler was one of four judgment creditors of Gouletas. [*Id.* at ¶ 22.] Gouletas's other judgment creditors—Karl Muth, 800 SWC, and Humberto Alfonso [*id.*; see also 120 at ¶¶ 11–13]—also attempted to collect their judgments against Gouletas through post-judgment proceedings in the Circuit Court of Cook County. [178 at ¶ 24.] Adler was the only of these creditors whose judgment applied to both Gouletas and HBI. [*Id.* at ¶ 25.]

## II.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law." *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 (7th Cir. 1994). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

## III.   Analysis

Adler asserts two grounds for summary judgment. First, he argues that DAN has not produced any evidence to support a claim for fraudulent transfer and that the facts instead prove

that the settlement payment to Adler was a permissible preference. Second, he maintains that even if there was evidence to suggest that the settlement payment fell outside of the scope of a debtor's right to prefer certain creditors over others, DAN's claim fails nonetheless because HBI made the payment to Adler, not Gouletas.

Illinois law recognizes two different types of fraudulent conveyances: (1) fraudulent in law and (2) fraudulent in fact, see *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F.Supp.2d 1029, 1047 (N.D. Ill. 2003), "which are distinguished by 'whether the transfer was supported by consideration.'" *Northwestern Memorial Hosp. v. Sharif*, 22 N.E.3d 1217, 1223 (Ill. App. Ct. 2014) (quoting *Reagan v. Baird*, 487 N.E.2d 1028, 1034 (Ill. App. Ct. 1985). Plaintiff asserts that Gouletas's payment transfer to Adler was fraudulent in fact.

"'Fraud in fact' occurs when a debtor makes a transfer 'with the intent to hinder, delay, or defraud creditors.'" *In re Spatz*, 222 B.R. 157, 160 (N.D. Ill. 1998) (quoting 740 ILCS 160/5(a)(1)). To prove that a transfer was fraudulent in fact, "a creditor must show that the debtor entered into the transaction with a specific intent to defraud creditors." *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F.Supp.2d 1029, 1047 (N.D. Ill. 2003). "The intent to defraud 'will be found if the circumstances indicate that the main or only purpose of the transfer was to prevent a lawful creditor from collecting a debt.'" *Radio One, Inc. v. Direct Media Power, Inc.*, 2018 WL 4685470, at *6 (N.D. Ill. Sept. 28, 2018) (quoting *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1186 (7th Cir. 1987)).

The Court looks to the IUFTA's "badges of fraud" to determine whether Gouletas had the requisite intent. See *Firstar Bank, N.A.*, 294 F.Supp.2d at 1047; 740 ILCS 160/5(b). These factors include whether "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed

8

or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." 740 ILCS 160/5(b).

"The badges are not additive and do not have equal weight, nor is there a set number which must be present to demonstrate fraud." *In re Ruvalcaba*, 2018 WL 2317682, at *7 (Bankr. N.D. Ill. May 17, 2018) (citing *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 600 (7th Cir. 2005)). In addition, the IUFTA does not require to Court to consider all 11 factors. See *Northwestern Memorial Hosp. v. Sharif*, 22 N.E.3d at 1225. The Court's inquiry is whether "the factors of fraud are present in sufficient number *** to give rise to an inference or presumption of fraud." *Id.* (citations omitted).

As an initial matter, the Court clarifies the relevant components of fraudulent conveyance law in Illinois. Adler asserts that "even if there was direct and incontrovertible evidence that Gouletas paid the Adler Judgment with the express intent to hinder his other creditors, the payment is still not fraudulent as a matter of law." [177 at 5.] He further contends that "[w]hether Adler was aware of the other judgments (or even knew he was being preferred over other judgment creditors) is immaterial and cannot transform the Settlement Payment into fraudulent transfer." [*Id.* at 9.] The law in Illinois dictates otherwise.

9

It is true in Illinois that "the *mere* preference of one or more creditors over others does not constitute a fraudulent transfer." *Liquidation of MedCare HMO, Inc.*, 690 N.E.2d 374, 381 (Ill. App. 1997) (emphasis added). But a debtor's right to prefer one creditor over another is qualified by the condition that "such preference is made in good faith with the intent to pay or secure the payment of a judge indebtedness against him." *Id.* If a plaintiff can show that the creditor knew of other judgments against the debtor but accepted a transfer anyway, that fact might contribute to the collection of facts indicating sufficient badges of fraud to demonstrate the debtor's actual intent to fraud; or, more significantly, if the Plaintiff meets its burden of demonstrating actual intent, a creditor's knowledge of other judgments will certainly work against an attempt to show that he accepted the transfer in good faith. See, *e.g.*, *Kennedy v. Four Boys Labor Serv., Inc.*, 663 N.E.2d 1088, 1093 (Ill. App. Ct. 1996). As the Seventh Circuit more plainly stated: "[A] transferee who knows about a judgment against the transferor does not take the asset in good faith." *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717, 722 (7th Cir. 2009).

With that said, Plaintiff has failed nonetheless to meet its burden of showing that Gouletas made the settlement payment to Adler with actual intent to defraud. Even assuming—without deciding—that the settlement payment consisted of money that belonged to Gouletas (rather than HBI), the undisputed facts tell a clear story: Adler lent money to Gouletas and HBI, Gouletas and HBI defaulted on the loan, Adler obtained a judgment against Gouletas *and* HBI—and was the first of the four judgment creditors of Gouletas to do so—and that by the time Adler finally received payment, three other creditors had obtained judgments against Gouletas, though none had a judgment against HBI. Notably missing from the record are any facts to suggest that Adler was aware of the other judgments by the time the parties reached a settlement for the outstanding debt to Adler (other than Plaintiff's bald assertion that Adler was on inquiry notice of the judgments

10

because he was represented by counsel), that Adler was an insider with respect to Gouletas, that the timing of the payment with respect to Gouletas's insolvency was suspicious, or that traces of any other badges of fraud exist in this scenario. At most, the record shows that the post-judgment payment to Adler was a preference, but no reasonable jury could find a fraudulent transfer on the facts adduced at summary judgment.

## IV.     Conclusion

Defendant's motion for summary judgment [175] is therefore granted.

Dated: March 1, 2022

_____
Robert M. Dow, Jr.
United States District Judge