IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| D.A.N. JOINT VENTURE III, L.P., as Assignee of Bankruptcy Trustee Richard M. Fogel, the Chapter 7 Trustee for the Bankruptcy Estate of Debtor Nicholas S. Gouletas; and D.A.N. JOINT VENTURE III, L.P., as Assignee of Judgment Creditor 800 South Wells Commercial, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Dorothea Touris et al., <br><br> Defendants. | No. 18 CV 349 <br><br> Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Beerman Pritikin Mirabelli Swerdlove LLP's ("BPMS") motion to dismiss Plaintiffs D.A.N. Joint Venture as Assignee of the Bankruptcy Trustee ("DJV Trustee") and D.A.N. Joint Venture as Assignee of the Judgment Creditor 800 South Wells Commercial LLC's ("DJV Creditor") Third Amended Complaint ("the TAC"). (Dkt. 232.)[1] BPMS initially moved to dismiss only the claims alleged by DJV Creditor (Dkt. 232) but then joined a portion of another motion to dismiss filed by Defendant Paul Jones (Dkt. 230), who has since settled the claims against him and was dismissed. (Dkts. 239, 291.) Specifically, BPMS joined the portion of Jones's motion that argued for dismissal of DJV Trustee's claims. For the reasons stated in this order, BPMS's motion to dismiss is granted in part and denied in part. The Court dismisses DJV Creditor's claims without prejudice, finding that such claims were prematurely alleged because DJV Trustee exercised its exclusive jurisdiction to bring the

---

[1] Referenced page numbers are taken from the CM/ECF header.

1

fraudulent transfer claims alleged in this action. The Court denies BPMS's motion with respect to DJV Trustee's claims.

## Background

DJV Trustee filed this lawsuit on January 17, 2018, against BPMS and many other defendants who have since settled the claims against them. The Court granted DJV Trustee and DJV Creditor leave to file the TAC, which alleges that Nicholas S. Gouletas, a debtor, "engaged in a series of complicated schemes to hide and transfer and otherwise shield his assets from the claims of certain of his disfavored creditors." (Dkt. 204 ¶ 1.) Specifically, the TAC alleges that Attorney Howard Teplinsky, who was a partner at BPMS, a law firm, "transferred over $2,250,000 . . . to Gouletas's relatives, friends and a select group of preferred creditors, all in violation of state court citation liens which prohibited Gouletas from transferring his assets." (*Id*.) The TAC further alleges that Teplinsky was "the architect of the fraudulent transfer scheme" and "chief steward in the systematic shedding of assets out of Gouletas's name and out of the coffers of Gouletas's companies for the strategic planning leading up to Gouletas's eventual Chapter 7 bankruptcy filing." (*Id*. ¶ 2.) DJV Trustee and DJV Creditor both assert claims against BPMS for: two counts of Avoidance of Fraudulent Transfers pursuant to 740 ILCS 160/5(a)(1) of the Illinois Uniform Fraudulent Transfer Act ("IUFTA") (Counts I and II); and two counts of Avoidance of Fraudulent Transfers pursuant to 740 ILCS 160/6(a) of the IUFTA (Counts III and IV). For Counts I through IV, DJV Trustee and DJV Creditor state that both plaintiffs assert these fraudulent transfer claims, "[w]hile not seeking double recovery." (*Id*. ¶¶ 112, 121, 130, 138.) DJV Creditor also brings claims for civil conspiracy to commit fraud (Count V) and aiding and abetting fraud (Count VI).[2] BPMS

---

[2] The TAC also contains a claim against former Defendant Dorothea Touris for reimbursement of funds owed by Touris to Gouletas prior to Gouletas's bankruptcy filing (Count VII). (Dkt. 204 at 55.) Touris has since been dismissed from this lawsuit. (Dkts. 300, 301.)

2

filed the instant motion to dismiss all six claims alleged by both DJV Trustee and DJV Creditor against BPMS per Fed. R. Civ. P. 12(b)(6).

To support its claims, DJV Trustee and DJV Creditor allege the following facts which the Court accepts as true for the limited purpose of ruling on the pending motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Plaintiff DJV is an Ohio limited partnership that brings claims essentially in two capacities in this lawsuit. First, DJV Trustee proceeds as the assignee of the Bankruptcy Trustee Richard M. Fogel, who was the Chapter 7 Trustee for the bankruptcy estate of Gouletas, and who, with the authorization of the Bankruptcy Court, assigned his rights to bring claims for fraudulent transfer to DJV. (Dkt. 204 ¶¶ 6.1, 100.) Second, DJV brings claims as assignee of the creditor 800 SWC, which is an entity that obtained a judgment against Gouletas prior to his filing for bankruptcy. (*Id*. ¶ 6.2.) 800 SWC assigned its rights to pursue any claims of fraudulent transfer to DJV and thus, DJV asserts claims here based on this assignment. (*Id*. ¶ 102.)

The TAC alleges that Gouletas owned and controlled a group of companies referred to as "American Invsco," which were involved in condominium conversions and other real estate developments across the United States. (*Id.* ¶ 8.) As part of "American Invsco," Gouletas owned two additional entities called Home By Invsco, Inc. ("HBI") and 800 South Wells Phase II, LLC ("800 SWP"). (*Id*.) At all times relevant to this action, Gouletas was the president and sole shareholder of HBI and the sole member and manager of 800 SWP. (*Id*.) The TAC thus alleges that Gouletas controlled, operated, and conducted these entities as his alter egos. (*Id*.)

**A. The HBI Parking Lot Mortgage**

Despite the many judgments against Gouletas and the citations prohibiting him from transferring any of his assets or property, the TAC alleges that "Gouletas was scrambling to come

3

up with some way to shield the multi-million dollar equity that he had in a" parking lot owned by 800 SWP, of which he was the sole member and manager. (*Id.* ¶ 29.) By November 1, 2009, the parking lot owned by 800 SWP had one mortgage in favor of River City Investors, LLC, in the original principal amount of $2,000,000. (*Id.* ¶ 31.) Given that the parking lot was worth much more than the amount owed on the first mortgage, the TAC alleges that on November 1, 2009, "Gouletas had HBI place a bogus mortgage against the Parking Lot in the amount of $2,177,700 . . . to protect the equity in the Parking Lot from the claims of Gouletas's disfavored creditors." (*Id.*) Specifically, Gouletas arranged for 800 SWP to "execute a phony promissory note" in the amount of $2,177,700 to HBI, "which was supposedly secured by a second mortgage of the same date on the Parking Lot in favor of HBI." (*Id.* ¶ 30.) HBI, however, did not actually loan $2,177,700 to 800 SWP, but rather, there were over $1,338,000 in outstanding judgments against HBI at the time of this transaction. (*Id.*) Further, the internal financial documents of American Invsco (which included HBI and 800 SWP) "did not reflect any indebtedness supposedly owed to HBI" on the second mortgage for the parking lot. (*Id.* ¶ 32.) Gouletas also testified under oath in Illinois Circuit Court on June 29, 2010, that the parking lot had only one mortgage in the amount of $2,000,000, referring to the River City Investors mortgage. (*Id.* ¶ 33.)

The TAC further alleges that Gouletas's attorney at BPMS, Teplinksy, knew that this second mortgage was "a sham." (*Id.* ¶ 34.) In November 2014, prior to Gouletas's bankruptcy filing, 800 SWP sold the parking lot with a net profit of over $2,000,000. (*Id.* ¶ 37.) The TAC alleges that Teplinsky came up with a plan to transfer the over $2,000,000 in profits out of 800 SWP before Gouletas filed for bankruptcy, so that the future bankruptcy trustee could not claim these funds. (*Id.*) Teplinsky allegedly orchestrated a plan for the profits of the sale to go to HBI instead of Gouletas based on the second mortgage, despite knowing that the second mortgage was

4

a sham. (*Id.* ¶¶ 37–40.) Gouletas agreed to pay Teplinsky (and thus BPMS) $30,000 as a contingent fee arrangement "if Teplinsky was successful in getting the over $2,000,000 in profits out of 800 SWP and into HBI," and then a second $25,000 flat fee contingency "for getting all of the funds out of HBI to Gouletas's family, friends, and his preferred creditors before Gouletas filed for bankruptcy." (*Id.* ¶ 37–38.)

## Procedural Background

Before addressing the motion to dismiss, the Court summarizes the prior rulings in this matter that are relevant to the arguments currently before the Court.

### A. DJV Trustee's Standing to Bring Fraudulent Transfer Claims

On March 19, 2019, in ruling on prior motions to dismiss by several defendants (who have since been dismissed), the Court rejected the argument that DJV Trustee lacks standing to pursue its claims because the bankruptcy trustee lacked the authority to assign his rights and powers to avoid and recover alleged fraudulent transfers under Section 544(b)(1) of the U.S. Bankruptcy Code. (Dkt. 115 at 9–11.) The Court recognized that although the Seventh Circuit has not weighed in on this issue, there is a split among courts as to whether bankruptcy trustees can sell the right to bring a fraudulent transfer claim as part of the property of the estate or whether the Bankruptcy Code only confers the power to bring fraudulent transfer claims to the trustee specifically.[3] The Court took "no position on this split of authority" because the Bankruptcy Court here approved the sale by Fogel, the trustee of Gouletas's estate, of the right to bring the fraudulent transfer claims to DJV, and Defendants failed to demonstrate that the Court could review the Bankruptcy Court's order approving the assignment. (Dkt. 115 at 10.) The Court therefore rejected the argument that DJV Trustee lacked standing and stated that if "Defendants contend that the Court can reach the

---

[3] From the Court's research, the Seventh Circuit has yet to weigh in on this question and the parties' briefs do not direct the Court to any authority suggesting otherwise.

issue without collaterally reviewing the bankruptcy court sale order, they may again move for dismissal." (*Id*. at 11.)

**B. Statute of Limitations and DJV Trustee's Conspiracy and Aiding and Abetting Fraudulent Transfer Claims**

Next, on March 25, 2020, the Court granted in part and denied in part BPMS's motion to dismiss DJV Trustee's Second Amended Complaint. (Dkt. 157.) The Court ruled that DJV Trustee's claims against BPMS are subject to a two-year statute of limitations per ILCS 5/13-214.3(b), but declined to dismiss DJV Trustee's claims as untimely and stated that it would address this question if raised in the future with a more complete factual record. (*Id*. at 10–11.) In the Second Amended Complaint, DJV Trustee also asserted claims for conspiracy to commit and aiding and abetting fraudulent transfer, which BPMS moved to dismiss. The Court granted BPMS's motion to dismiss these claims because the recovery from a trustee's fraudulent transfer claim "is a form of disgorgement," meaning that the trustee "can only recover 'the property transferred or, if the court so orders, the value of the property.'" (*Id*. at 16) (quoting *In re Glick*, 568 B.R. 634, 676 (Bankr. N.D. Ill. 2017).) The Court held that DJV Trustee could not use conspiracy and aiding and abetting fraud claims in an "effort to tag BPMS with liability beyond the amount [BPMS] actually received" through its alleged participation in the scheme, which the Second Amended Complaint alleged was $55,020. (Dkt. 157 at 17.)

**C. DJV Creditor's Ability to Raise the Conspiracy and Aiding and Abetting Claims**

After the Court dismissed DJV Trustee's conspiracy and aiding and abetting fraud claims, DJV Trustee raised the question of whether a creditor could pursue those claims. The Court first passed on this question when ruling on DJV Trustee's motion for partial reconsideration of the Court's March 25, 2020, Order (Dkt. 157) and motion for leave to file a third amended complaint. (*See* Dkts. 158, 169, 185.) The Court denied DJV Trustee's motion for leave to file a third amended

6

complaint without prejudice because DJV Trustee had not drafted its proposed third amended complaint to add DJV Creditor as a plaintiff, which the operative TAC does. (Dkt. 185 at 10.) DJV Trustee's proposed third amended complaint, which the Court rejected, attempted to assert DJV Creditor's claims in the alternative, which the Court summarized in its ruling as follows:

> [I]f it is ever determined that the Bankruptcy Court's August 18, 2017 Order authorizing the Trustee's assignment of fraudulent transfer claims to Plaintiff is subject to collateral attack, and if the Chapter 7 Trustee "lacked authority to assign his state-law fraudulent transfer claims to Plaintiff, Plaintiff's claims herein are asserted in the alternative as the assignee of the fraudulent transfer claims held by judgment creditor 800 South Wells Commercial, LLC ("800 SWC").

(*Id.*) (quoting Dkt. 169-1 ¶ 5.3).) The Court then noted that "it is not clear . . . that a complaint may state *plaintiffs* in the alternative." (*Id.*)

DJV Trustee then moved for leave to file the present TAC, which the Court granted on February 17, 2022. (Dkt. 201.) In its ruling, the Court discussed whether a creditor of Gouletas could assign its rights to bring claims for fraudulent transfer, conspiracy, and aiding and abetting fraud, and started by quoting DJV Trustee's TAC, which is relevant to the instant motion to dismiss:

> Upon Gouletas's filing of bankruptcy on January 17, 2016, all fraudulent transfer claims that a creditor held related to Gouletas's fraudulent transfers became the exclusive property of the Bankruptcy Trustee for the two-year period following the bankruptcy filing, with the creditors divested of the ability to prosecute any such fraudulent transfer claims for the two-year period of exclusivity accorded to the Bankruptcy Trustee. Pursuant to 11 U.S.C. §546(a)(1)(A), when the two-year limitation on the Bankruptcy Trustee's fraudulent transfer claims expired on January 17, 2018, those state-law fraudulent transfer claims, *absent prior effective sale and assignment of those claims by the Bankruptcy Trustee*, automatically reverted back to the creditors which held the fraudulent transfer claims prior to Gouletas's bankruptcy filing.

(*Id.* at 11) (emphasis added) (quoting Dkt. 189-1, ¶ 98). The Court noted that since there was no effective sale or assignment of the conspiracy and aiding and abetting fraud claims to DJV Trustee—that the trustee did not have the ability to assign these claims to DJV—those "claims

7

reverted to the original creditors, including 800 SWC, at the end of the two-year period. Once those claims were returned to 800 SWC, it did have the authority to assign them to [DJV Creditor], as [DJV Creditor] contends happened in 2019." (*Id.* at 12) (citation omitted). The Court allowed DJV Creditor to file the operative TAC including the conspiracy and aiding and abetting claims asserted by DJV Creditor, but went no further, expressly stating, "The Court's decision today does no more than allow Plaintiff to file its complaint adding" DJV Creditor's claims for conspiracy to commit and aiding and abetting fraudulent transfers. (*Id.* at 13.) The Court expressly listed the many issues that could be raised per Rule 12 or 56 of the Federal Rules of Civil Procedure. Thus, BPMS filed the instant motion to dismiss, arguing that DJV Creditor does not have standing to assert its fraudulent transfer claims and thus its conspiracy to commit and aiding and abetting fraudulent transfer claims must also be dismissed.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b)'s heightened standard requires fraud allegations to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## Discussion

### A. Claims alleged by DJV Creditor

BPMS moves to dismiss DJV Creditor's fraudulent transfer claims, arguing that: (1) the creditor cannot assert these claims because the bankruptcy trustee has the exclusive right to pursue these claims; and (2) DJV Creditor's claims are barred by the statute of limitations. BPMS also argues for the dismissal of DJV Creditor's claims for conspiracy to commit fraud and aiding and abetting fraud because these claims cannot be asserted alone, but rather rely on DJV Creditor's fraudulent transfer claims.

The TAC alleges that:

> Upon Gouletas's filing of bankruptcy on January 17, 2016, all fraudulent transfer claims that a creditor held related to Gouletas's fraudulent transfers *became the exclusive property of the Bankruptcy Trustee for the two-year period following the bankruptcy filing, with the creditors divested of the ability to prosecute any such fraudulent transfer claims for the two-year period of exclusivity* accorded to the Bankruptcy Trustee.

(Dkt. 204 ¶ 98) (emphasis added). Here, DJV Trustee filed this lawsuit pursuing the fraudulent transfer claims on January 17, 2018, the last day the bankruptcy trustee had the exclusive right to bring these claims. (*See* Dkt. 1.) The TAC further alleges:

> Pursuant to 11 U.S.C. §546(a)(1)(A), when the two-year limitation on the Bankruptcy Trustee's fraudulent transfer claims expired on January 17, 2018, those state-law fraudulent transfer claims, absent prior effective sale and assignment of

9

>those claims by the Bankruptcy Trustee, *automatically reverted back to the creditors which held the fraudulent transfer claims prior to Gouletas's bankruptcy filing*.

(Dkt. 204 ¶ 98) (emphasis added) (citing *Klingman v. Levinson*, 158 B.R. 109, 113 (Bankr. N.D. Ill. 1993)). BPMS argues that since that DJV Trustee acted on its exclusive right to pursue the fraudulent transfer claims and has neither abandoned these claims nor been found to lack standing to assert them, DJV Creditor cannot also assert fraudulent transfer claims. (Dkt. 233 at 7.) DJV Creditor responds that it is asserting these claims *in the alternative*, in the event that the Court should find that DJV Trustee does not have standing to assert the fraudulent transfer claims. (Dkt. 249 at 2.) Specifically, DJV Creditor cites to the Court's prior ruling from March 19, 2019, which recognized the split of authority as to whether a bankruptcy trustee can assign fraudulent transfer claims. (*Id*. (citing Dkt. 115 at 10).) The Court, however, took no position on this issue because the bankruptcy court issued an order approving the assignment of the fraudulent transfer claims by the bankruptcy trustee to DJV. (Dkt. 115 at 10.) In March 2019, no party had demonstrated to the Court that it had the authority to review the bankruptcy court's order, and still, in 2023, no party has made such a showing to the Court. (*See id*. at 10–11) (inviting Defendants to move for dismissal on these grounds if they "believe the Court has such authority" or "contend that the Court can reach the issue without collaterally reviewing the bankruptcy court sale order.").

This issue remaining unchanged, DJV Trustee still has a cause of action for fraudulent transfer, which it timely began pursuing within two years of Gouletas's filing for bankruptcy. As the Court has noted in the past, "[t]he trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) *when the trustee no longer has a viable cause of action*." *Klingman*, 158 B.R. at 113 (emphasis added); (*see* Dkt. 201 at 12) (quoting this statement when discussing DJV Creditor's right to pursue conspiracy to commit fraud

10

and aiding and abetting fraud claims after the two-year period "[o]nce those claims were returned to [the creditor]"). Since DJV Trustee has been pursuing the fraudulent transfer claims in this lawsuit, which it commenced within the two-year period of exclusivity, the Court agrees with BPMS that DJV Creditor cannot simultaneously pursue the fraudulent transfer claims, but rather must wait until the resolution of DJV Trustee's timely filed claims. *See Klingman*, 158 B.R. at 113 (explaining that its holding that funds allegedly fraudulently transferred do not automatically become part of the bankruptcy estate "should not be construed as suggesting that creditors may vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors") (citing 11 U.S.C. § 546(a)). DJV Creditor has cited no authority to support either its theory that it can pursue the fraudulent transfer claims as an alternative plaintiff or the notion that a creditor can pursue fraudulent transfer claims simultaneously with the trustee (although DJV Creditor does not argue this later proposition). The Court therefore dismisses DJV Creditor's fraudulent transfer claims without prejudice, holding that DJV Creditor can only pursue such claims when DJV Trustee no longer has a cause of action. Since the Court grants BPMS's motion to dismiss DJV Creditor's fraudulent transfer claims as not ripe , the Court need not address BPMS's statute of limitations arguments.

Regarding DJV Creditor's claims for conspiracy to commit fraud and aiding and abetting fraud, these claims cannot proceed in the absence of DJV Creditor's fraudulent transfer claims. When "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000); *see also Horist v. Sudler and Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (stating that civil conspiracy is not a separate cause of action under Illinois law). Similarly, aiding

11

and abetting fraud is a means of holding a party liable "for the tort aided and abetted rather than being a separate tort." *Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 623, 624 (7th Cir. 2000) ("One who aids and abets a fraud is guilty of the tort of fraud . . . nothing is added by saying that he is guilty of the tort of aiding and abetting as well or instead."); *see also In re Glick*, 568 B.R. 634, 676 (Bankr. N.D. Ill. 2017) ("For an 'aiding and abetting' claim to proceed, the underlying conduct aided and abetted must itself be actionable.") (citations omitted). Since DJV Creditor's conspiracy and aiding and abetting claims cannot proceed independently of DJV Creditor's fraudulent transfer claims, these claims must also be dismissed without prejudice.

### B. Claims alleged by DJV Trustee

BPMS argues that DJV Trustee's fraudulent transfer claims must be dismissed because they rely on a reverse alter ego/veil-piercing theory of relief, which BPMS argues is not recognized by Illinois law.

"Conventional veil-piercing 'imposes liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's business.'" *In re Wolf*, 644 B.R. 725, 748 (N.D. Ill. 2022) (quoting *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775–76 (Ill. App. Ct. 2005). Reverse veil-piercing, on the other hand, "holds 'the corporation liable for the actions of its shareholder or someone who controls the entity.'" *Id.* (quoting 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 41.70 (rev. vol. 2022)). Reverse veil-piercing can occur in two forms, inside and outside reverse veil-piercing, depending on whether the entity seeking the remedy is from within the corporation (such as a shareholder) or a third-party creditor or bankruptcy trustee. *In re Glick*, 568 B.R. 634, 659 (Bankr. N.D. Ill. 2017).

Defendants here argue that DJV Trustee's claims rely on outside reverse veil-piercing, which "extends the traditional veil-piercing doctrine to permit a third-party creditor to pierce the corporate veil to satisfy the debts of an individual shareholder out of the corporations' assets." 1 *Fletch Cyc. Corp.* § 41.70. Applying that doctrine here, DJV Trustee is trying to satisfy Gouletas's debts through assets belonging to HBI, specifically, the profits from the parking lot. BPMS argues that DJV Trustee cannot engage in outside reverse veil-piercing to reach assets of HBI relying on a bankruptcy court decision stating that "the tenor of Illinois law suggests the state is unlikely to accept outside reverse piercing." *In re Glick*, 568 B.R. at 662–63 (interpreting Illinois case law and noting that Illinois courts have rejected inside reverse piercing). DJV Trustee in response argues that it does not rely on outside reverse veil-piercing because the over $2,000,000 that Gouletas allegedly sought to hide from his disfavored creditors belonged to 800 SWP, and thus it "legally and equitably belonged to Gouletas." (Dkt. 249 at 3.) The question of whether the proceeds from the parking lot sale actually belonged to Gouletas as opposed to 800 SWP or HBI is a fact issue which the Court cannot resolve in ruling on the instant motion to dismiss. The Court therefore rejects BPMS's argument that DJV Trustee's claims must be dismissed, and further notes that more recent authority does not reject outside reverse veil-piercing claims under Illinois law. *In re Wolf*, in particular, stated, "This Court's own reading of Illinois law supports the notion that the Illinois Supreme Court views conventional veil piercing and outside reverse veil piercing as the same doctrine and would therefore approve of the latter." 644 B.R. at 751. Even if DJV Trustee's claims rely on outside reverse veil-piercing, which relies on a question of fact not amenable to resolution in this ruling, DJV Trustee is not necessarily foreclosed from relying on this theory of relief. The Court therefore denies BPMS's motion to dismiss with respect to the claims alleged by DJV Trustee.

13

## Conclusion

For the foregoing reasons, BPMS's motion to dismiss is granted in part and denied in part. DJV Creditor's claims are dismissed from this action without prejudice. BPMS's motion to dismiss is denied as to DJV Trustee's fraudulent transfer claims.

ENTERED: 9/29/23

_____
Nancy L. Maldonado
United States District Court Judge